NAME *ISRAEL GARCIA*

PRISON NUMBER *P49483*

CURRENT ADDRESS OR PLACE OF CONFINEMENT *P.O. BOX. 5007 D2 111*

CITY, STATE, ZIP CODE. *CALIPATRIA. CA 92233*

2254    1983
FILING FEE PAID
Yes    No
IFP MOTION FILED
By    No
COPIES SENT TO
Court ✓ Pro Se

FILED

JUL 21 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

'08 CV 1307 JAH RBB

*ISRAEL GARCIA*,

(FULL NAME OF PETITIONER)

**PETITIONER**

v.

*LARRY SMALL*,

(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

**RESPONDENT**

and

*BILL LOCKYER.*

The Attorney General of the State of
California, Additional Respondent.

Civil No *VA-050173*

(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

**PETITION FOR WRIT OF HABEAS CORPUS**

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: _____
   *SUPERIOR COURT OF CALIFORNIA    SE J.*

2. Date of judgment of conviction: *7-26-1999*

3. Trial court case number of the judgment of conviction being challenged: _____
   *B134524*

4. Length of sentence: *L.W.O.P.*

CIV 68 (Rev. Jan. 2006)

CIV

5. Sentence start date and projected release date: _7-26-1999   L.W.O.P._

6. Offense(s) for which you were convicted or pleaded guilty (all counts): _____
_187 (A)  PC FEL  MURDER    211  PC FEL  ROBBERY_
_664-211  PC FEL  ATTEMP ROBBERY._

7. What was your plea? (CHECK ONE)
   (a) Not guilty          ☑
   (b) Guilty              ☐
   (c) Nolo contendere     ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
   (a) Jury       ☑
   (b) Judge only ☐

9. Did you testify at the trial?
   ☐ Yes  ☑ No

### DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
    ☑ Yes  ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:
    (a) Result: _DENY_
    (b) Date of result (if known): _07 25-00_
    (c) Case number and citation (if known): _B134524_
    (d) Names of Judges participating in case (if known)_____
        _Honorable Peter Espinoza_
    (e) Grounds raised on direct appeal: _MISCONDUCT,  INEFFECTIVE ASSISTANCE_
        _PREJUDICE_

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
    (a) Result: _DENY_
    (b) Date of result (if known): _11-01-2000_
    (c) Case number and citation (if known): _B134524   CT # VA050173_

    (d) Grounds raised: _MISCONDUCT  INEFFECTIVE ASSISTANCE_
        _PREJUDICE_

13. If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

   (a) Result: _____

   (b) Date of result (if known): _____

   (c) Case number and citation (if known): _____

   (d) Grounds raised: _____

NONE

DUE TO LACK OF NOT KNOWING ENGLISH MR GARCIA DID NOT KNEW HOW TO PROCED ON THIS MATTER.

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
☐ Yes ☑ No

15. If your answer to #14 was "Yes," give the following information:

   (a) **California Superior Court** Case Number (if known): _____

   (b) Nature of proceeding: _____

   (c) Grounds raised: _____

NONE

   (d) Did you receive an evidentiary hearing on your petition, application or motion?
   ☐ Yes ☑ No

   (e) Result: _____

   (f) Date of result (if known): _____

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
☐ Yes ☑ No

CIV 68 (Rev. Jan. 2006)

cv

17. If your answer to #16 was "Yes," give the following information:

   (a)  **California Court of Appeal** Case Number (if known):_____

   (b)  Nature of proceeding: _____

   (c)  Names of Judges participating in case (if known)_____

   (d)  Grounds raised: _____ *NONE*

   (e)  Did you receive an evidentiary hearing on your petition, application or motion?
        ☐ Yes  ☐ No

   (f)  Result: _____ — *NONE* — _____

   (g)  Date of result (if known): _____

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☐ Yes  ☑ No

19. If your answer to #18 was "Yes," give the following information:

   (a)  **California Supreme Court** Case Number (if known):_____

   (b)  Nature of proceeding: _____

   (c)  Grounds raised: _____ *NONE*

   (d)  Did you receive an evidentiary hearing on your petition, application or motion?

        ☐ Yes  ☐ No

   (e)  Result: _____ *NONE* _____

   (f)  Date of result (if known): _____

20. If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

EVERY FORM GIVEN TO MR GARCIA WAS IN THE ENGLISH LENGUAGE BY HIS ATTORNEY.

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
☑ Yes ☐ No    (IF "YES" SKIP TO #22)
  (a) If no, in what federal court was the prior action filed? _____
    (i) What was the prior case number? _____
    (ii) Was the prior action (CHECK ONE):
      ☐ Denied on the merits?
      ☐ Dismissed for procedural reasons?
    (iii) Date of decision: _____
  (b) Were any of the issues in this current petition also raised in the prior federal petition?
    ☐ Yes ☐ No
  (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
    ☐ Yes ☐ No

**CAUTION:**

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of
the constitution, law or treaties of the United States. Summarize *briefly* the facts
supporting each ground. (e.g. what happened during the state proceedings that you contend
resulted in a violation of the constitution, law or treaties of the United States.) If necessary,
you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: INAFFECTIVE ASSISTANCE COUNSEL.
MY ATTORNEY FAIL TO PROPERLY INVESTIGATE, PREPARED OR
PRESENT EVIDENCE FOR MY DEFFENCE AT TRIAL.

Supporting FACTS: AT THE TIME OF INVESTIGATION. I HAD SOLID GRO-
UND'S TO SUPPORT MY WERE ABOUT'S PRIOR OF COMING TO THIS
BAR. LA LIKA CLUB PER TESTIMONY BY DEBRA ADKINS SHE DID
NOTICE OF US COMING IN TO THIS BAR. AT AROUND 9:00 PM. MS DE-
BRA ADKINGS. ARRIVED AT 6:00 PM TO HER SHIFT. ON AGUST 20TH
1998. AND PUTS HER TREE HOURS IN BETWEEN OF MY ARRIVAL TO
THIS BAR. IT WAS MY CELEBRATION OF MY BIRTHDAY, AND HAD SPEND
THE DAY AND PARTIAL EVENING WITH MY FAMILY, RELATIVES AND
CLOSE FRIEND'S UP UNTIL 9:00 PM OF AUGUST 20TH OF 1998.
I DONT KNOW IF ANY OF THE PEOPLE WHO SAW ME EARLIER WERE
EVER INTERVIEW. AND PUT TIMES IN BETWEEN THE EARLY HOURS
OF SUCH DAY TILL 9:00 PM OF SUCH DATE. I WAS IN A MOOD FOR
HAVING FUN DRINKING AND DANCING. MY DEMEANOR WAS NOT
TO FIND SOME ONE TO ROB AND KILL AS THE PROSECUTION HAD
PUT MY CASE AS A BLOODY KILLER. I WAS WRONG. BY MY ACCTIONS
BUT I DID NOT HURT THIS MAN BECAUSE I HAD IT PLANNED IT AS
THEY SAY I WAS DRUNK. SCARED. AND IT WAS AN ACCIDENT

Did you raise <u>GROUND ONE</u> in the <u>California Supreme Court</u>?

☐ Yes ☒ No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): _____

(2) Case number or citation: _____

(3) Result (attach a copy of the court's opinion or order if available): _____

(b) **GROUND TWO**: NO ELEMENTS. WERE INCLUDED FOR THE JURY TO GIVE A FAIR VEREDICT WITNESS WERE NOT SUBPEONAED TO VERIFY MY WERE ABOUT'S AND EVIDENCE THAT WE DID HAVE MONEY

Supporting FACTS: AT THE TIME OF ARREST AND BOOK AT COUNTY JAIL. WE HAD MONEY AND THE PROOF WAS ON THE RECIEPT GIVEN TO US AT COUNTY JAIL. THIS TYPE OF EVIDENCE WOULD IF GIVEN THE JURY A DIFFERENT VIEW AN A DIFFERENT SENSSE OF WHAT MY ARGUMENT WAS. THAT I WAS THE ONE BEING ASSA-ULTED AND ROB. AT THE TIME OF THE INCIDENT WE ALL WERE UNDER THE INFLUENCE OF ALCOHOL. AND BY THE TESTIMONY OF THE WITNESS. SHE TESTIFY UNDER OATH THAT SHE MADE A PHONE CALL ABOUT THE DECEASE PERSON HECTOR. BECAUSE HE WAS IN NEED OF MONEY, AND NOT THE OTHER WAY AROUND. IF THIS PIECE OF EVIDENCE WOULD IT BEEN SHOWN TO THE – JURY A DIFFERENT KIND OF SENTENCE. WOULD'NT BEEN REACH FOR ME. I KNOW THAT MY ACTION'S TOOK A MAN'S LIFE. BUT WAS DONE ON SELF DEFFENCE AN ACCIDENT. NOT INTENTED AS THE PROSECUTION HAD ~~WANTED~~ PAINTED IT ABOUT ME. I WAS SENTENCE ON PERSONALATY INSTEAD OF AN ACTUAL ACCIDENT. AT THAT TIME I HAD. SEVERAL WITNESS. WHO WERE NOT BROUGTH TO TESTIFY ON MY BEHALF

**Did you raise GROUND TWO in the California Supreme Court?**

☐ Yes ☑ No.

    If yes, answer the following:

    (1)   Nature of proceeding (i.e., petition for review, habeas petition): _____

    (2)   Case number or citation: _____

    (3)   Result (attach a copy of the court's opinion or order if available): _____

**(c) GROUND THREE:** LACK OF COMMUNICATION.

Supporting FACTS: AFTER MY TRIAL. WAS OVER AND ALL OF MY APPEAL'S WERE DENY, IN MY UNDERSTANDING BECAUSE OF THE LACK OF THE INGLISH LENGUAGE I DID NOT KNEW THAT I COULD OFF PROCEED IT UNTIL THE LAST ATTEMPT OF REDEEMEN MY INNOCENSCE WAS OVER AND THEN PROCEEDED WITH THE FEDERAL REMEDIES. MY ATORNEY FAIL TO INFORM ME IN SPANISH THE THINGS NEED TO BE DONE.

**Did you raise GROUND THREE in the California Supreme Court?**

☐ Yes ☑ No.

If yes, answer the following:

(1)    Nature of proceeding (i.e., petition for review, habeas petition): _____

(2)    Case number or citation: _____

(3)    Result (attach a copy of the court's opinion or order if available): _____

**(d)    GROUND FOUR:** _____

_____

_____

**Supporting FACTS:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND FOUR in the California Supreme Court?**

☐ Yes ☑ No.

If yes, answer the following:

(1)    Nature of proceeding (i.e., petition for review, habeas petition): _____

(2)    Case number or citation: _____

(3)    Result (attach a copy of the court's opinion or order if available): _____

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes  ☑ No

24. If your answer to #23 is "Yes," give the following information:

    (a) Name of Court: _____

    (b) Case Number: _____

    (c) Date action filed: _____

    (d) Nature of proceeding: _____

_____

    (e) Name(s) of judges (if known): _____

    (f) Grounds raised: _____

_____

_____

_____

_____

*NONE*

    (g) Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes  ☐ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a) At preliminary hearing: _____

_____

    (b) At arraignment and plea: _____

_____

    (c) At trial: _____

_____

    (d) At sentencing: _____

_____

    (e) On appeal: _____

    (f) In any post-conviction proceeding: _____

_____

    (g) On appeal from any adverse ruling in a post-conviction proceeding: _____

_____

*NONE*

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☑ Yes  ☐ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes  ☑ No

   (a)  If so, give name and location of court that imposed sentence to be served in the future:

   _____

   (b)  Give date and length of the future sentence: _____

   _____

   (c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   ☐ Yes  ☑ No

28.  Consent to Magistrate Judge Jurisdiction

   In order to insure the just, speedy and inexpensive determination of Section 2254 habeas cases filed in this district, the parties may waive their right to proceed before a district judge and consent to magistrate judge jurisdiction. Upon consent of all the parties under 28 U.S.C. § 636(c) to such jurisdiction, the magistrate judge will conduct all proceedings including the entry of final judgment. The parties are free to withhold consent without adverse substantive consequences.

   The Court encourages parties to consent to a magistrate judge as it will likely result in an earlier resolution of this matter. If you request that a district judge be designated to decide dispositive matters, a magistrate judge will nevertheless hear and decide all non-dispositive matters and will hear and issue a recommendation to the district judge as to all dispositive matters.

   You may consent to have a magistrate judge conduct any and all further proceedings in this case, including the entry of final judgment, by indicating your consent below.

Choose only one of the following:

☐  Plaintiff consents to magistrate        **OR**  ☑  Plaintiff requests that a district judge
   judge jurisdiction as set forth                      be designated to decide dispositive
   above.                                                       matters and trial in this case.

29.  Date you are mailing (or handing to a correctional officer) this Petition to this court: _____

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____
SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

X 04/03/08                              X _____
(DATE)                                          SIGNATURE OF PETITIONER

# VERIFICATION

STATE OF CALIFORNIA
COUNTY OF IMPERIAL
*City CALiPATRiA*

(C.C.P. SEC. 446 & 2015.5: 28 U.S.C. 1746)

I, *GARCIA I* DECLARE UNDER PENALY OF PERJURY THAT: I AM THE *DeFeNDANt* IN THE ABOVE ENTITLED ACTION. I HAVE READ THE FOREGOING DOCUMENTS AND KNOW THE CONTENTS THEREOF AND THE SAME IS TRUE OF MY OWN KNOWLEDGE EXCEPT AS TO MATTERS STATED THEREIN UPON INFORMATION, AND BELIEF, AND AS TO THOSE MATTERS, I BELIEVE THEM TO BE TRUE.

EXECUTED THIS *10 TH,* DAY OF *JANUARY* 2007 AT CALIPATRIA STATE PRISON, CALIPATRIA CALIFORNIA 92233-5002

(SIGNATURE) _____
DECLARAT/PRISONER

---

## PROOF OF SERVICE BY MAIL

(C.C.P. SEC. 1013 (a) & 2015.5 28 U.S.C. 1746)

I, *GARCIA ISRAEL* AM A RESIDENT OF CALIPATRIA STATE PRISON, IN THE COUNTY OF IMPERIAL, STATE OF CALIFORNIA, I AM OVER THE AGE OF EIGHTEEN (18) YEARS OF AGE AND AM / AM NOT A PARTY OF THE ABOVE ENTITLED ACTION. MY STATE PRISON ADDRESS IS P.O. BOX 5002, CALIPATRIA STATE PRISON, CALIPATRIA, CALIFORNIA 92233-5002.

ON *1* 2007 IS SERVED THE FOREGOING

*1*

SET FORTH EXACT TITLE OF DOCUMENTS SERVED

ON THE PARTY(S) HEREIN BY PLACING A TRUE COPY(S) THEREOF, ENCLOSED IN A SEALED ENVELOPE(S) WITH POSTAGE THEREON FULLY PAID, IN THE UNITED STATES MAIL, IN A DEPOSIT BOX SO PROVIDED AT CALIPATRIA STATE PRISON, CALIPATRIA, CALIFORNIA 92233-5002.

*UNiTeD STATe supreme court.
1 FiRST StReet. N.E.
WASHiNGtoN, DC,
20543.*

*CALiFORNiA iNNOCente PROJeCT.
225. CEDAR ST.
SAN DiEGO, CA, 92101.*

*UNiTeD STATeS DiSTRiCT
COURT FOR THE SOUTHERN DiSTRiCT.
FEDERAL OFFiCE BUiLDiNG.
880. FRONT STReet SUiT. 4290.
SAN DiEGO, CA, 92101_8900.*

THERE IS DELIVERY SERVICE BY UNITED STATES MAIL AT THE PLACE SO ADDRESSED, AND THERE IS REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING AND THE PLACE SO ADDRESSED. I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATE *04/03/08* 2005 _____
(DECLARANT / PRISONER)

RECEIVED

APR 1 4 2008

OFFICE OF THE CLERK
SUPREME COURT, U.S.

# VERIFICATION

STATE OF CALIFORNIA
COUNTY OF IMPERIAL
CALIPATRIA

(C.C.P. SEC. 446 & 2015.5: 28 U.S.C. 1746)

I, GARCIA   I   DECLARE UNDER PENALTY OF PERJURY THAT: I AM THE DEFANDANT
IN THE ABOVE ENTITLED ACTION. I HAVE READ THE FOREGOING DOCUMENTS AND KNOW THE CONTENTS THEREOF
AND THE SAME IS TRUE OF MY OWN KNOWLEDGE EXCEPT AS TO MATTERS STATED THEREIN UPON INFORMATION,
AND BELIEF, AND AS TO THOSE MATTERS, I BELIEVE THEM TO BE TRUE.

EXECUTED THIS   17 TH   DAY OF   July   2008 AT
CALIPATRIA STATE PRISON, CALIPATRIA CALIFORNIA 92233-5007

(SIGNATURE)
DECLARAN/PRISONER

---

## PROOF OF SERVICE BY MAIL

#T-19363   (C.C.P. SEC. 1013 (a) & 2015.5 28 U.S.C. 1746)

I, MONTANA   AM A RESIDENT OF CALIPATRIA STATE PRISON, IN THE COUNTY OF
IMPERIAL, STATE OF CALIFORNIA, I AM OVER THE AGE OF EIGHTEEN (18) YEARS OF AGE AND AM / AM NOT A
PARTY OF THE ABOVE ENTITLED ACTION. MY STATE PRISON ADDRESS IS P.O. BOX 5007, CALIPATRIA STATE PRISON,
CALIPATRIA, CALIFORNIA 92233-5007.
ON   July   17 TH   2008 IS SERVED THE FOREGOING

---

SET FORTH EXACT TITLE OF DOCUMENTS SERVED

ON THE PARTY(S) HEREIN BY PLACING A TRUE COPY(S) THEREOF, ENCLOSED IN A SEALED ENVELOPE(S) WITH
POSTAGE THEREON FULLY PAID, IN THE UNITED STATES MAIL, IN A DEPOSIT BOX SO PROVIDED AT
CALIPATRIA STATE PRISON, CALIPATRIA, CALIFORNIA 92233-5007.

UNITED STATES DISTRICT
COURT for The Southern District
FEDERAL OFFICE BUILDING
880 FRONT STREET SUIT. 4290
SAN DIEGO, CA   92101- 8900

THERE IS DELIVERY SERVICE BY UNITED STATES MAIL AT THE PLACE SO ADDRESSED, AND THERE IS REGULAR
COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING AND THE PLACE SO ADDRESSED. I DECLARE
UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATE   July   17 TH   , 2008

(DECLARANT/ PRISONER)

### SUPREME COURT OF THE UNITED STATES
### OFFICE OF THE CLERK
### WASHINGTON, DC  20543-0001

April 15, 2008

Israel Garcia
CDC # P-49483
Calipatria SP
P.O. Box 5007
Calipatria, CA 92233

RE: Israel Garcia

Dear Mr. Garcia:

In reply to your letter or submission, received April 14, 2008, I regret to inform you that the Court is unable to assist you in the matter you present.

Under Article III of the Constitution, the jurisdiction of this Court extends only to the consideration of cases or controversies properly brought before it from lower courts in accordance with federal law and filed pursuant to the Rules of this Court.

Your papers are herewith returned.

Sincerely,
William K. Suter, Clerk
By:

Clayton R. Higgins, Jr.
(202) 479-3019

Enclosures

# Edward H. Schulman

**Attorney at Law**

9420 Reseda Boulevard                                        Of Counsel:  Mark Alan Hart, Esq.
   #530
Northridge, California  91324
Telephone:  818-363-6906
Fax:         818-349-2558


October 9, 2007


Israel GARCIA
CDC # P-49483
Calipatria SP
P.O. Box 5007
Calipatria, California 92233

RE:  People v. Israel GARCIA
       2nd Crim. No. B134524/Division 2
       (Los Angeles County Superior Court No. VA-050173)

Dear Mr. Garcia:

In am in receipt of your letter dated October 2, 2007 in which you ask for "my trial transcripts, pertaining, all of the documents that were given to you during the process of my trial." Your letter also cites to Rule 3-700 of the State Bar's Rules of Professional Conduct.

I am fully aware of my obligation to return your trial transcripts at the conclusion of my representation.  Indeed, that is precisely what I did on November 78, 2000 when I informed you that the California Supreme Court had denied review in your case.  That same letter contains information on how you could proceed into federal court if you had a mind to do so.  Accompanying that same letter was your entire appellate record consisting of one volume of Clerk's Transcript, two volumes of Reporter's Transcript and a copy of your probation report. (See enclosed copy of letter dated 11/7/00).

In the seven years since that letter you have written to me on two occasions.  The first, dated April 17, 2005 (letter apparently written by Inmate Clay Edwards Lopez), requested I look into CDC's action of January 2000 concerning the awarding of presentence credit in your case.   I responded in a letter dated April 22, 2005. (See enclosed copy).

You next letter, dated April 22, 2004 and again written by inmate Clay Edwards, requested a copy of the Court of Appeal's original decision in your case, filed July 25, 2000, as well as a copy of the Petition for Review.  I sent you both those documents in

ISRAEL GARCIA
OCTOBER 9, 2007
PAGE TWO

a letter dated April 30, 2004. (See enclosed copy).

Not once since my letter of November 7th 2000 have you claimed I failed to send you your copy of the appellate record.   Your current letter may simply be a request for another copy; i.e., you may have lost the one I sent you.  In any event, I sent you the only copy I had.  I have no others.

Sincerely,

Edward H. Schulman

EHS:sam
encls.

**DEPARTMENT OF CORRECTIONS**
Legal Processing Unit
P.O. Box 942883
Sacramento, CA 94283-0001
(916) 323-7371



January 12, 2000

Honorable Peter Espinoza
Judge of the Superior Court
County of Los Angeles
12720 Norwalk Boulevard
Norwalk, CA 90650

Re: GARCIA, Israel
CDC No.: P49483
Court Case No.: VA050173
Date of Sentence: July 15, 1999

Dear Judge Espinoza:

A review of the documents received for the above-named inmate indicates the Abstract of Judgment/Minute Order may be in error, or incomplete for the following reasons:

The Abstract of Judgment reflects credits granted by the Court as 329 days actual local day plus 49 days local conduct credits for a total 378 days of presentencing credits. The defendant committed the offenses on August 20, 1998. However, pursuant to Penal Code section 2933.2(c) which came into affect on June 3, 1998 and reflects, "Notwithstanding Section 4019 or any other provision of law, no credit pursuant to Section 4019 may be earned against a period of confinement in, or commitment to a county jail, city jail,....following arrest for any person specified in subdivision (a)." Please clarify.

Please review your file to determine if a correction is required. When notified by the Department of Corrections that an illegal sentence exists, the trial court is entitled to reconsider all sentencing choices, People v Hill, 185 Cal.App.3d 831. **We would appreciate your providing a certified copy of the Minute Order or modified Abstract of Judgment to this Department.** May we also request the attached copy of this letter be returned with your response. If this case is under appellate review, please forward a copy of this letter to appellate attorney.

Sincerely,

KATHY MOORE
Correctional Case Records Manager

By: JOHNNY R. GALVAN
Correctional Case Records Analyst

cc: Public Defender
    District Attorney
    Inmate
    C-File

**INMATE'S COPY**

COPY

# Edward H. Schulman
**Attorney at Law**

9420 Reseda Boulevard
   #530
Northridge, California 91324
Telephone:  818-363-6906
Fax:      818-349-2558

Of Counsel:  Mark Alan Hart, Esq.

July 27, 2000

Israel GARCIA CDC # P-49483
Calipatria SP
P.O. Box 5002
Calipatria, California 92233

RE:  People v. Israel GARCIA
      2nd Crim. No. B134524/Division 2
      (Los Angeles County Superior Court No. VA-050173)

Dear Mr. Garcia:

I just received a copy of the Court of Appeal's decision, filed July 25, 2000 (see enclosed copy).  Regrettably, the Court rejected each of our substantive challenges to the judgment and sentence and affirmed the jury's guilt verdicts and LWOP sentence.[1]

The next step in the appeals process is to file a Petition for Review in the California Supreme Court and asking them to review the Court of Appeal's decision.  Such a petition is also necessary to preserve all federal constitutional issues in the event that the California Supreme Court denies review and you wish to proceed into federal court to further challenge the state court judgment.

That petition must be filed between 31 and 40 days after the Court of Appeal's decision is filed  In your case, it must be filed between August 25th and September 3rd 2000.  I will prepare and file that petition.  Should you have any questions, please advise.

Sincerely,

Edward H. Schulman

EHS:sam/encl.

---

[1]  The Court ordered minor modifications to the judgment by staying the trial judge's 5-year concurrent sentence on the second degree robbery and (2) striking the $ 200.00 restitution fine ordered pursuant to Penal Code section 1202.45.)

# Edward H. Schulman

**Attorney at Law**

9420 Reseda Boulevard
  #530
Northridge, California 91324
Telephone: 818-363-6906
Fax:      818-349-2558

Of Counsel: Mark Alan Hart, Esq.

July 27, 2000

Israel GARCIA
CDC # P-49483
Calipatria SP
P.O. Box 5002
Calipatria, California 92233

RE:    People v. Israel GARCIA
       2nd Crim. No. B134524/Division 2
       (Los Angeles County Superior Court No. VA-050173)

Dear Mr. Garcia:

I just received a copy of the Court of Appeal's decision, filed
July 25, 2000 (see enclosed copy). Regrettably, the Court
rejected each of our substantive challenges to the judgment and
sentence and affirmed the jury's guilt verdicts and LWOP
sentence.[1]

The next step in the appeals process is to file a Petition for
Review in the California Supreme Court and asking them to review
the Court of Appeal's decision. Such a petition is also
necessary to preserve all federal constitutional issues in the
event that the California Supreme Court denies review and you
wish to proceed into federal court to further challenge the state
court judgment.

That petition must be filed between 31 and 40 days after the
Court of Appeal's decision is filed  In your case, it must be
filed between August 25th and September 3rd  2000.  I will prepare
and file that petition.  Should you have any questions, please
advise.

Sincerely,

Edward H. Schulman

EHS:sam/encl.

---

[1]  The Court ordered minor modifications to the
judgment by staying the trial judge's 5-year concurrent sentence
on the second degree robbery and (2) striking the $ 200.00
restitution fine ordered pursuant to Penal Code section 1202.45.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
JOSEPH A. LANE, CLERK

DIVISION 6

Los Angeles County Superior Court
111 North Hill Street
Los Angeles, CA 90012

**FILED**
LOS ANGELES SUPERIOR COURT

NOV 0 3 2000

JOHN A. CLARKE, CLERK

BY S. BARRON, DEPUTY

THE PEOPLE
Plaintiff-Respondent
v.
GARCIA, ISRAEL
Defendant-Appellant
MELARA, JOSE HUMBERTO
Defendant-Appellant
B134524
Los Angeles County No. VA050173

### *** REMITTITUR ***

I, Joseph A. Lane, Clerk of the Court of Appeal of the State of California, for the Second Appellate District, do hereby certify that the attached is a true and correct copy of the original order, opinion or decision entered in the above-entitled cause on July 25, 2000 and that this order, opinion or decision has now become final.

Witness my hand and the seal of the Court affixed at my office this

Joseph A. Lane, Clerk

by
Deputy Clerk

NOV - 1 2000

cc:  All Counsel
     File



# Edward H. Schulman
**Attorney at Law**

9420 Reseda Boulevard
#530
Northridge, California 91324
Telephone:   818-363-6906
Fax:         818-349-2558

Of Counsel:  Mark Alan Hart, Esq.

November 7, 2000

Israel GARCIA
CDC # P-49483
Calipatria SP
P.O. Box 5002
Calipatria, California 92233

RE:  People v. Israel GARCIA
     2nd Crim. No. B134524/Division 2
     (Los Angeles County Superior Court No. VA-050173)

Dear Mr. Garcia:

I regret to inform you that the California Supreme Court denied our Petition for Review on November 1, 2000; I just received a copy of the Court's order.

Also enclosed please find your copy of the Remittitur issued by the Court of Appeal, also on November 1, 2000, and which verifies that the Court of Appeal's decision and the judgment of the trial court has now become final.

The question now is what further steps can be taken to have the California judgment reviewed in federal court.  Should you wish to take file a petition for certiorari to the United States Supreme Court, or file a federal petition for writ of habeas corpus, you should be aware of the following:[1]

The federal courts, like our state courts, are governed by certain time limits and filing deadlines.  You may file a Petition for Certiorari in the United States Supreme Court. Such a petition must be filed within ninety (90) days of the date on which review is denied by the California Supreme Court.

---

[1] We have preserved all related federal constitutional law issues by presenting those claims to the highest state court. Thus, you should not face any 'procedural bar' to presenting your claim in federal court should you wish to do so.

ISRAEL GARCIA
NOVEMBER 7, 2000
PAGE TWO

A certiorari petition must be filed with the Supreme Court in Washington D.C.. The Supreme Court's mailing address is: Clerk's Office, United States Supreme Court, 1 First Street, N.E.,
Washington, D.C., 20543.

This petition for certiorari may be typewritten on 8 ½" x 11" paper by defendant's filing informa pauperis (indigent defendants) petitions. They cannot exceed forty pages. As an indigent defendant, you need only file one copy of the Petition for Certiorari, and one of a Motion to Proceed Informa Pauperis, with the Supreme Court.

As to pursuing your case into federal district court by way of a petition for federal writ of habeas corpus (see 28 United States Code, § 2254), you should be aware that federal law restrictions requires that such a petition be filed within **one (1) year** of the date the highest state court in the jurisdiction of conviction has denied your claims. **In your case, that will be one year from November 1, 2000; i.e., October 31, 2001.** A federal habeas corpus petition must be filed in the district court (district of conviction or district of incarceration).

**Please note that it is NOT necessary to file a petition for certiorari (see discussion above) before a section 2254 writ petition is filed in federal district court.**

This letter will also be the conclusion of my work on your appeal. I am therefore returning to you at this time your copy of the appellate record which was to provided to me by the Court of Appeal in order to work on your case. It consists of the following:

1. Clerk's Transcript (1 volume);
2. Reporter's Transcript (2 volumes); and
3. Probation Report.

Should you at any time have questions or comments, please advise..

Sincerely,

Edward H. Schulman

EHS:sam
encls.



# Edward H. Schulman

**Attorney at Law**

9420 Reseda Boulevard
#530
Northridge, California 91324
Telephone:  818-363-6906
Fax:    818-349-2558

Of Counsel:  Mark Alan Hart, Esq.

April 22, 2005

Israel GARCIA
CDC # P-49483
Calipatria SP
P.O. Box 5002
Calipatria, California 92233

RE:   People v. Israel GARCIA
      California Supreme Court No. S090987
      2nd Crim. No. B134524/Division 2
      (Los Angeles County Superior Court No. VA-050173)

Dear Mr. Garcia:

Your recent letter, dated April 17, 2005 (apparently written by Inmate Clay Edwards
Lopez) requests I look into the matter of the CDC's January 2000 action concerning the
awarding of presentence custody credits in your case.

While your letter does not specifically delineate what particular action was in fact taken
by CDC, your reference to Penal Code section 4019 suggests that CDC either removed
certain presentence *"conduct"* credits awarded by the trial court against your sentence
or requested the trial court to recalculate such credits in light of that particular Penal
Code section.

Penal Code section 2933.2, subdivision (c) states without qualification that "no credit"
pursuant to Penal Code section 4019 may be earned by a person convicted of murder.
Such credit pertains to good-time/work time pre and post sentence credits.  You were
convicted of murder; hence, your are only entitled to credit against your sentence for
*actual time* spent in custody. (See *People v. McNamee* (2002) 96 Cal.App.4th 66 70-71;
*People v. Herrera* (2001) 88 Cal.App.4th 1353, 1366.)

ISRAEL GARCIA
APRIL 22, 2005
PAGE TWO

I do not know what you expect me to do about this action. First of all, and based on the information you have provided, it appears to be a legally correct action. Second, I am no longer your attorney on this matter; I was appointed to represent you on your direct appeal from the judgment and sentence of the trial court. I am not familiar with the term "DOR", which you letter references.

Sincerely,

Edward H. Schulman

EHS:sam

COPY

# Edward H. Schulman

**Attorney at Law**

9420 Reseda Boulevard                                      Of Counsel:  Mark Alan Hart, Esq.
   #530
Northridge, California  91324
Telephone:  818-363-6906
Fax:         818-349-2558


April 30, 2004


Israel GARCIA
CDC # P-49483
Calipatria SP
P.O. Box 5002
Calipatria, California 92233


RE:  People v. Israel GARCIA
      California Supreme Court No. S090987
      2nd Crim. No. B134524/Division 2
      (Los Angeles County Superior Court No. VA-050173)


Dear Mr. Garcia:

Your recent letter, dated April 22, 2004 (apparently written by Inmate Clay Edwards
Lopez) requests copies of the following materials pertaining to your appeal in the above
referenced matter.

1. The Court of Appeal's decision filed in the case on July 25, 2000 ;
2. A copy of the Petition for Review which I filed in the California Supreme Court.[1]

Your letter suggests that I never sent you these documents.  Not so!.  I sent you copies
of every pleading, order and opinion filed in your case.  I also sent you your copy of the
appellate record when I completed my work on your case. (See my letter, dated
November 7, 2000).   Why did you wait 3½ years after my last letter to request this
material?

_____

      [1]    As to your request for copies concerning the Court of Appeal's
decision to modify your sentence by striking a concurrent 5-year term on the robbery
and by striking the parole revocation fine pursuant to Penal Code section 1202.45,
those modifications are set forth in the Court of Appeal's decision, a copy of which is
attached to the Petition for Review as Exhibit "A".

ISRAEL GARCIA
APRIL 30, 2004
PAGE TWO

However, as a courtesy, I am enclosing the following materials previously sent to you:

1. Opinion of the Court of Appeal filed July 25, 2000;

2. Petition for Review which I prepared and filed with the California Supreme Court on August 28, 2000;

3. Order of the California Supreme Court, dated November 1, 2000, denying review in both your case and your co-defendant/co-appellant Jose Melara's.

4. Remittitur issued by the Court of Appeal on November 1, 2000.

5. Copies of letters I sent you, dated July 27, 2000
August 25, 2000
September 12, 2000 and
November 7, 2000.

Sincerely,

Edward H. Schulman

EHS:sam
encls.

6. GROUNDS FOR RELIEF
   **Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

   **INEFFECTIVE ASSISTANCE OF COUNSEL : Trial Counsel's failure**

   **to Investigate and present the potentially Meritorious**

   **Intoxication Defense Constitutes Ineffective Assistance of**

   **Counsel.**

   a. Supporting facts:
      Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

   This Case was prosecuted as first Degree Murder durring the

   Course of an Attempted Robbery(Robbery) and defended on the

   Ground that although petitioner was a Direct Participant in

   the aforementioned Crime, Both alleged Victims as well as the

   Defendants involved did infact consume alcohol. Readily available

   evidence from the Coroner's Office indicated that Victim of

   Death in this Case was beyond the Legal Limits for operating

   a vehicle safely. See Transcript-Material In Exhibit (A)1,2,3.

   Furthermore, Petitioner did infact demonstrate his intoxicted

   State of mind by crashing his vehicle just moments after leaving

   the scene. See Transcript-Material In Exhibit (B)1,2,

   Although All this information was easily available to Trial

   - Counsel, he failed to follow up these investigative leads /see attach:
                                                                    Page.

   b. Supporting cases, rules, or other authority (optional):
      *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

- and did not interview Petitioner's many claims. Nor did he

consult an Expert in the field of Alcohol Intoxication and It's

effects on one's Mental State; Nor did he Present any testimony,

Expert, or Lay, in support of a Voluntary Intoxication Defense

at Trial.

Moreover, the Petitioner's decision to follow his Lawyer's

advise, "to not testify at TriaL," was not founded upon Adequate

Investigation and Preparation. Without having first conducted

the necessary investigation, the Attorney failed to Discover

and Present Evidence Favorable to Petitioner. For example, if

Petitioner had infact taken the Witness Stand, he could have

been able to make clear into evidence, that which one witness

claimed hearing the words "Robo or Roberto," was infact the

Petitioner's cry for help. "ROBO" in Spanish means Robbery."

In other words, because Petitioner took his Attorney's

advise, his version of the facts were not made available into

the Trier of Facts or to the Court. Infact, had Petitioner's Lawyer

entered into evidence that upon Arrest into County Jail, the

Petitioner did infact have in his possession substantial currency

as Jail records could show if an Order to show Cause is given

in this Habeas Corpus Writ and Appeal to the Superior Court.

Petitioners Main Claim in this Appeal for Justice is

that he was infact the Victim of an Attempted Robbery. Also,

Petitioner's claims that Alleged victim and his witness were

infact Known criminals. And that such evidence was infact

ATTACHMENT PAGE (2)

never introduced to the Jury because Attorney Failed to bring

to light through cross examination of witnesses and failure to

properly investigate with with due diligence important facts

which if included into the Trier of Facts would have weighed

differently in Petitioner's Trial.

Moreover, by one account of a witness, it was infact

entered into evidence that alleged victim in this case was infact

out of money and his wife was being called on the telephone

by a Bartender at the scene of the Crime in order to advise

her that her husband (THE VICTIM) was "OUT OF MONEY."

COPY

1

IN THE MUNICIPAL COURT OF THE SOUTHEAST/NORTH

JUDICIAL DISTRICT

COUNTY OF LOS ANGELES, STATE OF CALIFORNIA

HON. ROSS M. KLEIN, COMMISSIONER   DIVISION IV

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ) | |
| ) | |
| PLAINTIFF, ) | NO. VA050173 |
| ) | |
| VS. ) | |
| ) | |
| JOSE HUMBERTO MELARA,   AND ) | |
| ISRAEL GARCIA, ) | |
| ) | |
| DEFENDANTS. ) | |

REPORTER'S TRANSCRIPT
PRELIMINARY HEARING
NOVEMBER 13, 1998

ORIGINAL FILED

NOV 2 4 1998

LOS ANGELES
SUPERIOR COURT

APPEARANCES:

FOR THE PEOPLE:           GIL GARCETTI,
                          DISTRICT ATTORNEY
                          BY: RALPH TORRES,
                              DEPUTY DISTRICT ATTORNEY
                          2958 EAST FLORENCE AVENUE
                          HUNTINGTON PARK, CALIFORNIA 90255

FOR DEFENDANT MELARA:     MICHAEL JUDGE,
                          PUBLIC DEFENDER
                          BY: RAMIRO JACINTO,
                              DEPUTY PUBLIC DEFENDER
                          6548 MILES AVENUE
                          HUNTINGTON PARK, CALIFORNIA 90255

HTA:                      11-30-98
DEPARTMENT:               "T"
REPORTED BY:              RENEE D. SMITH
                          CERTIFIED SHORTHAND REPORTER NO.8915

**INDEX**             **VA050173-01 & O2**             **PAGE**

PRELIMINARY TRANSCRIPT                                          1
INFORMATION                                                    79
MINUTE ORDERS:
    NOVEMBER 30, 1998, JANUARY 5, 28, MARCH 11, APRIL 16,
    MAY 11, JUNE 1, 9, 10, 14, 15, 16, 17, 1999               83
JURY INSTRUCTIONS (GIVEN)                                     125
JURY INSTRUCTIONS (REFUSED)                                   195
VERDICTS (GUILTY)                                             215
MINUTE ORDERS:
    JUNE 18, 1999                                             221
MOTION FOR NEW TRIAL PURSUANT TO PC SECTION 1181.6            227
MINUTE ORDERS:
    JULY 14, 15, 1999                                         234
ABSTRACTS OF JUDGMENT                                         240
NOTICES OF APPEAL                                             244
PROBATION REPORTS (CONFIDENTIAL ENVELOPE)                     247
CERTIFICATIONS                                                273

2

1

2  APPEARANCES:

3

4

5        FOR DEFENDANT GARCIA:

6

7            LAW OFFICES OF THE ALTERNATE PUBLIC DEFENDER
             BY:  DEBRA A. COLE,
8                 ATTORNEY AT LAW
             12440 FIRESTONE BOULEVARD
9            SUITE 321
             NORWALK, CALIFORNIA  90650

10

11

12

13  INTERPRETER FOR DEFENDANT MELARA:

14            ELIZABETH SANCHEZ

15

16  INTERPRETER FOR DEFENDANT GARCIA:

17            DIANA DALL'OCCHIO

18

19

20

21

22

23

24

25

26

27

28

3

1

2                              I N D E X

3

4   WITNESSES          DIRECT CROSS REDIRECT RECROSS

5

6   JOSE LOPEZ             6              36

7   (BY MR. JACINTO)         14               38

8   (BY MS. COLE)            28

9

10  DEBRA ADKINS         40              61

11  (BY MR. JACINTO)         46               62

12  (BY MS. COLE)            54

13

14  BRANDY WALKER     64

15  (BY MR. JACINTO)         66

16  (BY MS. COLE)            68

17

18  ERIC VALDEZ       70

19

20

21                         E X H I B I T S

22

23  PEOPLE'S              MARKED           RECEIVED

24

25  (NONE)

26

27

28

4

1    FRIDAY, NOVEMBER 13, 1998, HUNTINGTON PARK, CALIFORNIA

2                          11:04 A.M.

3                          -***-

4

5        THE COURT:    COURTS CALLS THE TWO DEFENDANT CASE

6   OF JOSE HUMBERTO MELARA AND ISRAEL GARCIA, CASE NUMBER

7   VA050173.  EACH DEFENDANT IS PRESENT IN COURT IN

8   CUSTODY.  MR. MELARA IS BEING REPRESENTED BY MR. RAMIRO

9   FROM THE PUBLIC DEFENDER'S OFFICE.  MR. GARCIA IS BEING

10  REPRESENTED BY MISS DEBRA COLE FROM THE ALTERNATE PUBLIC

11  DEFENDER'S OFFICE.  AND MR. RALPH TORRES IS PRESENT ON

12  BEHALF OF THE PEOPLE.

13            MR. MELARA IS BEING ASSISTED BY THE SPANISH

14  LANGUAGE INTERPRETER ELIZABETH SANCHEZ.  IS YOUR OATH ON

15  FILE?

16        INTERPRETER SANCHEZ:    YES, YOUR HONOR.

17        THE COURT:    AND MR. GARCIA IS BEING ASSISTED BY

18  DIANA DALL'OCCHIO, OUR SPANISH LANGUAGE INTERPRETER.

19            IS YOUR OATH ON FILE?

20        INTERPRETER DALL'OCCHIO:    YES, YOUR HONOR.

21        THE COURT:    I HAVE IN THE CASE A FILED MOTION BY

22  PEOPLE TO CONSOLIDATE THE SEPARATE ACCUSATORY PLEADINGS.

23            MR. TORRES?

24        MR. TORRES:  PEOPLE WITHDRAW THAT MOTION AT THIS

25  TIME.

26        THE COURT:    AT THIS TIME THE MOTION IS DEEMED

27  WITHDRAWN.  MR. JACINTO, WAIVE READING OF THE COMPLAINT

28  AND STATEMENT OF CONSTITUTIONAL RIGHTS?

1   MR. JACINTO:   SO WAIVED.

2   THE COURT:   MISS COLE, WAIVE READING OF THE

3   COMPLAINT AND STATEMENT OF CONSTITUTIONAL RIGHTS?

4   MS. COLE:   YES, SO WAIVED, YOUR HONOR.

5   THE COURT:   AND ALL THREE COUNSEL ARE READY TO

6   PROCEED.  MR. TORRES?

7   MR. TORRES:   YES.

8   THE COURT:   AND MR. JACINTO?

9   MR. JACINTO:   YES.

10   MS. COLE:   YES.

11   THE COURT:   ALL RIGHT.

12   MS. COLE:   THERE WILL BE A MOTION TO EXCLUDE ALL

13   WITNESSES.

14   MR. JACINTO:   JOIN.

15   THE COURT:   THAT MOTION IS GRANTED.  ALL ACTUAL

16   OR POTENTIAL WITNESSES IN THE CASE PLEASE REMAIN OUTSIDE

17   IN THE HALLWAY.  DO NOT DISCUSS YOUR TESTIMONY WITH

18   ANYBODY ELSE.  I NOTICE SOMEBODY SITTING NEXT TO THE

19   DISTRICT ATTORNEY.

20   MR. TORRES:   YES.  PEOPLE WOULD ASK THAT

21   DETECTIVE MILLER BE ALLOWED TO STAY AS INVESTIGATING

22   OFFICER.

23   THE COURT:   HE MAY REMAIN.

24   BEFORE WE BEGIN ARE THERE ANY OTHER MOTIONS

25   OR REQUESTS?

26   MR. JACINTO:   NO.

27   MS. COLE:   NO.

28   THE COURT:   THANK YOU.  PEOPLE AT THIS TIME CALL

PAGE 1)

2)

3)

4)

5)

6) NO ONE IN THE BATHROOM. WHEN HE GOES IN.

7) HEARD SOME ONE CALLED HIM HEY YES (JOEY) WHEN LOPEZ IS IN THE TOILET. HECTOR WALKS IN. TO THE RESTROOM.

8) A FEW MINUTES. WHILE HECTOR. IS IN THE RESTROOM (LOPEZ) HEARD A VOICE SAYING (HECTOR) (THAT) WHO EVER, WAS, KNEW HECTOR PRETY WELL TO CALL HIM BY HIS FIRST NAME. AND DEMANDING MONEY. "GIVE ME YOUR MONEY" LOPEZ ALSO NOTICE SOME ONE TOWARDS.

9) THE DOOR IN A SUIT. LINE (2 THROUGH 13) HE ALSO SEES HECTOR AGAINST. THE PARTITIONER. WHEN LOPEZ CAME OUT. WITH A KNIFE ON HECTORS THROAT

Q) 17) THEY WERE HOLDING HIM AGAINST, THE PARTITION

A) 18) YES. HOW COULD THIS BE. WHEN THE MAN WITH THE SUIT IS STANDING BY THE ENTRANCE TO THE RESTROOM.
WHEN ASK IF ANYTHING ELSE WAS ON THIS PERSONS HAND. BY MR TORRES HE IS NOT SPECIFIC AS TO WHO HAS THE KNIFE.

10) MR LOPEZ SAYS TO HECTORS THROAT. BUT NOT SPECIFIC AS TO WHO HAS THE KNIFE THE MAN ON THE SUIT OR THE OTHER GUY.
LINE) 3 HE SEES DOLLAR BILLS ON WHOS HAND. THE GUY WITH THE KNIFE STILL NO IDENTIFICATION ON NEITHER ONE THE MAN WITH THE SUIT OR THE OTHER MAN
BACK TO [NOW AT THIS POINT, THE TWO MAN HAVE HECTOR BY THE PARTITION. ACCORDING
PAGE (9) [TO Q (9) AND A (11)

PAGE 10) AGAING) NOW THE GUY WITH THE SUIT. WHO WAS AT THE DOOR. GOES TOWARDS LOPEZ TO BLOCK HIM IN.

PAGE 11) A (HE ASK HIM HE SAID) WHOS MISTAKE IS THIS. THE REPORTER OR MR. TORRES. OR DEFEENSE FOR NOT MAKING IT CLEAR.
FROM LINES 9 THROUGH 27 NO WORDS OR CONFRONTATION IN BETWEEN LOPEZ AND THE MAN) WITH THE SUIT. AND HE PUNS OUT TO THE BARTENDER.

6

1    THE FIRST WITNESS.

2        MR. TORRES:   PEOPLE CALL JOSE LOPEZ.

3        THE CLERK:   RAISE YOUR RIGHT HAND, PLEASE.

4            YOU DO SOLEMNLY SWEAR THE TESTIMONY YOU SHALL

5    GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL BE

6    THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH SO

7    HELP YOU GOD?

8        THE WITNESS:   I DO.

9        THE CLERK:   THANK YOU.    PLEASE BE SEATED.

10           STATE YOUR FULL NAME AND SPELL YOUR LAST

11   NAME, PLEASE.

12       THE WITNESS:   JOSE LOPEZ, L-O-P-E-Z.

13       THE COURT:   YOU MAY INQUIRE.

14

15

DIRECT EXAMINATION

16

17   BY MR. TORRES:

18       Q    MR. LOPEZ, WERE YOU AT A BAR AT 5006 CLARA

19   STREET IN THE CITY OF CUDAHY ON AUGUST 20TH, 1998?

20       A    YES.

21       Q    ABOUT 11:15 OR SO IN THE EVENING DID YOU GO

22   IN THE BATHROOM OF THAT BAR?

23       A    YES, I DID.

24       Q    WAS THERE ANYBODY ELSE IN THE BATHROOM WHEN

25   YOU WENT IN THERE?

26       A    NO, SIR.

27       Q    WHILE IN THE BATHROOM DID YOU HEAR ANYTHING?

28       A    A FEW MINUTES LATER, YES.

7

1     Q    WHAT DID YOU HEAR?

2     A    THE PERSON THAT WENT IN THERE SAID, "YES, MY

3  JOEY."

4     Q    DID YOU RECOGNIZE THE VOICE?

5     A    YES.

6     Q    WHO WAS THIS?

7     A    HECTOR.

8     Q    WHAT WERE YOU DOING AT THE TIME THAT YOU AND

9  HECTOR WENT IN THERE?

10    A    USING THE RESTROOM.

11    Q    CAN YOU TELL US WHAT THE BATHROOM LOOKS LIKE

12  AS YOU GO IN THE DOOR?

13    A    OKAY.  WHEN YOU GO IN TO THE RIGHT-HAND SIDE

14  YOU HAVE THE URINAL AND TO THE LEFT YOU HAVE A FACET AND

15  THEN YOU HAVE A TOILET STALL IN THE BACK.

16    Q    SO THERE IS HOW MANY STALLS?

17    A    ONLY ONE STALL.

18    Q    OKAY.  AND WHERE WERE YOU WHEN YOU HEARD

19  JOEY?

20    A    I WAS INSIDE THE STALL.

21    Q    INSIDE THE STALL?

22    A    YES.

23    Q    AFTER HECTOR CAME IN WHAT DID YOU SAY HE

24  SAID?

25    A    "YES, MY JOEY."

26    Q    HE WAS TALKING TO YOU?

27    A    YES.

28    Q    DO YOU KNOW HECTOR?



PAGE 1 NO. OF RESTROOM. FROM PAGES (8 AND 9)

DIAGRAM (1)



LOPEZ
TOILET
FAUSET
LOPEZ
HECTOR GARCIA
URINALS
MELARA

PAGE (9)

IF GARCIA IS HOLDING A KNIFE TO HECTORS THROAT. AND HECTOR IS AGAINST THE PARTITION OR FACING IT.

THAT MEANS.

1) HECTORS BACK IS AGAINST THE STALL

2) GARCIA IS FACING HIM. WITH THE KNIFE ON HECTORS THROAT ON HIS LEFT HAND. ( NO VISUAL FROM LOPEZ TOWARDS. GARCIAS RIGH HAND).

PAGE (10)

LOPEZ SEES DOLLAR BILLS ON GARCIAS RIGHT HAND HOW ?

1) UNLESS. GARCIA. IS FACING THE FRONT OF THE RESTROOM EXIT. WITH HIS BACK TO THE STALL. WITH THE KNIFE ON HECTORS THROAT

WHICH POSITION THEY WHERE. WAS NOT STABLISH BY EITHER COUNSEL

8

1   A    YES, I DO.

2   Q    HOW LONG HAVE YOU KNOWN HECTOR?

3   A    TWO-AND-A-HALF TO THREE YEARS.

4   Q    AND HOW IS IT YOU KNOW HIM?

5   A    HE LIVES IN THE NEIGHBORHOOD AND FROM THE

6   BAR.

7   Q    AFTER HECTOR SAID SOMETHING TO YOU DID YOU

8   HEAR ANYTHING ELSE AFTER THAT?

9   A    A FEW MINUTES LATER, YES.

10  Q    WHAT DID YOU HEAR?

11  A    I HEARD SOMEBODY SAY, "HECTOR."

12  Q    OKAY.

13  A    AND THEN, "GIVE ME YOUR MONEY."

14  Q    THIS, "GIVE ME YOUR MONEY," WAS IT IN ENGLISH

15  OR SPANISH?

16  A    IN SPANISH.

17  Q    DID YOU HEAR ANYTHING ELSE?

18  A    AT THAT TIME, NO.

19  Q    WHAT DID YOU DO?

20  A    WELL, I DIDN'T THINK NOTHING OF IT.  BUT THEN

21  I WALKED OUT AFTER.

22  Q    YOU HAD WALKED OUT OF A STALL?

23  A    AFTER I FINISHED USING IT.

24  Q    SO YOU CAME OUT INTO THE OPEN AREA OF THE

25  BATHROOM?

26  A    YES.

27  Q    AND WHAT DID YOU SEE WHEN YOU CAME OUT?

28  A    THE FIRST THING I SEEN WAS SOMEBODY TOWARDS

1   THE DOOR IN A SUIT.

2        Q    OKAY.  AND WHEN YOU SAY TOWARDS THE DOOR

3   STANDING OVER BY THE DOOR?

4        A    BY THE DOORWAY, YES, OF THE ENTRANCE.

5        Q    HE WAS WEARING A SUIT?

6        A    YES.

7        Q    AND DID YOU SEE ANYTHING ELSE?

8        A    ONCE I PASSED THE STALL, YES.

9        Q    SO WHEN YOU CAME OUT FROM BEHIND THE

10  PARTITION --

11       A    YES.

12       Q    -- WHAT DID YOU SEE?

13       A    I SEEN HECTOR AGAINST THE PARTITION WITH A

14  KNIFE AT HIS THROAT.

15       Q    OKAY.  WAS SOMEONE HOLDING THAT?

16       A    YES, SOMEONE WAS HOLDING IT.

17       Q    THEY WERE HOLDING HIM AGAINST THE PARTITION?

18       A    YES.

19       Q    DID YOU SEE ANYTHING ELSE IN THIS PERSON'S

20  HAND?

21       A    EXCUSE ME?

22       Q    DID YOU SEE ANYTHING IN THE ARMS OR HANDS?

23       A    YES, A KNIFE.

24       Q    WHERE WAS THE KNIFE?

25       A    THE KNIFE WAS IN HIS LEFT HAND.

26       Q    WHERE WAS HE HOLDING IT?

27       A    TOWARDS THE THROAT.

28       Q    WHOSE THROAT?

10

1    A    HECTOR'S THROAT.

2    Q    DID YOU SEE ANYTHING ELSE IN THE HANDS?

3    A    YES.  I SEEN SOME DOLLARS BILLS IN HIS HAND,

*THEY HAD MONEY, WHY COUNSEL, DID NOT BROUTH IT*

4    RIGHT HAND.  *IN TO EVIDENCE (IAC)*

5    Q    AND WHOSE HANDS WERE THEY IN?

6    A    THE GUY THAT IS HOLDING THE KNIFE.

7    Q    OKAY.  DOES HE HAVE THE KNIFE IN ONE HAND AND

8    THE DOLLAR BILLS IN THE OTHER HAND?

9    A    YES.

10    Q    DID YOU HEAR ANYTHING ELSE BEING SAID?

11    A    TOWARDS HIM, NO.

12    Q    HOW ABOUT THE GUY WHO HAD THE KNIFE IN HIS

13    HAND WITH THE DOLLAR BILLS, DID HE SAY ANYTHING ELSE TO

14    HECTOR?

15    A    NO.  WELL, YES, HE DID.

16    Q    WHAT DID HE SAY?

17    A    KEPT ON ASKING HIM, "GIVE ME ALL YOUR MONEY.

18    GIVE ME MORE MONEY."

19    Q    WHAT DID HECTOR SAY?

20    A    HE SAID HE DIDN'T HAVE ANYMORE.

21    Q    WHAT DID YOU DO?

22    A    WHEN I FIRST SEEN THAT I PUT MY HANDS UP.  I

23    SAID I DON'T WANT NO PART OF THAT.

24    Q    WHAT HAPPENED THEN?

25    A    THEN THE GUY THAT I SEEN AT THE DOORWAY WITH

26    THE SUIT COME TOWARDS ME TO BLOCK ME IN.

27    Q    ALL RIGHT.  HOW ABOUT THE GUY WITH THE KNIFE

28    DID HE SAY ANYTHING?

11

1       A    HE ASKED HIM HE SAID, "I'M GOING TO TAKE YOUR

2   MONEY, TOO."

*WHO DID HE ASK ? AND WHY CONTRADICTION OF POOR MEMORY STATEMENT*

3       Q    NOW, DID THE GUY COME TOWARDS YOU BEFORE OR

4   AFTER?

5       A    AFTER THAT WAS SAID THOUGH.

6       Q    AFTER THE GUY SAID HE WAS GOING TO TAKE YOUR

7   MONEY?

8       A    YES.

9       Q    DID THE GUY IN THE SUIT COME TOWARDS YOU

10  BEFORE OR AFTER THE GUY WITH THE KNIFE SAID, "I'M GOING

11  TO TAKE YOUR MONEY, TOO"?

12      A    AFTER HE TOLD ME, "I'M GOING TO TAKE YOUR

13  MONEY, TOO" THEN HE STARTED WALKING TOWARDS ME.

14      Q    AND WHAT DID YOU DO AS HE WALKED TOWARDS YOU?

15      A    WELL, HE WAS JUST WALKING TOWARDS ME.  HE

16  DIDN'T DO NOTHING TOWARDS ME, BUT HE TRIED TO BLOCK ME

17  IN.

*CONFUSED POOR MEMORY,*

18      Q    OKAY.  HOW DID HE BLOCK YOU IF HE WALKED

19  TOWARDS YOU?

20      A    THERE WOULD BE NO OTHER WAY OUT.  THERE'S

21  ONLY ONE DOOR.

22      Q    SO HE WAS BLOCKING YOUR ACCESS TO THE DOOR?

23      A    YES.

24      Q    WHAT DID YOU DO?

25      A    AS SOON AS I SEEN THAT I PUSHED HIM AND I RAN

26  OUT THE DOOR.

27      Q    WHEN YOU RAN OUT THE DOOR WHAT DID YOU DO?

28      A    I WENT STRAIGHT TO THE BARTENDER.  I TOLD HER

(HECTOR BEING LOPEZ FRIEND) LOPEZ BAIL OUT. LEAVING HECTOR BEHIND.

NOW HECTOR COMES RUNING OUT BEHIND LOPEZ. AND THE TWO GUYS ALSO CAME RUNNING BEHIND LOPEZ AND HECTOR. (CONTRADICTION FROM PAGE 50) LINE 13-2

NOW ON THIS TESTIMONY WE SEE THE MAN WITH THE SUIT. RUNING TOWARDS THE EXIT. AND THE GUY WITH THE KNIFE ACCORDING TO LOPEZ IS NOT LOOKING FOR NO ONE (SPECIFIC) IT LOOKS LIKE HE WANTS TO LEAVE.

PAGE 13) (WHAT DID HE DO) IS A QUESTION MARK. ON LOPEZ AS TO YEAH WHAT DID HE DO? BY MR TORRES. (Q AFTER HE WAS SWINGING IT REMEMBER) LOPEZ COMES BACK. (HE PICK UP A STOOL NOT HECTOR)

BESIDES HECTOR HOLDING A CHAIR (WHAT ELSE HE HAB IN HIS HAND.)

(THEN HE GETS STAB) NOW THE POSITIONS OR PLACE OF LOPEZ AND HECTOR IS NOT STABLISH HERE. ONLY THAT THEY ARE OUT IN TO THE BAR. FROM THE RESTROOMS INCIDENT. FROM BEING ROB BY THESE TWO MAN.

PAGE 14) LOPEZ IDENTIFYS GARCIA. BUT CAN RECALL THE FACE OF THE MAN WITH THE SUIT.

ACINTO) CROSS. LOPEZ DESCRIBES THERE FRINDSHIP. WITH HECTOR. AS CLOSE FRIEND AND WELL KNOWN AT THE BAR.

PAGE 15) LOPEZ TESTIFY AS THESE TWO MAN (GARCIA AND MEJARA) NOT BEING REGULARS AT THE (LIKA BAR) HE GOT THERE AT 4:30 PM ON AUGUST 30TH 1998 BY THE TIME ELEVEN HIT HE SAYS HE WAS (DRUNK) THE WORD TIPSY MEANS UNABLE TO (COMPREHEND, UNDERSTAND. OR OPERATE A MOVING VEHICLE) BY THE AUTO CLUB OF SOUTHERN CALIFORNIA.

PAGE 16) HE BECAME AWARE OF THE TWO MAN WHEN HE CAME IN AT 4:30 PM. AND ALL THEY DID WAS DRINK. (THE TWO MAN OF COURSE) PLUS THE REST OF THE PATRONS AS WELL. PLUS HECTOR OR LOPEZ DIDNT KNOW THIS TWO MAN. AND EVERY ONE ELSE WAS ACUINTED WITH EACH OTHERS. NOW HE GOES TO THE RESTROOM. (LOPEZ) BUT NO QUESTION AS TO WHERE IS HECTOR AT THIS TIME. (BY TORRES OR JACINTO) (INNEFECTIVE ASSISTANCE COUNSEL BY MR JACINTO) NOW LOPEZ IS NOT THE ONLY ONE DRINKING. BUT HE IS THE ONLY ONE WITH THE URGE TO USE THE RESTROOM. AND HE IS THERE IN THE RESTROOM FOR A FEW MINUTES.

1   TO CALL THE COPS.

2       Q    DID YOU SEE WHAT HECTOR DID?

3       A   ( NO.  BECAUSE HE WAS STILL INSIDE THE RESTROOM )

4   AT THAT TIME.

5       Q    WHEN YOU GOT OUT DID YOU SEE HECTOR?

6       A    YES.

7       Q    WHAT DID YOU SEE HIM DO?

8       A    I SEEN HIM RUNNING OUT OF THE RESTROOM.

9       Q    HOW ABOUT THE OTHER TWO GUYS, WHAT DID YOU

10  SEE?

11      A    THEY CAME RUNNING OUT.

12      Q    WHO CAME OUT FIRST?

13      A    THE ONE WITH THE SUIT ON.

14      Q    HOW FAR BEHIND, ONE SECOND?

15      A    THEY WERE PRETTY CLOSE.  MAYBE A COUPLE OF

16  FEET.

17      Q    WHAT HAPPENED IF ANYTHING AS THEY CAME OUT?

18      A    THE GUY IN THE SUIT WENT TOWARDS THE DOOR.  I

19  THOUGHT HE WAS LEAVING AND THE OTHER GUY WITH THE KNIFE

20  CAME OUT SWINGING IT.

21      Q    HOW WAS HE SWINGING IT?

22      A    LIKE THIS.  LIKE THIS WAY.

23      THE COURT:  WAVING THE RIGHT HAND LEFT AND RIGHT

24  IN FRONT OF HIS PERSON.

25  BY MR. TORRES:

26      Q    WAS THAT AT EVERYONE OR YOU?

27      A    ANYBODY OR EVERYBODY THAT WAS RIGHT NEAR HIM.

28      Q    SO WHAT DID HE DO? WHO

1    A    WHAT DID HE DO? *POOR MEMORY.*

2    Q    AFTER HE WAS SWINGING IT AROUND?

3    A    HE WAS SWINGING IT AT ME AND A FRIEND OF

4  MINE.  WE PICKED UP TWO STOOLS TO FIGHT HIM BACK.

5    Q    THEN WHAT DID HE DO?

6    A    HE WAS STILL SWINGING THE KNIFE AND THEN

7  THAT'S WHEN HECTOR WAS THERE AND HE WAS GOING TO PICK UP

8  A CHAIR.

9    Q    DID HECTOR PICK UP A CHAIR?

10    A    NO.  WELL, HE HAD IT IN HIS HAND.  HE DIDN'T

11  PICK IT UP ALL THE WAY.

12    Q    WHY?

13    A    BECAUSE HE HAD THAT -- AT THAT TIME HE TURNED

14  AROUND AND THAT'S WHEN HE GOT STABBED.

15    Q    WHO STABBED HIM?

16    A    THE ONE WITH THE KNIFE.

17    Q    THE ONE WITH THE KNIFE THAT STABBED HECTOR,

18  WAS THAT THE SAME ONE THAT HAD THE KNIFE TO HECTOR'S

19  THROAT IN THE BATHROOM?

20    A    YES.

21    Q    THE SAME ONE WITH THE MONEY IN HIS HAND?

22    A    YES.

23    Q    THE ONE THAT HAD THE KNIFE TO HECTOR'S

24  THROAT, DID YOU NOTICE WHAT HE WAS WEARING?

25    A    WHITE SHIRT AND BLACK PANTS, BLACK OR BLUE.

26  IT WAS DARK-COLORED.

27    Q    WOULD YOU LOOK AROUND AND SEE IF YOU SEE HIM

28  IN THE COURTROOM?

1    A    YES, I DO SEE HIM.

2    Q    WHERE IS HE?

3    A    SITTING AT THE TABLE RIGHT THERE.

4    Q    WHAT IS HE WEARING?

5    A    THE BLUE JAIL JUMPSUIT.

6    Q    COULD YOU POINT TO WHERE HE IS?

7    A    RIGHT THERE.

8    THE COURT:    POINTING AT AND LOOKING AT AND

9    IDENTIFYING MR. GARCIA FOR THE RECORD.

10    BY MR. TORRES:

11    Q    THE PERSON WEARING THE SUIT, COULD YOU TAKE A

12    LOOK AROUND THE COURTROOM AND SEE IF YOU CAN SEE HIM?

13    A    I CAN'T RECALL HIS FACE.

14    MR. TORRES:    I HAVE NO MORE QUESTIONS.

15    THE COURT:    ALL RIGHT.    MR. JACINTO.

16    MR. JACINTO:    THANK YOU.

17    (ONLY GARCIA IS IDENTIFY)

18    CROSS EXAMINATION

19

20    BY MR. JACINTO:

21    Q    MR. LOPEZ, YOU KNOW HECTOR VERY WELL THEN?

22    A    YES.

23    Q    AND DO YOU CONSIDER HIM A GOOD FRIEND?

24    A    A GOOD FRIEND, YES.

25    Q    WOULD IT BE ACCURATE TO DESCRIBE YOU AND HE

26    AS REGULARS AT THE BAR?

27    A    YEAH.

28    Q    SO IF YOU WERE TO GO IN THEY WOULD RECOGNIZE

15

1   YOU?

2       A    YES.

3       Q    AND IF HECTOR WENT ALSO, IT'S THE SAME

4   SITUATION, HE WOULD BE RECOGNIZED?

5       A    YES.

6       Q    AND THESE INDIVIDUALS THEN THEY WEREN'T
            *SO THEN, HOW COME (OARCIA) CALL HIM BY HIS*
7   REGULARS? *NAME HECTOR? IF THERE NOT REGULARS.*

8       A    NO, SIR.

9       Q    NOW, YOU SAID YOU WERE THERE AND AT ABOUT

10  11:15 YOU WENT INTO THE BAR -- I MEAN INTO THE RESTROOM?

11      A    YES.

12      Q    IS THAT BECAUSE YOU WERE LEAVING?

13      A    NO, SIR.

14      Q    YOU JUST NEEDED TO USE THE RESTROOM?

15      A    YES.

16      Q    HOW LONG HAD YOU BEEN DRINKING THAT DAY; DO

17  YOU RECALL?

18      A    I GOT THERE AT ABOUT 4:30.

19      Q    AND WERE YOU DRINKING FROM 4:30 TO 11:15?

20      A    YEAH.

21      Q    AND HAD YOU BECOME INTOXICATED?

22      A    I WOULD SAY A LITTLE BIT, YES.

23      Q    LITTLE BIT TIPSY?

24      A    YES.

25      Q    YOU WERE FEELING THE EFFECTS OF ALCOHOL AT
            *HE WAS DRUNK*
26  THAT PARTICULAR TIME?

27      A    YES.

28      Q    NOW, DO YOU REMEMBER WHEN YOU FIRST BECAME

16

1    AWARE OF THE TWO MEN?

2        A    WHEN WE WERE THERE.   WHEN I WALKED IN.

3        Q    THEY WERE THERE ALREADY WHEN YOU WALKED IN AT

4    4:30?

5        A    YES.

6        Q    AND DO YOU RECALL NOTICING THEM DO ANYTHING

7    OR ANYTHING THEY DID FROM THEN TO 11:15?

8        A    NO.   THEY JUST KEPT TO THEMSELVES.

9        Q    WERE THEY DRINKING AT THE BAR LIKE EVERYBODY

10    ELSE?

11        A    YES.

12        Q    WAS THE BAR VERY CROWDED?

13        A    NO.

14        Q    WOULD IT BE CORRECT TO SAY THAT OTHER THAN

15    THESE TWO FELLOWS MOST EVERYBODY IN THE BAR WAS A

16    REGULAR LIKE YOURSELF?

17        A    YES.

18        Q    SO EVERYBODY HAD BEEN THERE BEFORE?

19        A    YES.

20        Q    AS FAR AS YOU KNOW THESE TWO GUYS HAD NEVER

21    BEEN THERE BEFORE, YOU'D NEVER SEEN THEM?
     *SO THEN HOW COME GARCIA KNOWS HECTOR?*

22        A    NO.

23        Q    NOW, YOU WENT INTO RESTROOM FIRST?

24        A    YES.

25        Q    AND YOU WERE THE ONLY ONE THERE FOR HOW LONG

26    WOULD YOU SAY?

27        A    A COUPLE OF MINUTES.

28        Q    AND FROM YOUR TESTIMONY I TAKE IT THEN THE

PAGE 17) HE KNOWS SOMEONE ELSE IS THERE. BUT HE KNOWS IS HIS FRIEN HECTOR CAUSE HE SAYS JOEY MY BOY. HE HEARS THE VOICE BUT MAKES NO WORRYS IN HIS MIND. NOW MR JACINTO FAILS TO ASK LOPEZ ABOUT THE NAME OF HECTOR BEEN MENTION. WHEN ASK FOR THE MONEY AS HE TESTIFY ON PAGE ON DIRECT BY MR TORRES ON PAGE (8) LINE 7 - 13 WHY WAS HIS NAME MENTIONED TO BEGING WITH UNLESS MR GARCIA — KNEW HIM. (WICH IS NOT IN THIS CASE) ON PAGE (15) LINE 6 — 8 IT MAKE IT CLEAR THIS TWO INDIVIDUALS ARE NOT REGULARS. SO WHY WOULD THEY KNOW HECTORS NAME. COUNSELS FOR DEFFENSE DID NOT INVESTIGATE ABOUT THIS. (I A C)

PAGE 18) SO HE SEES THE MAN WITH THE SUIT (MR MELARA) ONCE HE IS OUT OF THE STALL. THEN SEES HECTOR. AGAINST THE STALL. WITH A KNIFE ON HIS THROAT AND THE MAN WITH THE SUIT (MR MELARA) WAS JUST STANDING BY THE DOOR. BUT ON PAGE. (9) 13 — 17 HE SAYS THEY WERE HOLDING MR HECTOR. AGAINST THE PARTITION. HOW CAN THIS BE. (MR MELARA)- COULD NOT BE HOLDING (HECTOR) WITH GARCIA. IF MR MELARA IS AT THE DOOR ENTRANCE TO THE RESTROOM. HOW CAN HE BE IN TWO PLACES AT THE SAME TIME (VERY IMPOSSIBLE) LINE (27 -28) JUST STOOD — THERE. NOT CLEAR TO THE POSITION OF MELARA. ANOTHER THING WHAT POSITION WAS GARCIA. WHEN HE IS HOLDING THE KNIFE ON HECTORS THRO AT. WITH HIS LEFT HAND. WERE BOTH FACING THE STALL OR FACING THE DOOR OF THE RESTROOM. VERY CRUCIAL QUESTION. NO ONE THOUGH OF IT WHY.

PAGE 19) MR LOPEZ IS CONFUSED OF THE WHERE ABOUTS OF EVERYONE. HE DOESNT REMEMBER WHEN HE SAID ON PAGE (9) THAT THEY WERE HOLDING HIM (HECTOR) AGAINST THE PARTITION. WHEN HE WALK OUT OF THE STALL. SO HOW THEN HE WALKS TOWARDS HIM TO BLOCK HIM FROM LEAVING THE RESTROOM. (MR LOPEZ) IT IS NOT CLEAR AS TO WHERE MELARA IS AT THIS POINT. PAGE (9) MELARA AND GARCIA IS HOLDING HECTOR BY THE PARTITION. PAGE (19) JUST STOOD THERE. (WHERE) AT THE DOOR OR HOLDING (HECTOR) WITH GARCIA. PAGE (19) HE WALK TOWARDS MR — LOPEZ TO BLOCK HIS AS HE IMAGINE. BUT FROM WHAT DIRECTION.

1   FIRST YOU BECAME AWARE THAT SOMEONE ELSE WAS IN THERE IS

2   WHEN YOU HEARD HECTOR SAY, "JOEY, MY BOY"?

3       A   YES.

4       Q   AND YOU KNEW IMMEDIATELY HE WAS REFERRING TO

5   YOU?

6       A   YES.

7       Q   YOU WERE INSIDE A STALL AND YOU COULDN'T SEE

8   HIM; IS THAT RIGHT?

9       A   YES, SIR.

10      Q   AND THEN YOU HEARD THE SOUND OF SOMEONE

11  COMING INSIDE OR DID YOU HEAR A VOICE?

12      A   I HEARD A VOICE *(WHAT DID HE SAID BEFORE)* HE DEMANDED MONEY

13      Q   SO YOU WERE NOT AWARE WHEN THIS MAN WITH THE

14  KNIFE CAME IN?

15      A   NO.

16      Q   AND YOU HEARD THIS DEMAND FOR MONEY OR

17  REQUEST FOR MONEY?

18      A   YES.

19      Q   AND YOU SAID IN YOUR TESTIMONY THAT YOU

20  THOUGHT NOTHING OF IT.  WHY WAS THAT?

21      A   BECAUSE MOST OF THE PEOPLE AT THE BAR ARE

22  REGULARS AND EVERYONE KNOWS EACH OTHER.

23      Q   DID YOU THINK IT WAS A JOKE?

24      A   PRETTY MUCH.

25      Q   SOMEBODY FOOLING AROUND?

26      A   YES.

27      Q   AND WHEN YOU HEARD THE VOICE YOU THOUGHT WELL

28  MAYBE IT IS SOMEBODY IN THE BAR?

A    YES.

Q    SO YOU DIDN'T IMMEDIATELY SAY THAT VOICE MUST

BELONG TO ONE OF THE TWO GUYS THAT I DON'T KNOW?
IS EVERY ONE IN THERE TALKING INGIISH OR SPANISH

A    NO, I DIDN'T THINK THAT.

Q    WHEN DID YOU BECOME AWARE THAT IT WAS

ACTUALLY SOMEBODY TO BE CONCERNED ABOUT?

A    ONCE I CAME OUT OF THE STALL.

Q    AND YOU ACTUALLY SAW WHAT WAS HAPPENING?

A    YES.

Q    SO UNTIL YOU WERE OUT OF THE STALL AND SAW

HECTOR WAS UP AGAINST THE PARTITION?

A    YES.

Q    AT THAT POINT THE KNIFE WAS AROUND TO HIS

THROAT; IS THAT RIGHT?

A    YES, SIR.

Q    AND THE MAN WAS STILL TALKING TO HECTOR?

A    YES.

Q    WHEN YOU FIRST CAME OUT OF THE STALL DID YOU

IMMEDIATELY BECOME AWARE OF THE MAN WITH THE SUIT?

A    YES.  THAT'S THE FIRST THING I COULD SEE.

Q    SO YOU CAME OUT OF THE STALL, YOU SAW HIM AND

HE DIDN'T SAY ANYTHING IMMEDIATELY THEN?
BUT DONT REMEMBER HIS FACE

A    NO, SIR.

Q    AND WHAT DID HE DO AS YOU SAW THAT HECTOR WAS

AGAINST THE PARTITION?  THE MAN WITH THE SUIT WHAT DID

HE DO?

A    HE STOOD AND WAS STANDING.

Q    JUST STOOD THERE?

1     A     YES.

2     Q     DO YOU REMEMBER WERE THE HANDS IN HIS

3 POCKETS?

4     A     JUST DOWN.

5     Q     JUST AT HIS SIDE?

6     A     YES.

7     Q     SO HE WASN'T DOING ANYTHING UNTIL AFTER I

8 THINK YOU SAID YOU HAD MADE A MOVE TO LEAVE THE

9 RESTROOM; IS THAT RIGHT?

10     A     NO, THAT'S NOT CORRECT.

11     Q     OKAY.  CORRECT ME.  WHAT IS THE FIRST THING

12 THAT HE DID OR SAID ANYTHING TO YOU, WHAT WERE YOU

13 DOING?

14     A     THE ONE IN THE SUIT?

15     Q     YES, SIR.

16     A     HE DIDN'T SAY NOTHING TO ME.

17     Q     AT SOME POINT I THINK YOU SAID THAT HE HAD

18 SAID SOMETHING.

19     A     WHEN THE OTHER GUY ASKED ME FOR MY MONEY.

20     Q     THE GUY WITH THE KNIFE?

21     A     YES, SIR.

22     Q     AND THE GUY WITH THE KNIFE IS THE ONE THAT

23 ASKED FOR MONEY?

24     A     YES, SIR.

25     Q     AND WHAT EXACTLY DO YOU RECALL THE GUY WITH

26 THE SUIT DOING WHILE YOU WERE STILL IN THE RESTROOM?

27     A     HE CAME TOWARDS ME TO BLOCK ME IN I WOULD

28 IMAGINE, BECAUSE THAT WAS THE ONLY WAY OUT.

*BUT WHAT DID HE SAID*

PAGE 20) MR. MELARA MOVES AWAY FROM THE DOOR AND FROM LOPEZ
ABOUT FOUR FEET FROM THE DOOR IN A NORMAL WAY. NO INDICATION
OF TROUBLE AT ALL. NO MALICE (REMEMBER THIS PEOPLE WERE DRUNK
AND WHEN PEOPLE ARE DRUNK. THE MIND WORKS DIFFERENT)
PAGE(11)(PAINST ANOTHER PICTURE. HOW WAS MR MELARA ABLE TO BLOCK
MR LOPEZ. IF MR MELARA IS HOLDING HIM. OR SOME KIND OF PHYSICAL
TOUCH. THERE IS NO TOUCHING ONLY THE ONE FROM MR LOPEZ WHEN
HE PHYCICALLY TOUCH MR MELARA. WHEN HE PUSH HIM TO LEAVE. THE
RESTROOM.) SO LINE 23 — 28 THERE IS NO ATTEMP BY MR MELARA
TO HOLD LOPEZ AT ANY TIME.

PAGE 21) NO CONVERSATION. NO INTENTIONS ON BLOCKING LOPEZ FROM LEAVING
THE RESTROOM. NO MOTIVES. NO MALICE. ONLY WALKING TOWARDS HIM
HE DID NOT GIVE ANY INDICATIONS. FOR TROUBLE. HOW LONG DO THIS
INCIDENT HAPPEN WITH LOPEZ AND MELARA. AND WHAT DID GARCIA AND
HECTOR WHERE DOING. (THE FOCUS IS ON MELARA.) AND NOT ON HECTOR
WITH THE KNIFE ON HIS THROAT. ALSO (MELARA) THE MAN WITH THE SUIT
IS GOING TOWARDS THE EXIT FROM THE BAR.
ON PAGE (12) BOTH CAME OUT RUNNING. (MELARA AND GARCIA) BEHIND
LOPEZ AND HECTOR. BUT NOT TO FIGHT. (MELARA TOWARD THE EXIT DOOR
FOLLOW BY GARCIA. AS TO BE DEFFENDING THEM SELFS.)

PAGE 22) LOPEZ PUSH MELARA OUT THE WAY. TO GET BY AND LEAVE THIS REAL
CRITICAL SITUATION ACCORDING TO HIM. RUNS OUT TO THE BARTENDER
(ADKINS) AND TELLS HER. OF A PROBLEM IN THE RESTROOM.
LINES 12) THROUGH. 28) PUTS THEM OUT BEFORE LOPEZ AND GARCIA.
CAME OUT OF THE RESTROOM. SEE DRAWING FROM PAGES (8 AND 9) AND
UNDER CROSS. HE SAYS THE MAN WITH THE SUIT. GOES TOWARDS THE
EXIT. AS TO LEAVE WITH GARCIA BEHIND HIM.

PAGE 23) NOW MELARA LEAVES TOWARD THE DOOR. BUT GARCIA DOES NOT FOLLOW.
THEY BOTH WHERE BEHIND HECTOR (MELARA AND GARCIA) SO MELARA
RUNS PAST HECTOR. NOW HERE WE SEE HECTOR IS STANDING BY
THE DOOR. OF THE RESTROOM. AS IF HE WAS THE SECOND TO COME
OUT OF THE RESTROOM. FOLLOWING LOPEZ BUT HE IS STANDING (WHY

20

1        Q    LET'S SEE I NEED TO CLEAR IT UP.  I APOLOGIZE

2  FOR BEING PICKY, BUT AS FAR AS WHAT HE DID AS HE CAME AT

3  YOU WHAT WAS HE DOING?  DID HE JUST WALK AT YOU IN A

4  NORMAL MANNER?

5        A    YES.

6        Q    HE WALKED IN YOUR DIRECTION?

7        A    YES.

8        Q    HOW FAR AWAY FROM YOU WAS HE WHEN HE WALKED

9  AT YOU?

10       A    FROM HERE TO THE DEPUTY.

11      THE COURT:    INDICATING THREE OR FOUR FEET.

12  BY MR. JACINTO:

13       Q    HE WAS ABOUT AS FAR FROM YOU AS THE DEPUTY IS

14  RIGHT NOW WHEN HE FIRST STARTED WALKING TOWARDS YOU?

15       A    FROM WHERE HE WAS STANDING AT?

16       Q    YES.  WHERE HE IS STANDING BY THE DOORWAY.

17       A    YES.

18       Q    WHEN HE STARTED WALKING TOWARDS YOU AND YOU

19  DECIDED TO LEAVE THE BAR I THINK YOU SAID YOU PUSHED HIM

20  AWAY --

21       A    YES.

22       Q    -- AND LEFT THE BAR.

23        HOW CLOSE DID HE ACTUALLY GET TO YOU BEFORE

24  YOU STARTED RUNNING FROM THE BAR?

25       A    MAYBE A COUPLE OF FEET.

26       Q    WHEN HE CAME AT YOU DID HE RAISE HIS HANDS

27  LIKE? THIS

28       A    NO, SIR.

1    Q    DID HE SAY ANYTHING?

2    A    NO.

3    Q    WHAT WAS THE EXTENT OF HIS WORDS THAT HE SAID

4    WHILE IN THE BAR IF YOU REMEMBER?

5    A    WHOSE WORDS?

6    Q    THE MAN WITH THE SUIT BY THE DOOR.

7    A    I DIDN'T HEAR NO WORDS FROM HIM.

8    Q    YOU DIDN'T HEAR HIM SAY ANYTHING?

9    A    NO, SIR.

10    Q    AND WHEN HE WALKED TOWARDS YOU DO YOU KNOW OR

11    CAN YOU CHARACTERIZE OR TELL US HOW MANY STEPS HE TOOK

12    TOWARDS YOU?

13    A    NO.  I WASN'T WATCHING HIS FEET.

14    Q    BUT HE WAS CLEARLY MOVING IN YOUR DIRECTION?

15    A    YES, SIR.

16    Q    DO YOU REMEMBER IF HE LIFTED HIS HANDS OR

17    WERE THEY STILL AT HIS SIDE?

18    A    FROM WHAT I CAN REMEMBER AT HIS SIDE.

19    Q    AGAIN, JUST TO MAKE SURE I HAVE GOT THIS

20    CLEAR.  THE MAN AT THE DOOR THEN SAID NOTHING TO YOU THE

21    ENTIRE TIME YOU WERE IN THE RESTROOM; IS THAT RIGHT?

22    A    YES, SIR.

23    Q    BUT HE DID WALK TOWARDS YOU?

24    A    YES, SIR.

25    Q    BUT AS FAR AS YOU CAN RECALL HE DIDN'T LIFT

26    HIS HANDS OR DO ANYTHING ELSE OTHER THAN TAKE STEPS IN

27    YOUR DIRECTION; IS THAT RIGHT?

28    A    YES, SIR.

22

1  Q   AND YOU PUSHED HIM OUT OF THE WAY BECAUSE YOU

2  NEEDED TO GET PAST HIM TO GET TO THE DOOR?

3  A   TO GET OUT OF THERE, OUT OF THE SITUATION,

4  YES.

5  Q   AT THAT POINT THE SITUATION WAS CRITICAL TO

6  YOU?

7  A   TO ME IT WAS, YES, SIR.

8  Q   OKAY.  AND YOU RAN OUT IMMEDIATELY TO THE

9  BARTENDER AND SAID THERE'S A PROBLEM OR WORDS TO THAT

10 EFFECT?

11 A   YES.

12 Q   AND THEN YOU TURNED AROUND AND YOU SAW A MAN

13 WITH THE SUIT COMING OUT OF THE BAR -- I MEAN OUT OF THE

14 RESTROOM?

15 A   NO, SIR.

16 Q   HE WAS ALREADY OUT?

17 A   NO.

18 Q   WHEN DID YOU ACTUALLY SEE HIM?

19 A   AFTER HECTOR HAD CAME OUT OF THE RESTROOM.

20 Q   I'M SORRY.  HECTOR CAME OUT FIRST?

21 A   YES.

22 Q   AND THEN THE MAN WITH THE SUIT?

23 A   YES.

24 Q   AND THEN THE MAN WITH THE KNIFE?

25 A   YES.

26 Q   AND YOU SAID DURING YOUR DIRECT EXAMINATION

27 THAT IT APPEARED TO YOU THE MAN WITH THE SUIT WAS

28 WALKING TOWARDS THE DOOR AS IF TO GET OUT AND LEAVE THE

23

1   BAR?

2       A   YES.

3       Q   IS THAT CORRECT?

4       A   YES.

5       Q   AND DID THE OTHER MAN SEEM TO FOLLOW HIM?

6       A   NO, SIR.

7       Q   THE OTHER MAN WHO CAME OUT SWINGING THE

8   KNIFE?

9       A   YES, SIR.

10      Q   BUT HECTOR HAD COME OUT FIRST.  HOW FAR AWAY

11  FROM THE TWO FELLOWS WAS HECTOR?

12      A   THEY WERE ACTUALLY RIGHT BEHIND HIM.

13      Q   SO THEY CAME OUT IN SEQUENCE ONE RIGHT AFTER

14  THE OTHER?

15      A   YEAH, PRETTY MUCH.

16      Q   HECTOR, THE MAN WITH THE SUIT AND THE GUY

17  WITH THE KNIFE?

18      A   YES, SIR.

19      Q   DID THE MAN WITH THE SUIT RUN PAST HECTOR

20  THEN AT SOME POINT?

21      A   HE HAD WENT BY HIM TOWARDS THE DOOR THAT
                (WICH DOOR ) ?
22  HECTOR WAS STANDING AT.

23      Q   THE MAN WITH THE SUIT LEAVES THE BAR --

24  EXCUSE ME, THE RESTROOM DOOR AFTER HECTOR RUNS BY HIM AS

25  IF TO GO TOWARDS THE DOOR?

26      A   YES.

27      Q   AND THEN THE OTHER MAN WITH THE KNIFE HE

28  COMES OUT AND HE IS SWINGING AT WHERE HECTOR WAS.  DID

PAGE 24) HERE HE SAYS HECTOR WAS TRYING TO DEFFEND HIM SELF NOW

GO BACK TO PAGE 13) LINE 2 THROUGH 15 HECTOR IN NOT DEFENDING HIM SELF. (HE IS STANDING WITH A CHAIR ON HIS HANDS. NOT RAISE BUT DOWN) LINE 13 SAYS HE TURN AROUND SO THAT MEANS HE WAS NOT FACING MEIARA OR GARCIA.

IT IS NOT CLEAR WHAT DOOR OR EXIT. (I AC) BY MR. JACINTO.

PAGE 25) MEIARA IS SIX FEET FROM THE EXIT. SO GARCIA IS IN BETWEEN MEIARA AND HECTOR. FACING WHERE. AND WE SEE NO MALICE OR ANY INTENTIONS ON KILLING NO ONE. (JUST TO GET OUT)

PAGE 26) HE WAS NOT TROWING IT. HE WAS TRYING (WHAT) SO AFTER EVERY ONE IS OUTSIDE THE RESTROOM. THE FIGHT STARTS AND GARCIA GOES AFTER HECTOR. PAGE 13) SAYS IT DIFFERENT LINE 1 THROUGH 3) HECTOR IS NOT IN THE PICTURE. (NOT AFTER HE SWINGS IT TO LOPEZ AND HIS FRIEND THEN HECTOR. POOR MEMORY. NO RECOLACTION OF EARLY TESTIMONY TO MR TORRES UNDER OATH. DOES NOT RECALL HOW LONG IT TOOK.

PAGE 27) SAME QUESTIONS.

PAGE 28) (GARCIA) IS THE ONLY ONE IN THE MIST. (I AC) BUT MEIARA NEVER WENT AFTER NO ONE. (I AC) (INNAFECTIVE ASSISTANCE COUNSEL.)

CROSS BY (NICOLE) PAGE 6) CONTRADICTS LINE 21-23

GO BACK TO PAGE 6 LINE (21 THROUGH 23) HE SAYS WITH AFFIRMATION THAT HE DID GO TO THE RESTROOM ABOUT 11:15 PM. QUESTION IS HOW DID HE KNEW THE TIME. WAS LOPEZ KEEPEN TRACK OF TIME FOR A REASON WHEN ASK BY NICOLE IF HE HAD BEEN AT THE BAR. FOR ABOUT FOUR TO FIVE HOURS. LOPEZ SAYS (YES) BUT GO BACK TO PAGE (15) WHEN ASK BY MR JACINTO (LOPEZ) PUTS HIMSELF FROM 4:30 PM TILL 11:15 PM. THAT PUTS LOPEZ AT THE BAR 7 HRS TOTALL. AND HE ALSO SAYS THAT HE WAS DRINKING FROM THE TIME HE GOT THERE TILL THE TIME OF INCIDENT AT THE BAR. A PERSON AT A BAR DRINKING (7 HRS.) IT HAS TO MAKE IT HARD NOT TO USE THE BATHROOM. NO QUESTIONS TO LOPEZ AS TO HOW MANY TIMES →

24

1    HECTOR STOP THEN?

2          A    HECTOR WAS TRYING TO DEFEND HIMSELF.

3          Q    THAT'S WHAT I'M GETTING AT.   DID HECTOR

4    ACTUALLY STOP AT SOME POINT AFTER HE HAD LEFT THE

5    RESTROOM?

6          A    YES.

7          Q    AND TURN AROUND?

8          A    YES.

9          Q    DID HECTOR RAISE HIS FISTS OR ANYTHING?

10         A    NO.

11         Q    BUT HE DID GET TO TURN AROUND; IS THAT RIGHT?

12         A    YES, HE DID.

13         Q    AND AT THAT POINT WHEN HECTOR TURNED AROUND

14   THE MAN WITH THE SUIT WAS ALREADY TOWARDS THE DOOR?

15         A    NO.  HE WAS STANDING RIGHT THERE.   THERE IS

16   ABOUT SIX FEET TO GET OUT OF THE DOOR, BUT ANOTHER

17   PARTITION RIGHT THERE.   HE WAS STANDING RIGHT

18   THERE.

19         Q    WAS THAT LIKE GOING IN THE DIRECTION OF THE

20   DOOR?

21         A    YES.

22         Q    SO HE WAS STILL MOVING TOWARDS THE DOOR WHEN

23   HECTOR TURNS AROUND?

24         A    WELL, HE WASN'T MOVING TOWARDS THE DOOR.  HE

25   WAS STANDING STILL.

26         Q    I'M SORRY, HE WAS STANDING STILL?

27         A    HE WAS STANDING RIGHT THERE IN THE FRONT.  HE

28   WAS NOT MOVING TOWARDS THE DOOR.

| | | |
|---|---|---|
| 1 | Q | THE MAN IN THE SUIT STOPPED AT ONE POINT? |
| 2 | A | YES. |
| 3 | Q | WHEN HE HAD STOPPED WAS HE CLOSER TO THE DOOR |

4    OR TO THE RESTROOM?

| 5 | A | HE WAS SIX FEET AWAY FROM THE DOOR. |
| 6 | Q | FROM THE DOOR TO THE BAR? |
| 7 | A | YES. |
| 8 | Q | TO EXIT THE DOOR? |
| 9 | A | TO EXIT THE DOOR, YES. |
| 10 | Q | AND HOW FAR AWAY FROM THE MAN WITH THE SUIT |

11    WAS HECTOR WHEN HECTOR TURNED AROUND?

| 12 | A | ABOUT THREE TO FOUR FEET. |
| 13 | Q | AND SO I'M TRYING TO MAKE SURE I HAVE GOT THE |

14    PICTURE CORRECT.  THE MAN WITH THE SUIT IS CLOSEST TO

15    THE DOOR AS IF INBETWEEN HE AND THE MAN WITH THE KNIFE.

16    HECTOR THEN TURNED AROUND AND FACED THE MAN WITH THE

17    KNIFE?

| 18 | A | WELL, <u>ACTUALLY THE MAN WITH THE KNIFE IS</u> |

19    <u>INBETWEEN</u>.

| 20 | Q | OKAY.  THE MAN WITH THE KNIFE THEN WAS |

21    CLOSEST TO THE MAN WITH THE SUIT THEN?

| 22 | A | YES. |
| 23 | Q | AND THEN AT SOME POINT HE GOES BACK TO |

24    HECTOR; IS THAT RIGHT?

| 25 | A | <u>HE JUST WENT AFTER EVERYBODY.</u> |
| 26 | Q | AND HE WAS SWINGING WILDLY? |
| 27 | A | YES. |
| 28 | Q | DID HE SEEM THEN JUST TO BE THROWING THE |

26

1    KNIFE EVERYWHERE?

2        A    IF HE WAS THROWING IT?  HE WAS --

3        Q    I'M SORRY.

4        A    HE WAS TRYING.

5        Q    I'M SORRY.  POOR CHOICE OF WORDS.  I MEAN

6    SWINGING EVERYWHERE INDISCRIMINATELY AS IF HE DIDN'T

7    CARE?

8        A    YES.

9        Q    ALL RIGHT.  AT SOME POINT DID HECTOR COME AT

10   THIS MAN WHO WAS SWINGING THE KNIFE?

11       A    NO.

12       Q    THE MAN THEN WENT TOWARDS HECTOR?

13       A    YES.

14       Q    AND THAT WAS AFTER EVERYBODY WAS OUTSIDE OF

15   THE RESTROOM; IS THAT RIGHT?

16       A    YES.

17       Q    AT SOME POINT THE FELLOWS THEN LEFT THE BAR?

18       A    YES.

19       Q    IT WAS AFTER HECTOR WAS HURT?

20       A    YES.

21       Q    AS YOU SAW THE MAN WITH THE SUIT LEAVING AND

22   I KNOW IT IS HARD BECAUSE ALL OF THIS HAPPENED AND YOUR

23   FRIEND WAS KILLED, BUT CAN YOU TELL US FROM THE TIME

24   THAT THESE INDIVIDUALS -- LET'S SAY FROM THE TIME YOU

25   HEARD GIVE ME THE MONEY OR NOISES TO THAT EFFECT TO THE

26   TIME THAT THE MAN WITH THE SUIT ACTUALLY LEFT THE BAR

27   CAN YOU TELL US HOW MUCH TIME PASSED: A COUPLE OF

28   SECONDS, MINUTES?

1        A    I COULDN'T TELL YOU, SIR.

2        Q    WAS IT VERY FAST THEN?

3        A    IT SEEMED LIKE FOREVER TO ME.

4        Q    AS FAR AS YOU KNOW THEN THE ONLY ONE THAT

5   ACTUALLY WAS HURT WAS HECTOR?

6        A    YES.

7        Q    AND NOBODY ELSE IN THE BAR INCLUDING YOURSELF

8   WAS INJURED?

9        A    NO.

10       Q    AND AS FAR AS THE MAN WITH THE SUIT AGAIN,

11  CORRECT ME IF I'M WRONG, BUT FROM WHAT I UNDERSTAND OF

12  THE TESTIMONY THE FIRST TIME YOU BECAME AWARE OF THIS

13  INCIDENT WAS THAT HE WAS STANDING AT THE DOOR AND HE WAS

14  KIND OF IN THE WAY; IS THAT RIGHT?

15       A    WELL, AT FIRST I DIDN'T KNOW IF HE WAS IN MY

16  WAY.

17       Q    I UNDERSTAND.  WHEN YOU SAW HIM AT THE

18  DOORWAY IS THE FIRST TIME YOU BECAME AWARE OF HIM INSIDE

19  THE RESTROOM?

20       A    YES.

21       Q    WHAT DID HE DO, TAKE A COUPLE OF STEPS

22  TOWARDS YOU AND YOU JUST PUSHED HIM AWAY AND GOT OUT OF

23  THERE?

24       A    YES.

25       Q    SO HE NEVER ACTUALLY CAME TOWARDS YOU AFTER

26  THAT; IS THAT RIGHT?

27       A    YES.

28       Q    AND AS FAR AS YOU CAN TELL HE NEVER ACTUALLY

1   WENT TOWARDS HECTOR EITHER; IS THAT CORRECT?

2          A    YES.

3      MR. JACINTO:    THANK YOU, SIR.

4          NO FURTHER QUESTIONS.

5      THE COURT:    MISS COLE.

6      MS. COLE:    THANK YOU.

7

8                    CROSS EXAMINATION

9

10   BY MS. COLE:

11         Q    IT WAS AROUND 11:15 WHEN YOU HAD ENTERED THE

12   BATHROOM?

13         A    I DIDN'T KNOW WHAT TIME IT WAS.

14         Q    YOU HAD BEEN THERE FOUR OR FIVE HOURS?

15         A    ABOUT THERE, YES.

16         Q    FROM THE TIME THAT YOU GOT THERE YOU SAW TWO

17   GENTLEMEN THERE ALREADY; IS THAT CORRECT?

18         A    YES.

19         Q    WERE THEY SITTING TOGETHER?

20         A    YES.

21         Q    DID THEY APPEAR TO BE DRINKING?

22         A    YES.

23         Q    FROM THE TIME THAT YOU WERE AT THE BAR DID

24   YOU NOTICE THEM ORDERING MORE ALCOHOL?

25         A    I DID SEE THEM BUY IT.

26         Q    YOU DID SEE THEM BUYING IT?

27         A    YES.

28         Q    DO YOU RECALL HOW MANY TIMES THEY ASKED FOR

HE HAD TO USE THE RESTROOM. PLUS (COUNSELS) FAIL TO ASK
WHO WAS HECTOR HANGING WITH AT THE BAR. HE IS PUT AT THE
BAR. BUT WHERE IS THE QUESTION. AND ALSO NO TIME AS TO WHEN
HECTOR GOT TO THE BAR.

ALSO (MEJARA AND GARCIA) ARE PUT TOGETHER. IN THE BAR BUT-
AWAY FROM THE CROWD. LOPEZ ALSO NOTICE THEM. BUYING BEER.
WHY? WAS HE KEEPING AND EYE ON THEM.

1) THEY WHERE STRANGERS.

2) THEY WHERE DRESS DIFFERENT.

3) THEY SAT BY THEMESELFS. BY THE (JUK BOX)

4) THEY HAD MONEY TO SPEND.

PAGE 29) ACCORDING TO HIM. NO ONE CONVERSE WITH THIS TWO GUYS.
NOW LOPEZ IS IN THE RESTROOM WITH HECTOR. WHY HECTOR
AND NOT NO ONE ELSE. THIS IS THE FIRST TIME LOPEZ AND HECTOR
ARE PUT TOGETHER THROUGH OUT THE PM HRS FROM 4:30 PM THROUGH
11:15 PM. WHY?

HOW (DO THIS PEOPLE) OR GARCIA KNOWS THIS INDIVIDUALS NAME
IF THERE NOT REGULARS

PAGE 30) LOPEZ COMES OUT. AFTER HEARING IN SPANISH HECTOR GIVE
ME YOUR MONEY. SEES A MAN WITH A KNIFE ON HECTORS THROAT
AGAINST THE PARTITION (OR WHAT ABOUT TESTIMONY ON PAGE
8.) LINE 27 – 28   PAGE 9) LINE 2 – 5. POOR MEMORY. 2.264
CALIFORNIA EVIDENCE

NO ELEMENTS WERE INCLUDED FOR THE JURY TO GIVE A FAIR
VERDICT. WITNESS WERE NOT SUBPOENAED RULE 31 CC)
WITNESS TESTIMONY WAS INCONSISTENT. FROM PRE HEARING
ARTICLE VIII 28 USC APP P 771 [28 USCS APPX FED RULES OF
EVID NOTES PRECEDING RULE 801] EVASIVE OR UNTRUTHFULL
ANSWERS. SO WHERE IS THE MAN WITH THE SUIT NOW. AND
ALSO REPEATITION OF EARLY TESTIMONY AS TO WHERE
IS THE MONEY  GO TO PAGES, C 8 AND 9.) AND DIAGRAM (1)

1  MORE BEERS?

2       A    NO.

3       Q    FROM THE TIME YOU ARRIVED AND FROM THE TIME

4  YOU WENT TO THE BATHROOM IT APPEARED THEY WERE DRINKING

5  TOGETHER; IS THAT CORRECT?

6       A    YES.

7       Q    AND THEY WERE SITTING AWAY FROM WHERE YOU

8  WERE SITTING?

9       A    YES.

10      Q    BASICALLY KEEPING TO THEMSELVES?

11      A    YES.

12      Q    DID YOU OR ANY OF THE OTHER PATRONS IN THE

13  BAR OR BARTENDER HAVE ANY CONVERSATION WITH THEM?

14      A    I DON'T KNOW IF ANYBODY ELSE DID.  I DID NOT.

15      Q    YOU DID NOT?

16      A    NO.

17      Q    FROM THE TIME YOU ENTERED THE BATHROOM IT WAS

18  A FEW MINUTES BEFORE YOU HEARD HECTOR COME IN AND SAY

19  SOMETHING TO YOU; IS THAT CORRECT?

20      A    YES.

21      Q    THE NEXT THING THAT YOU HEARD WAS SOMEBODY

22  ASKING ABOUT MONEY; IS THAT CORRECT?

23      A    YES.

24      Q    DID YOU HEAR -- (GIVE ME YOUR MONEY)

25      A    NO, THAT IS NOT CORRECT.

26      Q    WHAT WAS THE FIRST THING THAT YOU HEARD?

27      A    I HEARD HECTOR'S NAME BEING MENTIONED.

28      Q    YOU HEARD HIM CALL HIM BY THE NAME HECTOR?

1    A    YES.

2    Q    AND AFTER YOU HEARD THE NAME HECTOR IT WAS

3    RIGHT AFTER THAT YOU HEARD SOMEONE ASK FOR MONEY?

4    A    YES.

5    Q    WAS IT IN SPANISH?

6    A    YES.

7    Q    DID YOU RECOGNIZE THAT VOICE?

8    A    NO.

9    Q    DID YOU HEAR ANYTHING ELSE IN THE BATHROOM

10   LIKE WATER TURNED ON OR LIGHTS BEING FLICKED?

11   A    NO.

12   Q    AFTER YOU EXITED THE STALL AND YOU SAW THE

13   MAN WITH THE KNIFE DID HE SAY ANYTHING TO YOU

14   IMMEDIATELY UPON EXITING THE STALL?

15   A    A MINUTE, TWO MINUTES LATER, YES.

16   Q    WELL, IN THAT MINUTE HE WAS ASKING HECTOR FOR

17   MORE MONEY; IS THAT CORRECT?

18   A    YES.

19   Q    HE HAD SOME MONEY IN HIS HANDS; IS THAT

20   CORRECT?

21   A    YES.

22   Q    WHICH HAND WAS THE MONEY IN?

23   A    THE RIGHT HAND.

24   Q    THE KNIFE WAS IN THE LEFT HAND?

25   A    YES.

26   Q    AND HECTOR HAD HIS BACK TO THE PARTITION;

27   WOULD THAT BE CORRECT?

28   A    YES.

PAGE 31) ONCE LOPEZ IS OUT FROM THE STALL. SEES HECTOR WITH A — KNIFE ON HIS THROATH. BUT NO VIEW OF MAN ON SUIT ON THIS TESTIMONY GO BACK TO PAGES (8 AND 9) AND ONLY ONCE HE IS ASK FOR MONEY. NO MOVEMENTS ARE DONE EITHER BY GARCIA OR NO ONE ELSE. AND NO KNIFE IS POINT AT HIM. SO NOW AT THIS POINT. THE MAN ON THE SUIT WALKS TOWARDS HIM (NOW MY QUESTION IS HOW. ON PAGE (9 LINE. 17 HE SAYS THEY WERE HOLDING THE KNIFE ON HECTORS THROATH AGAINST THE PARTITION. HOW, THEN THE MAN ON THE SUIT WALK TOWARDS HIM. BEING AT THE DOOR ENTRANCE AND HOLDING HECTOR AT THE SAME TIME. IMPOSSIBLE DONT YOU THINK. WHEN ASK IF THE MAN WITH THE KNIFE (GARCIA.) POINST IT AT HIM. (THROUGH RE-EXAMINATION AND CROSS-EXMINATION NOT ONCE THERE NAMES ARE MENTION) WHY. IT SOUNDS LIKE THE GENTELMAN WITH A SUIT (MELARA) AND THE MAN WITH A KNIFE (GARCIA) ARE NOT (KNOWING) AT THE BAR. BUT THEY ARE POR-TRAIT AS THEY DO KNOW (HECTOR) AS ON PAGE (8) LINE 10-11)

PAGE 32) SAYS NO AS TO THE KNIFE BEEN POINT IT AT HIM.
NOW ON GOING BACK TO THE RESTROOM. ON PAGE (8 - LINE 27-28 HE SEES SOME BODY TOWARDS THE DOOR BUT NO VISUAL OF HECTOR YET. PAGE (9 THE DESCRIPTION OF (MELARA) (THE MAN WITH THE SUIT.) ONCE OUT FROM THE PARTITION. HE SEES HECTOR. WITH A KNIFE ON HIS — THROATH. AND THEY WERE HOLDING HIM AGAINST THE PARTITION. ALSO SEE DIAGRAM # 1 QUESTION.
1) IF LOPEZ RUN OUT OF (RESTROOM) FIRST. BUT DOES NOT NO THE WHAT HAPPEN TO HECTOR. AS ON PAGE (12 LINE 2 - 3) BUT HECTOR IS BEHIND LOPEZ AS ON PAGE (13 LINE 6-13 HECTOR IS ALREADY. OUT SIDE THE RESTROOM. AND IN TO THE BAR. EAREA WITH A CHAIR ON HIS HAND.
2) SO THEN BOTH GOT LOOSE HOW. GO BACK TO PAGE (9) LINE 13 -27. SO HECTOR IS IN NO DANGER AS THEY SAY HE WAS.

1    Q    AND THE GENTLEMAN WITH THE KNIFE WAS STANDING

2  IN FRONT OF HIM?

3    A    UH-HUH.

4    THE COURT:    IS THAT YES OR NO?

5    THE WITNESS:    YES.

6  BY MS. COLE:

7    Q    YOU HAD YOUR HANDS UP; IS THAT CORRECT?

8    A    YES.

9    Q    AND DID YOU TAKE A STEP TOWARDS HECTOR?

10   A    NO.

11   Q    DID YOU JUST STAND RIGHT THERE AS --

12   A    YES.

13   Q    -- YOU EXITED?

14   THE COURT:    WAIT UNTIL SHE FINISHES THE QUESTION.

15   THE WITNESS:    I'M SORRY.

16  BY MS. COLE:

17   Q    AT SOME POINT DID THE GENTLEMAN ASK YOU FOR

18  YOUR MONEY?

19   A    YES.

20   Q    DID HE SAY THAT IN ENGLISH OR SPANISH?

21   A    SPANISH.

22   Q    AND DID HE SAY IT ONCE OR TWICE?

23   A    ONCE.

24   Q    AND DID HE TAKE ANY STEPS TOWARDS YOU?

25   A    NO.

26   Q    I AM TALKING ABOUT THE MAN WITH THE KNIFE?

27   A    NO.

28   Q    DID HE POINT THE KNIFE AT ANY TIME AT YOU?

32

1    A.    NO.

2        Q    AT THAT POINT IS WHEN THE OTHER GENTLEMAN IN

3   THE SUIT TOOK A STEP TOWARDS YOU; IS THAT CORRECT?

4        A    YES.

5        Q    AND THEN YOU PUSHED HIM OUT OF THE WAY AND

6   RAN OUT?

7        A    YES.

8        Q    FROM THE TIME YOU EXITED THE STALL TO THE

9   TIME YOU RAN OUT WOULD IT BE A MATTER OF SECONDS?

10       A    I -- I DON'T KNOW HOW MANY MINUTES OR SECONDS

11  IT WAS.

12       Q    AS YOU ENTERED THE BAR FROM THE BATHROOM AND

13  HECTOR RAN OUT FOLLOWED BY THE MAN WITH THE SUIT YOU

14  INDICATED YOU PICKED UP A STOOL; IS THAT CORRECT?

15       A    NOT RIGHT AT THAT TIME, NO.

16       Q    HOW LONG AFTER THEY RAN OUT OF THE BATHROOM

17  DID YOU PICK UP THAT STOOL?

18       A    WHEN THE GENTLEMAN WITH THE KNIFE CAME OUT

19  SWINGING IT.

20       Q    SO IF I'M CORRECT THEN HECTOR CAME OUT FIRST,

21  THEN THE MAN IN THE SUIT AND THEN THE MAN WITH THE KNIFE

22  CAME OUT?

23       A    YES.

24       Q    AND THEN THE MAN IN THE SUIT RAN TOWARDS THE

25  DOOR; IS THAT CORRECT?

26       A    YES.

27       Q    AND HECTOR RAN TOWARDS WHERE?

28       A    TOWARDS WHERE THE TABLES WERE.

ON PAGE (9) LINE 27-28 HECTOR RUNS TOWAR THE TABLES
WHAT TABLES. COUNSEL DOES NOT STABLISH THE PLACE OF THERE -
LOCATION ON THE BAR AT THE TIME OF INCIDENT.

PAGE 33) I A C BY COUNSEL. MR LOPEZ WAS NOT AN EXPERT ON TESTIFYING
THE INTOXICATION OF THE PEOPLE AT THE BAR HE WAS A WITNESS
NOT AND EXPERT (INTOXIMINATIONS) COUNSEL FAIL TO VERIFY IS -
THERE WAS A TEST DONE ON EITHER MEJARA OR GARCIA.

PAGE 34) QUESTION IS WHERE WERE THEY. WE KNOW IN THE BAR BUT
WHAT LOCATIONS. NOT STABLISH.
NOW HECTORS BACK IS TOWARDS LOPEZ ONCE OUT OF THE RESTROOM
LINE 25-26 AND HECTOR IS A COUPLE OF FEET FROM THE MAN
WITH THE KNIFE.

PAGE 35) AND HE SEES HECTOR GET STAB.
1) NOW 14-19 HECTORS BACK IS BEHIND, THE INDIVIDUAL WITH
THE KNIFE. SO THEN BOTH LOPEZ AND GARCIA ARE PARALELL TO
HECTORS BACK. ? WHERE IS CINDY) SO ON PAGE 33) LINE 19
28 GOT STOOLS DEFENDING THEME SELFS FROM THE GUY WITH THE
KNIFE. ON PAGE 34) HECTORS BACK IS TOWARDS LOPEZ AND GARCIA
WHERE IS CINDY? IF YOU GO BACK TO PAGE (34. NO MENTION OF
HECTOR.)

PAGE 36) IS CLEAR HE IS NOT AIMING AT NO ONE, GO BACK TO PAGE 12
LINE, 17-27 HECTOR GETS STAB, AND THEY LEAVE THE BAR.
NO ONE PRESENTED EVIDENCE. OF THE INTOXICATION OF THIS
MAN. WHY.

PAGE 37) LEADING

PAGE 38) THEY WERE TO THEMSELFS. LISTENING TO MUSIC. DID NOT TALK TO
NO ONE. FIRST TIME AT THIS BAR. SO WHERE IS THE MOTIVE
THEY HAD MONEY NO ONE BOTHER TO VERIFY THERE MONEY FROM
SITUATION. AS TO PROPERTY. FROM COUNTY JAIL.
THERE WAS NO FORCE OR STRUGLE AT ALL JUST A TAP. THEN
HE LEFT.

PAGE 39 I DONT KNOW. HARMLESS WHERE WITNESS HAS NO RECOLECTION

1  Q   WAS THERE A GAP BETWEEN HIM AND THE MAN WITH

2  THE KNIFE, A GAP, A SPACE?

3  A   VERY LITTLE.

4  Q   VERY LITTLE.  WERE THEY TOUCHING EACH OTHER?

5  A   NO.

6  Q   WHEN THE MAN WITH THE KNIFE CAME OUT HE WAS

7  SWINGING WILDLY; IS THAT CORRECT?

8  A   YES.

9  Q   DID HE APPEAR UNSTEADY ON HIS FEET?

10  A   I DIDN'T BOTHER TO LOOK.

11  Q   WELL, DID HE APPEAR INTOXICATED TO YOU?

12  A   I DON'T KNOW IF HE WAS OR NOT.

13  Q   AND IS THAT WHEN YOU PICKED UP THE STOOL?

14  A   WHEN HE WAS SWINGING IT, YES.

15  Q   ONCE HE STARTED SWINGING IT -- SO IF I'M

16  CORRECT HE EXITED THE BATHROOM AREA AND STARTED SWINGING

17  IT AND THEN THAT'S WHEN YOU PICKED UP THE STOOL?

18  A   YES.

19  Q   YOU SAID ANOTHER INDIVIDUAL IN THE BAR ALSO

20  PICKED UP A STOOL; IS THAT CORRECT?

21  A   YES.

22  Q   WHO WAS THAT?

23  A   A FRIEND OF OURS.

24  Q   DO YOU KNOW THAT PERSON'S NAME?

25  A   YES, I DO.

26  Q   WHAT IS THAT NAME?

27  A   CINDY.

28  Q   SO BOTH YOU AND CINDY PICKED UP STOOLS.  DID

1  YOU WALK TOWARDS THE INDIVIDUAL WITH THE KNIFE?

2      A    HE WAS JUST GOING TOWARDS WHERE WE WERE AT.

3  WE WERE RIGHT THERE.

4      Q    WOULD IT BE FAIR TO SAY YOU WERE BETWEEN HIM

5  AND THE DOOR OR EXIT TO THE BAR?

6      A    YES.

7      Q    AND WOULD IT BE FAIR TO SAY THAT THE MAN WITH

8  THE SUIT WAS BEHIND YOU?

9      A    NO.  HE WAS BEHIND THE GUY WITH THE KNIFE.

10     Q    AS HE WAS SWINGING THE KNIFE WILDLY HECTOR

11 PICKED UP A STOOL, TOO; IS THAT CORRECT?

12     A    NO, THAT'S NOT CORRECT.

13     Q    AT WHAT POINT DID HECTOR PICK UP A STOOL?

14     A    IT WASN'T A STOOL.

15     Q    A CHAIR?

16     A    A CHAIR.  THERE'S A DIFFERENCE.  THAT'S

17 CORRECT.

18     Q    AT WHAT POINT DID HE PICK UP A CHAIR?

19     A    THE GENTLEMAN WITH KNIFE CAME OUT AND STARTED

20 SWINGING AND WENT TOWARDS US AND HECTOR WAS GOING TO

21 PICK UP THE CHAIR, BUT HE NEVER GOT THE CHANCE TO.

22     Q    WHEN HE WAS PICKING UP THE CHAIR WAS HE

23 FACING THE INDIVIDUAL?

24     A    NO.

25     Q    HE HAD HIS BACK TO YOU?

26     A    HIS BACK, YES, MA'AM.

27     Q    WHEN HE WAS SWINGING HOW CLOSE WAS HE TO THE

28 INDIVIDUAL WITH THE KNIFE?

1      A    A COUPLE OF FEET.

2      Q    AND DID YOU ACTUALLY SEE HIM GET STABBED BY

3    THE KNIFE?

4      A    YES.

5      Q    THAT WAS TOWARDS HIS BACK; IS THAT CORRECT?

6      A    EXCUSE ME?

7      Q    IT WAS TOWARDS HIS BACK?

8      A    NO.

9      Q    THE INDIVIDUAL WAS IN FRONT OF HIM?

10     A    I DON'T UNDERSTAND THE QUESTION.

11     Q    I WILL CLARIFY IT.  YOU SAID HE TRIED TO PICK

12   UP A CHAIR?

13     A    YES.

14     Q    WAS THE INDIVIDUAL WITH THE KNIFE IN FRONT OF

15   HIM OR BEHIND HIM?

16     A    HE WAS BEHIND HIM AT THAT TIME.

17     Q    AND SO HECTOR'S BACK WOULD BE TOWARDS THE

18   INDIVIDUAL WITH THE KNIFE?

19     A    YES.

20     Q    AND WHEN HE ATTEMPTED TO PICK THE CHAIR UP IS

21   THAT WHEN HE WAS STABBED?

22     A    NOT WHEN HE ATTEMPTED TO PICK IT UP.

23     Q    AFTER HE PICKED IT UP?

24     A    HE DID PICK IT UP.  HE WAS TURNING AROUND AND

25   THAT'S WHEN HE WAS STABBED.

26     Q    SO HE WAS MAKING A TURN WITH HIS BODY TOWARDS

27   THE INDIVIDUAL WITH THE KNIFE; IS THAT CORRECT?

28     A    YES.

1       Q    AND AT THE SAME TIME HE WAS DOING THAT THE

2  INDIVIDUAL WITH THE KNIFE WOULD STILL BE IN THE PROCESS

3  OF SLASHING WILDLY IN THE AIR; IS THAT CORRECT?

4       A    YES.

5       Q    AND AFTER HECTOR WAS STABBED DID THE

6  INDIVIDUAL WITH THE CHAIR RUN OUT?  I MEAN THE

7  INDIVIDUAL WITH THE KNIFE RUN OUT?

8       A    YES.

9       Q    WAS HE CHASED BY YOU OR CINDY?

10      A    WE WERE JUST DEFENDING OURSELVES AND FIGHTING

11  HIM OFF.

12      Q    THAT'S FINE.  I AM ASKING WAS HE FORCED OUT

13  WITH THE CHAIR?

14      A    WE TRIED TO FORCE HIM OUT, YES.

15      Q    WHEN HE ASKED YOU FOR THE MONEY IN THE

16  BATHROOM DID HIS WORDS APPEAR SLURRED TO YOU?

17      A    NO.

18      Q    YOU UNDERSTOOD HIM CLEARLY?

19      A    YES, I DID.

20      MS. COLE:    NO FURTHER QUESTIONS.

21      THE COURT:    MR. TORRES.

22

23              REDIRECT EXAMINATION

24

25  BY MR. TORRES:

26      Q    WHEN HECTOR CAME OUT OF THE BATHROOM DID HE

27  WALK OUT OR RUN OUT?

28      A    HE RAN OUT.

37

1   Q    WHEN THE TWO INDIVIDUALS RAN OUT OF THE

2   BATHROOM DID THEY WALK OUT OR RUN OUT?

3   A    THEY RAN OUT.

4   Q    WHEN YOU FIRST CAME OUT FROM BEHIND THE STALL

5   AND YOU SAW THE GUY IN THE SUIT BY THE DOOR WHERE HE WAS

6   STANDING DID THAT BLOCK YOUR EXIT FROM THE BATHROOM?   LEADING

7   A    IT WAS BLOCKING THE EXIT.  YES, IT WAS.

8   Q    WHEN YOU SAW -- WHEN YOU SAW HECTOR WITH THE

9   KNIFE TO HIS THROAT WHAT WAS THE GUY IN THE SUIT DOING?

10   A    STANDING THERE.

11   Q    DID YOU TELL DETECTIVE MILLER THAT HE

12   APPEARED TO BE WATCHING HIS BACK?

13   A    WELL, THAT'S WHAT IT APPEARED TO ME BECAUSE

14   THEY WERE BOTH SITTING WITH EACH OTHER.

15   MR. JACINTO:   OBJECTION, MOVE TO STRIKE.

16   MS. COLE:   OBJECTION, NO FOUNDATION.

17   THE COURT:   PEOPLE?

18   MR. TORRES:   I'LL REPHRASE IT.

19   THE COURT:   OBJECTION SUSTAINED.  STRICKEN.

20   BY MR. TORRES:

21   Q    IF THE GUY IN THE SUIT HAD STAYED WHERE HE

22   WAS COULD YOU HAVE GOTTEN OUT OF THE DOOR?

23   MS. COLE:   OBJECTION, CALLS FOR SPECULATION.

24   MR. JACINTO:   I'LL JOIN.

25   THE COURT:   PEOPLE, DO YOU WANT TO BE HEARD?

26   MR. TORRES:   NO.

27   THE COURT:   SUSTAINED.

28   BY MR. TORRES:

1    Q    YOU SAY YOU SAW THE GUYS DURING THE EVENING.

2  BESIDES JUST DRINKING WHAT ELSE WERE THEY DOING?

3    A    PLAYING MUSIC ON THE JUKE BOX.

4    Q    PLAYING THE JUKE BOX?

5    A    YES.

6    Q    HAD YOU EVER SEEN THEM THERE BEFORE?

7    A    NO.

8    Q    DID -- WERE THEY WITH ANYBODY ELSE ALL

9  EVENING?

10   A    NO.

11   MR. TORRES:  I HAVE NO MORE QUESTIONS.

12   THE COURT:   MR. JACINTO.

13   MR. JACINTO:   I HAVE ONE QUESTION.

14

15              RECROSS EXAMINATION

16

17  BY MR. JACINTO:

18   Q    WHEN YOU RAN OUT OF THERE AND PUSHED THE GUY

19  THAT HAD BEEN STANDING BY THE DOORWAY TO GET OUT WHAT

20  HAPPENED TO HIM: DID HE STUMBLE OR DID HE FALL?

21   A    I DON'T KNOW.

22   Q    YOU JUST PUSHED HIM IN WHAT, A FOOTBALL

23  TACKLE?

24   A    LIKE THIS.

25   THE COURT:   INDICATING WITH HIS HANDS GOING FROM

26  HIS PERSON CLOSE TO HIS BODY AND THEN AWAY FROM HIS BODY

27  WITH BOTH PALMS FACING OUT.

28  BY MR. JACINTO:

| | | |
|---|---|---|
| 1 | Q | YOU PUSHED HIM AWAY AT THAT POINT? |
| 2 | A | YES. |
| 3 | Q | AND DID HE DO ANYTHING AT THAT POINT? |
| 4 | A | I DON'T KNOW. |
| 5 | Q | HE JUST GOT PUSHED AWAY AS FAR AS YOU KNOW? |
| 6 | A | YES. |
| 7 | Q | AND HE DIDN'T SWING AT YOU OR STRIKE AT YOU |

8  IN ANY WAY?

| | | |
|---|---|---|
| 9 | A | I DON'T KNOW. |
| 10 | Q | YOU DIDN'T NOTICE THAT? |
| 11 | A | NO, I DIDN'T. |
| 12 | Q | YOU JUST PUSHED HIM AWAY AND HE WENT AWAY; IS |

13  THAT CORRECT?

| | | |
|---|---|---|
| 14 | A | YES. |

15  MR. JACINTO:  THANK YOU.  NO FURTHER QUESTIONS.

16  THE COURT:  MISS COLE.

17  MS. COLE:  NOTHING FURTHER.

18  THE COURT:  MR. TORRES.

19  MR. TORRES:  I DON'T HAVE ANYTHING ELSE.

20  THE COURT:  MAY THE WITNESS BE EXCUSED?

21  MR. JACINTO:  NO OBJECTION.

22  THE COURT:  THANK YOU.  YOU'RE FREE TO GO.

23  PEOPLE CALL THE NEXT WITNESS.

24  MR. TORRES:  PEOPLE CALL DEBRA ADKINS.

25  THE CLERK:  RAISE YOUR RIGHT HAND, PLEASE.

26  YOU DO SOLEMNLY SWEAR THE TESTIMONY YOU SHALL

27  GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL BE

28  THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH SO

PAGE 39) EVASIVE OR UNTRUTHFULL ANSWERS I DON'T KNOW.

PAGE 40) DIRECT EXAMINATION

PAGE 41) MEIARA AND GARCIA ARE PORTRAIT NOT AS REGUIARS. NOT ONLY B THE BARTENDER (DEBRA) BUT ALSO BY LOPEZ.

PAGE 42)
LINE 7) SHE SAYS SHE HAS SEEN GARCIA BEFORE. COUNSELS FAIL TO FIND OUT BY OTHER PATRONS. IF GARCIA WAS OR HAD BEEN THERE BEFORE THE INCIDENT.

LINE 15) - 18 SHE SAYS I HAVE SEEN THEM. A FEW TIMES. BUT ONE ONE- ELSE HAD SEEN THEM BEFORE. EVEN LOPEZ AS A REGUIAR WHY. 1) COULD BE THAT THEM (MEIARA AND GARCIA) WENT THERE WHEN LOPEZ WAS NOT AROUND. OR HECTOR.

LINE 22) BY HER TESTIMONY HECTOR GOES TO THE BATROOM. AND HE WAS STANDING THERE. THEN SHE SEES THE GUY COMING OUT WITH JOEY. WICH MEANS (LOPEZ) SO THEN HECTOR IS NOT INSIDE IN THE RESTROOM. AS QUATED BY LOPEZ IN HIS TESTIMONY. ON PAGE 6 THROUGH 14 THAT <u>LOPEZ GOES IN FIRST</u> <u>THEN HECTOR, THEN</u> (GARCIA) <u>THE MAN WITH THE KNIFE. THEN (MEIARA) THE MAN WITH THE SUIT.</u>

LINE 22 THROUGH 24 BY HER TESTIMONY THESE THREE MAN ARE ALREADY INSIDE THE RESTROOM. (NOT THE OTHER WAY AROUND) AS LOPEZ TESTIFY.

PAGE 43) THEY GOT A KNIFE (AND JUMP UP ON THE BAR.) LINE 1)
PAGE 11) 28 LOPEZ WENT STRAIGHT TO THE BAR TENDER AND TOLD HER TO CALL THE COPS. ON PAGE 12) LINE 1)
PAGE 12) HE WAS STILL INSIDE THE RESTROOM. LINE 3)
PAGE 42) HE IS SEEN BY THE BAR TENDER. GOING TO THE RESTROOM. AND STANDS BY THE DOOR. LINE 22 THROUGH 24
PAGE 9) LINE 12 — 18 THEY GOT A KNIFE ON HIS THROAT SO BY HER TESTIMONY HECTOR IS OUTSIDE THE RESTROOM ACORDING TO PAGE 42) LINE 22-24 SHE ONLY NOTICE HECTOR GOING IN BUT NO THE OTHER MAN. WHY. CAUSE THERE ALREADY

1    HELP YOU GOD?

2         THE WITNESS:    I DO.

3         THE CLERK:    THANK YOU.    PLEASE BE SEATED.

4              STATE YOUR FULL NAME AND SPELL YOUR LAST

5    NAME, PLEASE.

6         THE WITNESS:    DEBRA ADKINS, A-D-K-I-N-S.

7         THE COURT:    YOU MAY INQUIRE.

8

9                   DIRECT EXAMINATION

10

11   BY MR. TORRES:

12        Q    MISS ADKINS, ON AUGUST 20TH, 1998, IN THE

13   EVENING HOURS WERE YOU AT 5006 CLARA STREET IN THE CITY

14   OF CUDAHY?

15        A    YES, SIR.

16        Q    WHAT IS LOCATED THERE?

17        A    EXCUSE ME?

18        Q    WHAT IS THERE?

19        A    THAT'S A BAR.

20        Q    WHAT IS THE NAME OF THE BAR?

21        A    LA LIKA CLUB.

22        Q    DO YOU WORK THERE?

23        A    YES, SIR.

24        Q    WHAT DO YOU DO?

25        A    BARTENDER.

26        Q    HOW LONG HAVE YOU BEEN WORKING THERE?

27        A    SEVEN YEARS.

28        Q    NOW, AT ABOUT 11:15 OR SO THAT EVENING WERE

41

1    YOU THERE WHEN AN INCIDENT HAPPENED?

2        A    YES, SIR.

3        Q    AT THE TIME THE INCIDENT HAPPENED ABOUT HOW

4    MANY PEOPLE WERE IN THE BAR?

5        A    ABOUT 11 PEOPLE.

6        Q    WERE THEY ALL REGULAR PEOPLE, WERE THEY ALL

7    REGULARS?

8        A    EXCEPT A COUPLE OF THEM.

9        Q    BY A COUPLE OF THEM DO YOU MEAN TWO?

10       A    UH-HUH.

11       THE COURT:    DOES THAT MEAN YES OR NO?

12       THE WITNESS:    YES, SIR.

13       THE COURT:    THANK YOU.

14   BY MR. TORRES:

15       Q    WAS YOUR ATTENTION ATTRACTED TO THE TWO THAT

16   WERE NOT REGULARS?

17       A    YEAH.

18       Q    AND WHY WAS THAT?

19       A    THEY WERE DRESSED DIFFERENTLY.

20       Q    OKAY.

21       A    AND SITTING BY THEMSELVES.

22       Q    ALL RIGHT.    WHAT WAS DIFFERENT ABOUT THEIR

23   DRESS?

24       A    THEY WERE LIKE DRESSED UP LIKE COMING FROM A

25   BAND SOMEWHERE OR SOMETHING, MARIACHIS.

26       Q    WE'LL TAKE THEM ONE AT A TIME.    WHAT WAS ONE

27   OF THEM WEARING?

28       A    ONE WAS WEARING A WHITE SHIRT WITH LITTLE

1  TRIM ON THE RUFFLES AND THE OTHER ONE WAS WEARING A

2  SUIT, POSSIBLY BLUE WITH A RED TIE MAYBE.

3      Q    SO THEY WEREN'T DRESSED LIKE REGULAR PEOPLE

4  THAT NIGHT?

5      A    NO.

6      Q    HAD YOU SEEN EITHER ONE OF THEM BEFORE?

7      A    YES, SIR.

8      Q    WHICH ONE?

9      A    THE GENTLEMAN TO YOUR LEFT.

10     Q    TO MY LEFT OVER HERE?

11     THE COURT:    ACTUALLY THAT WOULD BE TO YOUR RIGHT

12  WHERE SHE POINTED.

13     THE WITNESS:    TO MY LEFT, I'M SORRY.

14  BY MR. TORRES:

15     Q    WHEN HAD YOU SEEN HIM THERE BEFORE?

16     A    I HAVE SEEN THEM BEFORE A FEW TIMES.

17     Q    THIS PERSON THAT YOU HAD SEEN THERE BEFORE ON

18  THAT EVENING WHAT WAS HE WEARING?

19     A    HE WAS WEARING A WHITE SHIRT WITH RUFFLES.

20     Q    WHAT FIRST DREW YOUR ATTENTION THAT SOMETHING

21  WAS HAPPENING ABOUT 11:15?

22     A    WELL, I HAD SEEN HECTOR GO TO THE BATHROOM

23  AND AT THE ENTRANCE HE WAS JUST LIKE STANDING THERE AND

24  THEN I SEEN THE GUY COME RUNNING OUT WITH JOEY.

25     Q    JOEY CAME RUNNING OUT?

26     A    HE CAME RUNNING OUT OF THE BATHROOM.

27     Q    WHAT HAPPENED WHEN HE CAME RUNNING OUT? DID

28  HE SAY ANYTHING?

1  A HE WAS SCREAMING HE GOT -- THEY GOT A KNIFE

2 AND HE JUMPED UP ON THE BAR.

3  Q AND WHEN JOEY CAME OUT WHAT DID YOU SEE THAT

4 HAPPENED?

5  A THEN I SEEN HECTOR COMING AND THE GUY FROM

6 BEHIND PUSHING AT HIM AND THE OTHER GUY WITH THE KNIFE

7 WAVING IT AT HECTOR.

8  Q WHAT IS HECTOR'S LAST NAME?

9  A VELOS.

10  Q THE GUY THAT WAS PUSHING HIM FROM BEHIND WAS

11 HE THE ONE IN THE WHITE SHIRT OR THE ONE IN THE SUIT?

12  A THE ONE IN THE SUIT.

13  Q WHEN HECTOR WAS COMING OUT WAS HE RUNNING

14 OUT?

15  A YEAH, PRETTY QUICK, LIKE IT WAS -- YEAH, I

16 WOULD SAY A FAST WALK.

17  Q AND YOU SAID THE GUY WITH THE SUIT WAS BEHIND

18 HIM PUSHING HIM?

19  A UH-HUH.

20  THE COURT: IS THAT YES OR NO?

21  THE WITNESS: YES, SIR.

22 BY MR. TORRES:

23  Q AND HOW WAS HE PUSHING HIM?

24  A WITH A SHOVE.

25  Q WITH BOTH HANDS?

26  A JUST SHOVING HIM.

27  Q AND WHAT HAPPENED NEXT?

28  A AND THEN AFTER HE SHOVED HIM THE OTHER GUY

PAGE 43) IN THE RESTROOM. BEFORE HECTORS GOES IN. SO HECTOR WAS NEVER IN THE RESTROOM (AS LOPEZ INDICATED ON PAGE 9) THIS INCIDENT WAS THE OTHER WAY AROUND. MELARA AND GARCIA WHERE BEEN (ROB)

PAGE 44) SHE DID NOT SAW (GARCIA) COMING OUT FROM THE RESTROOM THE MAN WITH THE KNIFE. BUT REMEMBERS HIM STANDING BY THE BATHROOM DOOR. SO PICTURE THIS. (HECTOR) IS STANDING BY THE BATHROOM DOOR ACCORDING TO HER TESTIMONY ON PAGE 43 LINE 22 - 24. AND (GARCIA) ALSO STANDING BY THE BATHROOM. PAGE (44) LINE 6 - 12 BUT DOES NOT SEES GARCIA GOING IN TO THE RESTROOM. AT ANY TIME. THERE FOR NEITHER HECTOR OR GARCIA. WHERE IN SIDE OF THE RESTROOM. AS LOPEZ TESTIFY PAGE 9)

IF THIS TWO ARE BY THE DOOR HECTOR AND GARCIA (WHY THEN GARCIA DIDNT STAB HECTOR, WHY WAIT UNTIL MELARA AND LOPEZ RUN OUT THE RESTROOM.)

LINE 24 HECTOR GETS STAB.

1) CINDY IS AT THE BAR MEANING (COUNTER) GO BACK TO PAGE 33) LINE 1 THROUGH 28 NO MENTION OF HECTOR BEEN STAB YET AND PAGE 34) LINE 1 THROUGH 28 STILL HECTOR IS NOT STAB AND PAGE 35) HECTOR GETS STAB. WHILE LOPEZ AND CINDY ARE DEFENDING THEM SELFS FROM (GARCIA.) AFTER HECTOR GOT STAB. PAGE 36) LINE 10) NOT BEFORE AS SAID IT BY LOPEZ. NO MENTION ALSO OF HECTOR PICKING UP A CHAIR AS SAID BY LOPEZ PAGE 35 LINE 20 - 27 BUT THE BAR TENDER DOES NOT SEES HECTOR PICKING UP A CHIAR WHEN HE GOT STAB BUT HIS SHIRST. EVASIVE OR UNTRUTHFULL ANSWERS. WITNESS HAS NO RECOLECTION. POOR MEMORY. CALIFORNIA EVI.

PAGE 45) SEES STAB WOUND NO BLOOD.

AND IDENTIFY GARCIA AS THE ONE WITH THE KNIFE ALSO IDENTIFY MELARA AS THE ONE WITH THE SUIT.

1  WITH THE KNIFE WAS WAVING IT AROUND LIKE THAT AND HE

2  JUST STABBED HIM.

3      Q    SO HECTOR CAME OUT AND THE GUY IN THE SUIT

4  WAS SHOVING HIM OUT AND THEN THE GUY WITH THE KNIFE CAME

5  OUT?

6      A    I CAN'T PICTURE THE GUY WITH THE KNIFE COMING

7  OUT.  I DON'T RECALL SEEING HIM COME OUT, BUT I RECALL

8  SEEING HIM RIGHT THERE AND AFTER -- I MEAN HIM STANDING

9  THERE AS THE OTHER TWO CAME OUT.

10     Q    YOU CAN'T VISUALIZE HIM ACTUALLY COMING OUT,

11 BUT YOU REMEMBER YOU SAW HIM INSIDE THE BATHROOM?

12     A    YES, SIR.

13     Q    AND WHAT DID YOU SEE HAPPEN NEXT?  WHAT WAS

14 THE GUY WITH THE KNIFE DOING?

15     A    WAVING THE KNIFE AROUND LIKE THAT.

16     Q    AT ANYBODY IN PARTICULAR OR RANDOMLY?

17     A    AT EVERYBODY ACTUALLY.

18     Q    AND THEN DID HE DO ANYTHING?

19     A    THEN HE STABBED THE GUY.

20     Q    WHO DID HE STAB?

21     A    HECTOR.

22     Q    DID YOU SEE HIM ACTUALLY STAB HIM?

23     A    YES, SIR.

24     Q    AFTER HECTOR WAS STABBED WHAT HAPPENED?

25     A    THEN CINDY WAS AT THE BAR AND SHE PICKED UP A

26 BAR STOOL AND BACKED HIM OUT OF THE BAR.  AND THEN

27 HECTOR WAS SAYING SOMETHING IN SPANISH, ROBERT OR

28 ROBERTO, AND HE PICKED UP HIS SHIRT.

1    Q    WHEN HE PICKED UP THE SHIRT DID YOU SEE

2  ANYTHING ON THE CHEST?

3    A    YES.  HE WAS STABBED.  AFTER CINDY BACKED THE

4  GUY OUT OF THE DOOR THEN SHE HELD ONTO HIM AND HELD HIM.

5    Q    WHEN HE PICKED UP HIS SHIRT WHAT DID YOU SEE?

6    A    A STAB WOUND.

7    Q    DID YOU SEE HIS STAB WOUND OR DID YOU SEE

8  BLOOD?

9    A    I SEEN A STAB WOUND.  THE BLOOD WASN'T COMING

10  OUT.

11    Q    THE GUY THAT STABBED HECTOR WAS HE THE ONE

12  WHO WAS WEARING THE SHIRT OR THE ONE WHO WAS WEARING THE

13  SUIT?

14    A    THE WHITE RUFFLE SHIRT.

15    Q    AND THIS PERSON THAT WAS WEARING THE WHITE

16  RUFFLE SHIRT DO YOU SEE HIM TO COURT?

17    A    YES, SIR.

18    Q    WOULD YOU POINT TO HIM AND TELL US WHAT HE IS

19  WEARING?

20    A    HE IS WEARING A BLUE L.A. COUNTY JAIL OUTFIT.

21    THE COURT:   POINTING AT AND IDENTIFYING ISRAEL

22  GARCIA FOR THE RECORD.

23  BY MR. TORRES:

24    Q    THE PERSON WHO WAS WEARING THE SUIT DO YOU

25  SEE HIM IN THE COURTROOM?

26    A    YES, SIR.

27    Q    WOULD YOU POINT TO HIM AND TELL US WHAT HE IS

28  WEARING?

PAGE 46) IS STABLISH AS (HECTOR) BEEN WITH OUT MONEY. CAUSE THE BARTEN-DER. (DEBRA) HAD CALL HIS WIFE. HE IS OUT OF MONEY. HOW MUCH MORE MONEY DID HE NEED IT. GO BACK TO PAGE 42) LINE 22-23 HECTOR IS STANDING THERE. WHEN ALL OF A SUDEN THE (GUY) WICH MEANS. EITHER WHO WE KNOW ONE OF THEM IS (JOEY) LOPEZ. AND THE OTHER TWO MELARA AND GARCIA. SO THAT MEANS HECTOR NEVA WAS INSIDE THE RESTROOM. WITH THEM (THREE) IF THE BARTENDER — (DEBRA) TESTIFY AS TO HECTOR GOING TO THE DOOR ENTRANCE OF THE RESTROOM. PRIOR TO THEM THREE. GOING OR BEEN INSIDE OF THE RESTROOM. AND THEN CAN'T PICTURE THE GUY WITH THE KNIFE COMING OUT. PAGE 44) LINE 6-10
BUT ON THIS OCATION NO MONEY IS BEEN FLASH BY HECTOR.

PAGE 47) WICH ONE SHE COULDNT IDENTIFY?
WICH ONE DID SHE IDENTIFY    (CONFUSION)
WHY THE SAME EVENING. LINE 21-27

PAGE 48) LINE 13-17 CONTRADICTS THE TESTIMONY FROM PAGE 42)
LINE 22-24
LINE 9-12 CONTRADICTS. PAGE 22) 8-11

PAGE 49) IS STILL NOT STABISH THAT LOPEZ CAME OUT FIRST AS HIS TESTIMONY. PAGE 22) AND (DEBRAS) TESTIMONY ON PAGE 42)
LINE 20-26 CONTRADICTS TESTIMONY. FROM PAGE 48) LINE 9-17

PAGE 50) LINE 13-28 SHOWS (MELARA) PUSHING HECTOR. (CONTRADICTION)
FROM PAGE 12) LINE 2-20 NO PUSHING ON HECTOR. LOPEZ AND DEBRA HAVE THE SAME VIEW. AS ON PAGE 11) LINE 27-28 AND ALSO PAGE 42) LINE 25-28 AND PAGE 43) LINE 1-4

PAGE 51) DEBRA) WICH IS THE BARTENDER. LINE 1-14 SEES HECTOR BEEN PUSH AS ON PAGE 50) LINE 17-18 ALSO AFIRMS OF HECTOR BEING PUSH PHYSICALLY BY MELARA. LINE 20-28 SHE HAS DOUGHTS.

PAGE 52) LINE 15-28 A DOUGHT AS TO ACTUALLY SEEN HECTOR PHYCICALLY BEEN PUSH BY MELARA INCONCLUSIVE TESTIMONY BY WITNESS. (CONTRADICTION LINE 17) FROM PAGE 50) LINE 18-28

1      A    THE SAME CLOTHING.

2      THE COURT:    POINTING AT AND IDENTIFYING JOSE

3 HUMBERTO MELARA FOR THE RECORD.

4 BY MR. TORRES:

5      Q    BEFORE THIS INCIDENT HAPPENED DID YOU CALL

6 SOMEBODY ABOUT HECTOR?

7      A    YES, SIR.

8      Q    WHO DID YOU CALL?

9      A    I CALLED HIS WIFE.

10      Q    WHAT FOR?

11      A    HE HAD ASKED ME TO CALL HER TO BRING HIM SOME

12 MONEY.

13      Q    DOES HECTOR USUALLY HAVE MONEY?

14      A    HECTOR ALWAYS HAS MONEY.   HECTOR HAS A

15 TENDENCY TO BE FLASHING HIS MONEY ALL THE TIME.   HE

16 ALWAYS HAS HUNDREDS AND IS ALWAYS BEING STUPID AND

17 THROWING THEM ALL OVER THE BAR.

18      MR. TORRES:    I HAVE NO MORE QUESTIONS.

19      THE COURT:    MR. JACINTO.

20      MR. JACINTO:    THANK YOU.

21

22               CROSS EXAMINATION

23

24 BY MR. JACINTO:

25      Q    MA'AM, DO YOU RECALL AT SOME POINT YOU WERE

26 SHOWN A SERIES OF PHOTOGRAPHS AND ASKED IF YOU COULD

27 IDENTIFY ANYONE HAVING BEEN IN THE BAR THAT NIGHT?

28      A    YES, SIR.

47

```
 1        Q     AND DID YOU TELL THE OFFICERS THAT SHOWED YOU

 2   THE PHOTOGRAPHS THAT YOU COULD NOT?

 3        A     I TOLD THEM THAT I COULD, YES.

 4        Q     YOU WERE SHOWN TWO SERIES AND ONE YOU COULD

 5   NOT AND ONE YOU DID?

 6        A     ONE I DID IDENTIFY AND THE OTHER ONE I WASN'T

 7   REAL, REAL POSITIVE AT THE TIME BUT I PICKED ONE.

 8        Q     DID YOU PICK A PHOTOGRAPH OUT?

 9        A     YES.

10        Q     IN BOTH FOLDERS THEN?

11        A     YES, SIR.

12        Q     AND YOU TOLD THE DETECTIVE AT THE TIME THAT

13   YOU SELECTED ONE -- YOU MADE A SELECTION ON BOTH

14   FOLDERS?

15        A     YES, SIR.

16        Q     YOU HAD COMMUNICATED THAT TO THE OFFICERS

17   THAT WERE SHOWING YOU THE PHOTOGRAPHS; IS THAT RIGHT?

18        A     CAN YOU REPEAT THAT, PLEASE.

19        Q     YOU TOLD THEM THAT YOU WERE SELECTING ONE OUT

20   OF EACH GROUP OF FOLDERS?

21        A    (NO.)  THEY SHOWED ME THE FOLDER AND ASKED ME

22   IF I CAN IDENTIFY ANY GUYS THEY SHOWED ME AND I PICKED

23   ONE OF THE GUYS OUT OF THERE AND RECOGNIZED HIM AND THEN

24   ONE ALSO OUT OF THE OTHER ONE.

25        Q     WHEN DID THIS TAKE PLACE WHEN YOU TOLD THE

26   OFFICERS THAT YOU WERE ABLE TO SELECT ONE OF THE

27   PHOTOGRAPHS?

28        A     THAT WAS THE SAME EVENING OF THE INCIDENT.
```

1      Q     SO IF HE BELIEVED THAT YOU COULD NOT IDENTIFY

2  ANY OF THEM IN ONE OF THE PHOTOGRAPH GROUPS OR

3  PHOTOGRAPHS THAT WOULD BE INCORRECT THEN?

4      A     YES, IT WOULD BE.

5      Q     YOU DIDN'T SAY ANYTHING TO THEM TO CAUSE THEM

6  TO THINK THAT YOU COULD NOT IDENTIFY ANYBODY HERE; AM I

7  CORRECT?

8      A     NO, SIR.

9      Q     FROM WHAT I UNDERSTAND FROM THE TESTIMONY YOU

10 FIRST BECAME AWARE THERE WAS A PROBLEM WHEN EVERYBODY

11 STARTED COMING OUT OF THE RESTROOM; IS THAT RIGHT?

12     A     YES, SIR.

13     Q     I BELIEVE THE FIRST PERSON YOU SAW COME OUT

14 OF THE RESTROOM WAS HECTOR?

15     A     UH-HUH.

16  THE COURT:   IS THAT YES OR NO?

17  THE WITNESS:   YES, SIR.

18 BY MR. JACINTO:

19     Q     AT SOME POINT YOU SAID THAT THE FELLOW

20 WEARING -- SOMEBODY CAME OUT OF THERE PUSHING HECTOR?

21     A     UH-HUH.

22     Q     WHERE WERE YOU?

23     A     I'M SORRY, WAS I?

24     Q     YES.

25     A     I WAS BEHIND THE BAR.

26     Q     IN RELATION TO HECTOR AND THE PERSON COMING

27 OUT OF THE BATHROOM DESCRIBE TO US YOUR LINE OF SIGHT.

28 HOW FAR WERE YOU AND WHO WERE YOU ABLE TO SEE FIRST?

49

1          A    I CAN SEE CLEARLY.   IT IS FROM LIKE IF I WAS

2    HERE TO MAYBE THE CORNER OF THE WALL OVER THERE.

3          Q    THE BACK WALL?

4          A    UH-HUH.

5          THE COURT:   IS THAT YES OR NO?

6          THE WITNESS:   I AM NOT SURE IT WAS A YES OR NO

7    QUESTION.

8          THE COURT:   WELL, YOU SAID "UH-HUH."  WOULD THAT

9    BE YES OR NO?

10          THE WITNESS:   FROM HERE TO THERE, THAT DISTANCE.

11          THE COURT:   PREVIOUSLY MEASURED AT APPROXIMATELY

12    20 FEET.

13    BY MR. JACINTO:

14          Q    AND WHAT WAS THE LIGHTING LIKE INSIDE THE

15    BAR, WAS IT DARK?

16          A    THE LIGHTING IS NOT REAL, REAL DARK BUT YOU

17    ARE ABLE TO SEE.

18          Q    YOUR TYPICAL BAR?

19          A    IN THERE I'M USED TO IT AND MY VISION IS

20    PRETTY GOOD WHEN I AM THERE.

21          Q    DO YOU WORK THERE ALL THE TIME?

22          A    UH-HUH.

23          THE COURT:   IS THAT YES OR NO?

24          THE WITNESS:   YES, SIR.

25    BY MR. JACINTO:

26          Q    AND YOU SAW HECTOR COME OUT FIRST; IS THAT

27    RIGHT?

28          A    YES, SIR.

1  Q   AND BEHIND HIM CAME OUT THE OTHER FELLOWS?

2  A   YES, SIR.

3  Q   AND --

4  A   FELLOW.

5  Q   YOUR LINE OF SIGHT WAS HECTOR BETWEEN YOU AND

6  THE TWO GUYS THAT CAME OUT OF THE BATHROOM?

7  A   I DIDN'T SEE THAT ONE GUY, BUT I SEEN THE

8  OTHER GUY COME FROM BEHIND HIM.

9  Q   THAT WOULD BE THE MAN WITH THE KNIFE?

10 A   NO, SIR.

11 Q   IT WAS THE GUY WITHOUT THE KNIFE?

12 A   THAT'S RIGHT.

13 Q   AND THE GUY WITHOUT THE KNIFE YOU SAID

14 EARLIER IT SEEMED TO YOU THAT HE WAS PUSHING AND

15 SHOVING?

16 A   YEAH. YES, SIR.

17 Q   WHY DOES IT SEEM THAT WAY TO YOU?

18 A   PUSHING? BECAUSE I SEEN HIM PUSH HIM REAL

19 HARD AND HE WENT FLYING.

20 Q   IN WHAT SENSE?

21 A   JUST PUSH, SHOVE. LIKE YOU'RE MAD AT

22 SOMEBODY AND YOU WANT TO PUSH THEM.

23 Q   PUSH HIM WITH THE HANDS?

24 A   YES, PUSH.

25 Q   YOU'VE INDICATED WITH YOUR PALMS UP FACING

26 AWAY FROM YOU; IS THAT RIGHT? IS THAT WHAT YOU SAW?

27 A   PUSHED. WHEN YOU SEE -- INTO THE -- WELL, TO

28 ME IF I WAS TELLING SOMEBODY AND PUSHING SOMEBODY THAT'S

1  THE MOTION YOU WOULD DO.  BUT I SEEN THIS GUY GOING LIKE

2  THAT AND I SEEN HECTOR FLYING LIKE THAT SO.

3       THE COURT:   "FLYING LIKE THAT" SHE WAS LEANING

4  FORWARD SLIGHTLY.

5  BY MR. JACINTO:

6       Q    FROM WHAT I GATHER FROM YOUR TESTIMONY YOU

7  SAW HECTOR BEING FOLLOWED BY ANOTHER GUY AND IT LOOKED

8  LIKE HECTOR WAS PUSHED AND YOU CONCLUDED THE GUY BEHIND

9  HIM PUSHED HIM; IS THAT RIGHT?

10      A    HE WAS PUSHED.

11      Q    OKAY.  YOU SAW HIM FLYING?

12      A    UH-HUH.

13      Q    IS THAT RIGHT?

14      A    THAT'S CORRECT.

15      Q    YOU DIDN'T ACTUALLY SEE THE MOVEMENT OF THE

16 OTHER GUY BEHIND HIM; IS THAT CORRECT?

17      A    I DIDN'T SEE HIS HANDS PUSH HIM IF THAT'S

18 WHAT YOU'RE STAYING.  FROM THAT SITUATION I COULDN'T SEE

19 HIM.

20      Q    THAT'S WHAT I WAS ASKING.

21      A    MAYBE HE TRIPPED HIM, BUT HE WENT FLYING.

22      Q    HECTOR COULD HAVE TRIPPED, BUT IT LOOKED LIKE

23 HE WAS PUSHED?

24      A    UH-HUH.

25      Q    IS THAT RIGHT?

26      A    YES, SIR.

27      Q    BECAUSE HECTOR WENT FORWARD AS IF HE IS

28 FALLING; IS THAT RIGHT?

1      A    HE WENT FORWARD, YES, SIR.

2      Q    AS IF HE WAS FALLING?

3      A    YEAH.  AS IF HE WAS BEING SHOVED.

4      Q    DID YOU SEE ANYBODY ACTUALLY SHOVE HIM?

5      MR. TORRES:  OBJECTION, ASKED AND ANSWERED.

6      THE COURT:  WE'LL CLARIFY ONE LAST TIME.

7  OVERRULED.

8      THE WITNESS:  NOT ACTUALLY SHOVE HIM, BUT --

9  WELL, FROM BEHIND HE WAS BEING PUSHED.

10  BY MR. JACINTO:

11      Q    BECAUSE OF THE WAY HE FELL; IS THAT RIGHT?

12  IS THAT HOW YOU CONCLUDED THAT HE WAS PUSHED?

13      A    YES, SIR.

14      Q    SO WOULD IT BE CORRECT TO SAY -- AND I KNOW I

15  AM BEATING THIS HORSE AROUND -- WOULD IT BE CORRECT TO

16  SAY THAT YOU DID NOT ACTUALLY SEE THE MAN BEHIND HIM

17  APPLY ANY PRESSURE ON HIM, BUT IT LOOKED TO YOU GIVEN

18  THE CIRCUMSTANCES OF HECTOR RUNNING OUT AND THE MAN

19  BEHIND HIM IT LOOKED LIKE HE WAS PUSHED?

20      MR. TORRES:  OBJECTION, VAGUE.

21      THE COURT:  DID YOU UNDERSTAND THE QUESTION?

22      THE WITNESS:  TO ME IT LOOKED LIKE HE PUSHED HIM,

23  YES.

24  BY MR. JACINTO:

25      Q    WOULD IT BE CORRECT TO SAY THAT YOU DIDN'T

26  ACTUALLY SEE FORCE APPLIED, THAT IS SOMETHING YOU

27  CONCLUDED BY SOMETHING THAT YOU SAW HECTOR DO?

28      A    IT HAPPENED SO FAST, YOU KNOW, IT WAS LIKE --

PAGE 52) LINE 8-9 CONTRADICTION AS TO PAGE 50) LINE 13-22

EVASIVE UNTRUTHFULL TESTIMONY.

LINE 15-28 NOT SURE CAUSE IT HAPPEN SO FAST
POOR MEMORY.

PAGE 53) IT APPEARED TO HER HA WAS PUSH BUT NOT SURE, AS ON PAGE 50)
LINE 13-19

LINE 7-21 CONTRADICTION TO LOPEZ TESTIMONY FROM PAGE 12
LINE 9-20

LINE 22-28 POOR MEMORY. WHERE WITNESS HAS NO RECOLEC-
TION, EVASIVE OR UNTRUTHFULL ANSWERS.

EXAMINATION OF WITNESS.

CONFRONTATION OF WITNESS. CONTROL BY COURT S. CRIM TRIAL
543. CLIFFTON V ULIS 1976 17 C 3d 99, 104. 130 CR 155. 549 P.
2d 1251 (I DONT REMEMBER) LINE (26)

PAGE 54) LINE 2-9 WHEN DID HECTOR GOT STAB. WHEN DID IT HAPPEN
IN BETWEEN WHAT THE SHOVING AND PUSHING OR WHEN. AS TO LO-
PEZ TESTIMONY AS ON PAGE 13) LINE 3-19 CONTRADICTS THE
TESTIMONY OF DEBRA ON PAGE 44) LINE 1

ALSO PAGE 13) 3-4 LOPEZ AND CINDY PICK UP STOOLS TO
FIGHT (GARCIA) HECTOR HAS NOT BEEN STAB YET AS TO PAGE 44
CONTRADICTS PAGE (13) LINE 22-26 INCONCLUSIVE TESTIMONY.

CROSS EXAMINATION.

HERE IS A CONTRADICTION AS TO LOPEZ TESTIMONY ON PAGE 15
LOPEZ GOT TO THE BAR AT 4:30 PM AND HE SEES THEM ALREADY AT
THE BAR DRINKING. (I A C) BY COUNSEL FOR NOT STABLISHING THE
WHERE ABOUTS OF MEIARA AND GARCIA. FROM 4:30 ACCORDING TO
LOPEZ AND 9:00 PM ACCORDING TO DEBRA. 4 1/2 HRS MISSING DONT
YOU THINK SO. NOW DEBRA HAS NO VISUAL OF MEIARA AND GARCIA
WHEN SHE WALKS IN AT 6:00 PM. LINE 21-25

LINE 27-28 PUTS THEM AT THE BAR AT 9:00 PM. IF YOU GO
BACK TO PAGE 15) HE WAS DRINKING FROM 4:30 PM TILL 11:15 PM

Q    I UNDERSTAND. WOULD IT BE A CORRECT
CHARACTERIZATION OF HOW IT APPEARED TO YOU?

A    TO ME IT APPEARED THE GENTLEMAN PUSHED HIM.

Q    BECAUSE OF WHAT YOU SAW HECTOR DO; WOULD THAT
BE CORRECT?

A    YES, SIR.

Q    AND WOULD IT BE CORRECT TO SAY THEN THAT YOU
DIDN'T ACTUALLY SEE THE MAN BEHIND APPLY PRESSURE TO
HECTOR'S BODY, BUT IT LOOKED LIKE IT FROM YOUR
PERSPECTIVE?

A    FROM MY PERSPECTIVE BECAUSE HE WAS RIGHT
STRAIGHT DIRECTLY BEHIND HIM AND HE WENT FLYING.

Q    AND YOUR PERSPECTIVE I GATHER THEN WAS YOU'RE
AT THE BAR AND HECTOR IS COMING OUT AND RIGHT BEHIND HIM
IS THAT MAN?

A    YES, SIR.

Q    AND THAT'S WHY IT APPEARED TO YOU THAT HECTOR
WAS PUSHED?

A    YES, SIR.

Q    AND IMMEDIATELY AFTER THAT THE MAN BEHIND HIM
DOES HE RUN TOWARDS THE DOOR OR WHAT DID HE DO?

A    IT WAS GOING SO FAST, EVERYTHING WAS JUST
CONFUSION.

Q    I UNDERSTAND.

A    I'M NOT REALLY QUITE SURE. I COULDN'T SAY.
I DON'T REMEMBER.

Q    YOU CAN'T TELL US THEN WHAT THE MAN BEHIND
HECTOR DID AFTER HECTOR FELL?

1    A    NO, SIR.

2    Q    BUT THE OTHER GUY WITH THE KNIFE HE IS THE

3 ONE THAT HURT HECTOR?

4    A    YES, SIR.

5    Q    WHEN THIS WAS GOING ON WHEN HECTOR WAS HURT

6 AND STABBED DO YOU REMEMBER WHAT THE OTHER GUY WAS

7 DOING?

8    A    NO, SIR.

9    Q    DID YOU SEE ANYMORE THAT EVENING?

10   A    NO, SIR.

11   MR. JACINTO:   THANK YOU.  NO FURTHER QUESTIONS.

12   THE COURT:   MISS COLE.

13   MS. COLE:   THANK YOU.

14

15                CROSS EXAMINATION

16

17 BY MS. COLE:

18   Q    WHAT TIME DID YOU START WORK THAT DAY?

19   A    EXCUSE ME?

20   Q    WHAT TIME DID YOU START WORK THAT DAY?

21   A    6:00 O'CLOCK.

22   Q    WHEN YOU ARRIVED AT 6:00 O'CLOCK WERE THE

23 PEOPLE THAT YOU DIDN'T RECOGNIZE AS REGULARS ALSO THERE?

24   A    NO, SIR.

25   Q    OKAY.

26   A    I MEAN NO, MA'AM.

27   Q    DO YOU RECALL WHEN THEY ARRIVED?

28   A    IT WAS PROBABLY ABOUT 9:00.

Q   9:00 P.M.?

A   YES, MA'AM.

Q   WERE YOU -- DID THEY ORDER ALCOHOL FROM YOU?

A   YES, MA'AM.

Q   DID YOU SERVE THEM AT A TABLE OR DID THEY
ORDER THE BEERS FROM THE BAR?

A   I SERVED FROM THE TABLE AND AT THE BAR.

Q   FROM 9:00 O'CLOCK UNTIL ROUGHLY THE TIME
ESTIMATE THIS INCIDENT OCCURRED DO YOU RECALL HOW MANY
BEERS YOU SERVED THEM?

A   THREE OR FOUR.

Q   DID THEY APPEAR TO BE INTOXICATED, EITHER ONE
OF THEM?

A   NO, MA'AM.

Q   DID THEY APPEAR TO BE INTOXICATED WHEN YOU
ARRIVED?

A   NO, MA'AM.

Q   DID THEY KEEP TO THEMSELVES OR DID THEY TALK
TO ANY PATRONS THERE?

A   THEY WERE TO THEMSELVES.  THEY WERE AT THE
JUKE BOX.  I SPOKE TO ONE GENTLEMAN BECAUSE I EVEN ASKED
HIM IF HE WOULD LIKE TO DANCE.  HE SAID SOMETHING IN
SPANISH SO I JUST TURNED AND WALKED AWAY.

Q   DO YOU UNDERSTAND SPANISH?

A   NO, NOT COMPLETELY.  JUST A LITTLE BIT.

Q   AND YOU INDICATED YOU HAD SEEN THE GENTLEMAN
SEATED NEXT TO ME ON A PREVIOUS OCCASION; IS THAT
CORRECT?

1    A    YES.

2    Q    HE HAD BEEN AT THE BAR BEFORE?

3    A    YEAH.

4    Q    AND ON THOSE OCCASIONS DID HE HAVE ANY

5 CONVERSATIONS WITH ANY OTHER PATRON IN THE BAR?

6    A    NO, MA'AM.

7    Q    ON THOSE OCCASION WAS HE BY HIMSELF?

8    A    HE ALWAYS HAD A DIFFERENT GUY WITH HIM.

9    Q    AND HE SITS ALONE AND DOESN'T TALK TO ANY

10 PATRONS?

11    A    YES, MA'AM.

12    Q    ON THIS OCCASION ON THIS NIGHT THERE WERE

13 ABOUT 11 PEOPLE THERE; IS THAT RIGHT?

14    A    YES, MA'AM.

15    Q    YOU KNOW MOST OF THEM?

16    A    YES, MA'AM.

17    Q    THEY HAD BEEN THERE BEFORE?

18    A    YES, MA'AM.

19    Q    WOULD IT BE FAIR TO SAY THEY WERE SEATED AT

20 THE BAR?

21    A    YES, MA'AM.

22    Q    AND WOULD IT ALSO BE FAIR TO SAY THESE TWO

23 INDIVIDUALS THAT YOU DID NOT KNOW WERE THE ONLY ONES

24 SEATED AT A TABLE?

25    A    YES, MA'AM.

26    Q    YOU INDICATED JOEY CAME RUNNING OUT OF THE

27 RESTROOM AND SCREAMED "THEY GOT A KNIFE" AND HE JUMPED

28 ON THE BAR; IS THAT CORRECT?

1  A  YES.

2  Q  WAS HE ACTUALLY ON THE BAR?

3  A  NOT ALL THE WAY UP ON THE BAR.  LIKE HE RAN

4 OUT AND JUST LIKE HE GOT LIKE SCARED AND JUMPED UP.

5  Q  IS THAT ON TOP OF THE AREA WHERE YOU SERVED

6 DRUGS?

7  A  NO, MA'AM.

8  Q  I MEAN -- I'M SORRY.

9      (PAUSE IN PROCEEDINGS)

10 BY MS. COLE:

11  Q  WHERE YOU SERVE ALCOHOL?

12  A  YES, MA'AM.

13  Q  FROM THE TIME THAT -- HOW MUCH TIME PASSED

14 FROM THE TIME JOEY CAME RUNNING OUT OF THE RESTROOM TO

15 WHEN YOU SAW HECTOR BEING PUSHED OUT?

16  A  A VERY FEW SECONDS.

17  Q  A FEW SECONDS.  AFTER YOU SAW HECTOR BEING

18 PUSHED OUT WAS IT A MATTER OF SECONDS ALSO WHEN YOU

19 FIRST NOTICED THE OTHER MAN WITH THE KNIFE?

20  A  YES, MA'AM.

21  Q  I UNDERSTAND ON DIRECT TESTIMONY YOU

22 INDICATED YOU DIDN'T SEE HIM COMING OUT OF THE BATHROOM

23 AREA; IS THAT CORRECT?

24  A  THAT'S CORRECT.

25  Q  BUT AT SOME POINT YOU SAW HIM OUT THERE?

26  A  UH-HUH.

27  Q  IS THAT YES?

28  A  YES.

1    Q    IS THAT WITHIN I. FEW SECONDS OF YOU SEEING

2  HECTOR BEING PUSHED?

3    A    YES, MA'AM.

4    Q    AT THE TIME THAT HECTOR WAS BEING PUSHED WAS

5  THERE A GAP IN BETWEEN AT SOME POINT WHEN HECTOR GOT

6  STABBED OR DID THAT HAPPEN IMMEDIATELY?

7    A    IT WAS A GAP.  A LITTLE BIT OF A GAP.

8    Q    YOU INDICATED A LADY PICKED UP A STOOL OR

9  CHAIR; IS THAT CORRECT?

10    A    YES, MA'AM.

11    Q    HAD HECTOR BEEN STABBED AT THIS POINT?

12    A    YES, MA'AM.

13    Q    SO SHE PICKED UP A STOOL OR THE CHAIR AFTER

14  HECTOR HAD BEEN STABBED?

15    A    YES, MA'AM.

16    Q    DID YOU SEE AT ANY TIME JOEY PICK UP A CHAIR

17  OR STOOL?

18    A    NO.

19    Q    AND AT -- WOULD IT BE FAIR TO SAY THAT HECTOR

20  WAS IN FRONT OF THE MAN IN THE SUIT; IS THAT CORRECT?

21    A    I DON'T KNOW WHERE THE MAN IN THE SUIT WAS

22  AT.

23    Q    WOULD IT BE FAIR TO SAY THAT HECTOR WAS IN

24  FRONT OF THE MAN WITH THE KNIFE?

25    A    YES, MA'AM.

26    Q    AND YOU INDICATED THAT THE MAN WITH THE KNIFE

27  WAS WAVING IT BLINDLY WHEN HE CAME OUT; IS THAT CORRECT?

28    A    NO, NOT WHEN HE CAME OUT.  WHEN I SEEN HIM AT

THE DOOR.

    Q   WHEN YOU SAW HIM IN THE BAR AREA?

    A   YES.

    Q   YOU ALSO INDICATED IT WAS UP IN THE AIR AT SOME POINT; IS THAT CORRECT?

    A   HE WAS JUST SWINGING IT AROUND.

    Q   ALSO UP IN THE AIR?

    A   I DON'T KNOW.  IN THE AIR LIKE THAT.  I SAW MOVEMENT.

    Q   IT WAS IN FRONT OF HIM?

    A   IN FRONT OF HIM.

    THE COURT:  MOVING FROM LEFT TO RIGHT.

    MS. COLE:  THANK YOU.

BY MS. COLE:

    Q   WHERE WAS HECTOR AT THIS POINT WHEN HE WAS SWINGING THE KNIFE?

    A   RIGHT IN FRONT OF HIM.

    Q   SO WOULD IT BE FAIR TO SAY THAT HE STABBED THE MAN IN THE BACK AREA?

    A   NO, MA'AM.

    Q   HOW DID HE GET STABBED IN THE FRONT AREA? DID YOU SEE HECTOR TURN?

    A   I JUST LOOKED AT HECTOR AND THERE WAS THE GENTLEMAN THIS WAY AND THE DOOR WAS THIS WAY.

    Q   THE DOOR --

    THE COURT:  WHEN SHE SAID "GENTLEMAN" THE PALMS WERE FACING ONE ANOTHER.  AND WHEN SHE SAID "THIS WAY" IT WAS THE HAND BEING EXTENDED FROM HER PERSON STRAIGHT

```
 1   OUT IN FRONT OF HER.

 2        MS. COLE:   THANK YOU.

 3   BY MS. COLE:

 4        Q    WHAT DOOR ARE YOU REFERRING TO?

 5        A    THE ENTRANCE.

 6        Q    THE ENTRANCE TO THE BAR ITSELF?

 7        A    YES, MA'AM.

 8        Q    AND HOW DID THE MAN WITH THE KNIFE -- DID HE

 9   WALK OVER TO THE LOCATION?

10        A    I DIDN'T SEE HOW HE GOT THERE.  I JUST SEEN

11   HIM THERE AT THE TIME.

12        Q    DID YOU SEE HECTOR FALL TOWARDS THAT AREA OR

13   RUN TOWARDS THAT AREA?

14        A    I SEEN HIM RUNNING TOWARDS THIS AREA BEING

15   PUSHED FROM BEHIND, YES.

16        Q    AND YOU DIDN'T SEE AT THIS POINT WHERE THE

17   MAN IN THE SUIT WENT; IS THAT CORRECT?

18        A    THAT'S CORRECT.

19        Q    AND AT SOME POINT HE TURNED TO FACE THE

20   INDIVIDUAL THAT HAD THE KNIFE; IS THAT CORRECT?

21        A    THAT'S CORRECT.

22        Q    AT WHAT POINT DID HE DO THAT?

23        A    I JUST SEEN THEM FACING EACH OTHER.  I DIDN'T

24   SEE AT WHAT POINT.

25        Q    DID YOU SEE HIM TRY TO PICK UP A CHAIR OR

26   STOOL OR ANYTHING?

27        A    NO, MA'AM.

28        Q    SO HE JUST TURNED TO FACE THE INDIVIDUAL WITH
```

1   NOTHING IN HIS HANDS; IS THAT CORRECT?

2       A   YES.

3       Q   AT THAT TIME HAD HE EVER STOPPED MOVING THE

4   KNIFE AT ANY POINT?

5       A   NO, MA'AM.

6       Q   DID HECTOR AT ANY TIME TAKE A STEP TOWARDS

7   THE MAN WITH THE KNIFE?

8       A   NO, MA'AM.

9       Q   HE STOOD RIGHT WHERE HE WAS?

10      A   YES.

11      Q   NOW, YOU INDICATED THAT YOU HAD TO CALL HIS

12  WIFE TO BRING HIM SOME MONEY; IS THAT CORRECT?

13      A   THAT'S CORRECT.

14      Q   AND WERE YOU AWARE WHETHER HE HAD ANY MONEY

15  ON HIM?

16      A   NORMALLY WHEN I CALL IT IS BECAUSE HE HAS NO

17  MONEY SO.

18      MS. COLE:   NO FURTHER QUESTIONS.

19      THE COURT:   MR. TORRES.

20

21              REDIRECT EXAMINATION

22

23  BY MR. TORRES:

24      Q   MA'AM, YOU TESTIFIED ABOUT LOOKING AT SOME

25  PHOTOGRAPHS.  YOU SAID THAT YOU IDENTIFIED PHOTOGRAPHS

26  FROM TWO DIFFERENT FOLDERS?

27      A   THAT'S CORRECT.

28      Q   MA'AM, ISN'T IT TRUE THAT YOU WEREN'T SURE

1    ABOUT ONE OF THOSE?

2        A    THAT'S CORRECT.

3        Q    AND YOU TOLD THE DETECTIVE THAT IT LOOKS LIKE

4    HIM, BUT YOU WEREN'T SURE AND DIDN'T WANT TO SAY IT WAS

5    HIM BECAUSE YOU WEREN'T SURE?

6        A    YES.

7        Q    YOU SAY YOU IDENTIFIED TWO?

8        A    BECAUSE ONE I SAID THIS LOOKS LIKE HIM.  I

9    COULD SAY MAYBE THIS IS HIM, I'M NOT POSITIVE, YES, SIR.

10        Q    SO YOU WERE SURE ON ONE OF THEM AND THE OTHER

11   ONE YOU WEREN'T TOO SURE?

12        A    YES.

13        Q    BUT IN COURT YOU ARE SURE?

14        A    THAT'S CORRECT.

15        MR. TORRES:  I HAVE NO FURTHER QUESTIONS.

16        THE COURT:  MR. JACINTO.

17

18                    RECROSS EXAMINATION

19

20   BY MR. JACINTO:

21        Q    THE EVENING OF THE INCIDENT DID YOU HAVE

22   ANYTHING TO DRINK?

23        A    NO, SIR.

24        MR. JACINTO:  THANK YOU.

25        THE COURT:  MISS COLE.

26        MS. COLE:  NOTHING FURTHER.

27        THE COURT:  MAY THE WITNESS BE EXCUSED?

28        MR. JACINTO:  NO OBJECTION.

1    THE COURT:   THANK YOU, MA'AM.   YOU ARE FREE TO

2   LEAVE THE COURTHOUSE.

3        PEOPLE CALL THE NEXT WITNESS.

4    MR. TORRES:   PEOPLE CALL BRANDY WALKER.

5    INTERPRETER DALL'OCCHIO:   YOUR HONOR, IS IT

6   POSSIBLE TO TAKE A SHORT BREAK?

7    THE COURT:   AT THIS TIME WE'LL TAKE A TEN MINUTE

8   RECESS.

9        (RECESS TAKEN)

10    THE COURT:   BACK ON THE RECORD IN THE CASE OF

11   JOSE HUMBERTO MELARA AND ISRAEL GARCIA, CASE NUMBER

12   VA050173.  BOTH THE DEFENDANTS ARE PRESENT WITH THE

13   SPANISH LANGUAGE INTERPRETERS AND ALL COUNSEL ARE

14   PRESENT WITH THE INVESTIGATING OFFICER.

15        PEOPLE?

16    MR. TORRES:   PEOPLE CALL BRANDY WALKER.

17    THE CLERK:   RAISE YOUR RIGHT HAND, PLEASE.

18        YOU DO SOLEMNLY SWEAR THE TESTIMONY YOU SHALL

19   GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL BE

20   THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH SO

21   HELP YOU GOD?

22    THE WITNESS:   YES.

23    THE CLERK:   THANK YOU.   PLEASE BE SEATED.

24        STATE YOUR FULL NAME AND SPELL YOUR LAST

25   NAME, PLEASE.

26    THE WITNESS:   BRANDY MARIE WALKER, W-A-L-K-E-R.

27    THE COURT:   YOU MAY INQUIRE.

28

1                    DIRECT EXAMINATION

2

3    BY MR. TORRES:

4         Q    BRANDY, WERE YOU AT THE LIKA BAR AT 5006

5    CLARA STREET IN CUDAHY ON AUGUST 20TH, 1998?

6         A    YES, SIR.

7         Q    AT ABOUT 11:15 WERE YOU THERE WHEN THERE WAS

8    A STABBING THERE?

9         A    YES.

10        Q    AND WHO GOT STABBED?

11        A    UM, OUR FRIEND HECTOR.

12        Q    DID YOU SEE THE TWO PEOPLE THAT APPEARED TO

13   BE INVOLVED IN THE STABBING?

14        A    YEAH.

15        Q    DO YOU REMEMBER HOW THEY WERE DRESSED?

16        A    THEY WERE DRESSED LIKE THEY CAME IN FROM A

17   BAND.

18        Q    CAN YOU TELL US WHAT THAT WAS?

19        A    ONE WAS WEARING A WHITE SHIRT AND THE OTHER

20   ONE A SUIT.

21        Q    DID YOU SEE WHERE THEY WENT AFTER THE

22   STABBING?

23        A    THEY WENT OUTSIDE TO THE CAR.

24        Q    DID YOU GO OUT, TOO?

25        A    YEAH, I FOLLOWED THEM OUT.

26        Q    WHERE DID YOU SEE THEM GO?

27        A    THEY WENT DOWN THE STREET.

28        Q    BEFORE THEY WENT DOWN THE STREET DID THEY GO

1  TO WHERE A CAR WAS AT?

2      A    THE CAR WAS PARKED OUTSIDE THE BAR.    THEY

3  WERE FLIPPING THE LICENSE PLATE UP.

4      Q    OKAY. WHEN YOU SAY THEY WERE FLIPPING THE

5  LICENSE PLATE UP TELL US WHAT YOU SAW?

6      A    I SEEN ONE OF THEM BENDING DOWN BY THE

7  LICENSE PLATE AND THE OTHER ONE BY THE DRIVER'S PART OF

8  THE CAR.

9      Q    WHICH ONE WAS BENDING DOWN BY THE LICENSE

10 PLATE: THE ONE WEARING THE SHIRT OR THE OTHER ONE IN THE

11 SUIT?

12     A    WHICH ONE?

13     Q    YES.

14     A    I BELIEVE IT WAS THE ONE IN THE WHITE SHIRT

15 BENDING DOWN BY THE LICENSE PLATE.

16     Q    THE ONE WITH THE SUIT WAS STANDING BY THE

17 DRIVER'S DOOR?

18     A    YEAH.

19     Q    DID YOU SEE THEM GET IN THE CAR?

20     A    AT THAT TIME, NO.    I HAD RAN BACK INTO THE

21 BAR.

22     Q    OKAY.

23     A    BUT WHEN I WENT BACK OUTSIDE THEY WERE TAKING

24 IT OFF.

25     Q    WHAT KIND OF CAR WAS THAT?

26     A    Z-28.

27     Q    DO YOU REMEMBER THE COLOR?

28     A    NO.

1    Q    WHERE DID THE CAR GO?

2    A    IT WENT DOWN THE STREET TOWARDS ELIZABETH,

3  WILCOX AND ELIZABETH.

4    Q    DID YOU WATCH IT GO DOWN THE STREET?

5    A    YEAH.

6    Q    WHAT HAPPENED WHEN IT WENT DOWN THE STREET?

7    A    I HEARD A CRASH.

8    Q    AND THE CRASH WOULD BE AT ELIZABETH AND

9  WILCOX?

10    A    YES.

11    MR. JACINTO:    OBJECTION, SPECULATION.

12    THE COURT:    SUSTAINED.

13  BY MR. TORRES:

14    Q    IT WAS GOING DOWN WILCOX TOWARDS ELIZABETH?

15    A    AND CRASHED AT ELIZABETH.

16    MR. TORRES:    I HAVE NO FURTHER QUESTIONS.

17    THE COURT:    MR. JACINTO.

18

19                  CROSS EXAMINATION

20

21  BY MR. JACINTO:

22    Q    WOULD IT BE CORRECT TO SAY YOU SAW THEM

23  OUTSIDE OF THE CAR AND THE MAN WITH THE SUIT -- YOU

24  DIDN'T ACTUALLY SEE EITHER ONE OF THEM GET INSIDE THE

25  CAR?

26    A    NO.  I SEEN THE ONE WITH THE SUIT ON.  HE WAS

27  BY THE DRIVER'S SIDE WITH THE DOOR OPEN.

28    Q    THE DRIVER'S DOOR WAS OPEN?

1    A    YES.

2    Q    AS IF HE WAS THE DRIVER?

3    A    YES.

4    Q    YOU DIDN'T ACTUALLY SEE HIM GET INSIDE THE

5 CAR?

6    A    NO.

7    Q    WHEN YOU CAME OUT AGAIN THE CAR WAS ALREADY

8 LEAVING THE BAR AREA?

9    A    YES.

10    Q    AND THAT WAS WHEN THEY WERE GOING DOWN WILCOX

11 TOWARDS I THINK YOU HAD SAID ELIZABETH?

12    A    YES, SIR.

13    Q    AND THAT WAS THE LAST YOU SAW OF THEM?

14    A    WELL, I HAD WALKED DOWN THERE AFTER THE COPS

15 CAME.

16    Q    SO YOU SAW THE CRASH SCENE?

17    A    I DIDN'T SEE THEM CRASH, BUT I SEEN THE CAR

18 THERE AND YOU KNOW THEY WEREN'T THERE SO.

19    Q    YOU SAW THE SAME CAR?

20    A    YES, THE SAME CAR.

21    Q    HOW LONG AFTER THE CAR DISAPPEARED FROM

22 WILCOX DID YOU HEAR SOUNDS OF A CRASH?

23    A    WELL, IT WAS RIGHT -- IT WAS A FEW MINUTES

24 AFTER BECAUSE I WENT RUNNING AFTER THE PEOPLE WHO HAD

25 SEEN IT AND THAT'S WHEN I HAD SEEN THE CAR.  IT WAS

26 MAYBE TWO OR THREE MINUTES.

27    Q    DOWN THE STREET?

28    A    YES.

1    MR. JACINTO:  THANK YOU.  NOTHING FURTHER.

2    THE COURT:   MISS COLE.

3

4    CROSS EXAMINATION

5

6  BY MS. COLE:

7    Q    DID YOU FOLLOW THE INDIVIDUALS OUT OF THE BAR

8  IMMEDIATELY AFTER THE STABBING OCCURRED?

9    A    YES, MA'AM.

10    Q    SO NO TIME HAD PASSED BETWEEN THE STABBING

11  AND WHEN THEY LEFT THE BAR; IS THAT CORRECT?

12    A    EXCUSE ME?

13    Q    AND DID ANY TIME PASS FROM THE TIME OF THIS

14  STABBING TO THE TIME THEY EXITED THE BAR?

15    A    NO.

16    Q    IT WAS A MATTER OF SECONDS?

17    A    YES.

18    Q    WOULD IT BE FAIR TO SAY THAT YOU FOLLOWED

19  THEM OUT IMMEDIATELY?

20    A    YES.

21    Q    AND THE ONE INDIVIDUAL IN THE SUIT OPENED THE

22  DRIVER'S DOOR; IS THAT CORRECT?

23    A    YES.

24    Q    AND THEN AFTER ANOTHER INDIVIDUAL THAT WAS

25  WEARING A WHITE SHIRT BENT DOWN IN THE FRONT OF THE

26  VEHICLE; IS THAT CORRECT?

27    A    YES.

28    Q    AT THAT POINT IS THAT WHEN YOU RETURNED INTO

1    THE BAR?

2        A    I DIDN'T RETURN TO THE BAR UNTIL AFTER I SEEN

3    HIM LIFT THE LICENSE PLATE UP, BECAUSE THE BARTENDER WAS

4    CALLING THE POLICE.   I WAS TRYING TO GET A LICENSE PLATE

5    NUMBER, BUT HE BENT IT.

6        Q    SO YOU COULDN'T SEE THE LICENSE PLATE?

7        A    NO, MA'AM.

8        Q    AND AT THAT POINT WHAT WAS THE LAST THING

9    THAT YOU SAW BEFORE YOU WENT BACK INTO THE BAR AREA?

10       A    I SEEN AN INDIVIDUAL BY THE DRIVER'S SIDE BY

11   THE CAR SO I THOUGHT HE WAS REACHING INTO THE CAR FOR

12   SOMETHING AND I WENT BACK INTO THE BAR.   THAT'S WHY I

13   WENT BACK IN THE BAR.

14       MS. COLE:   NO FURTHER QUESTIONS.

15       THE COURT:   MR. TORRES.

16       MR. TORRES:   NOTHING FURTHER.

17       THE COURT:   MR. JACINTO.

18       MS. KIM:   NO FURTHER QUESTIONS.

19       THE COURT:   YOU MAY STEP DOWN AND YOU'RE FREE TO

20   LEAVE THE COURTHOUSE.

21           PEOPLE CALL THE NEXT WITNESS.

22       MR. TORRES:   PEOPLE CALL DEPUTY VALDEZ.

23       THE CLERK:   RAISE YOUR RIGHT HAND, PLEASE.

24           YOU DO SOLEMNLY SWEAR THE TESTIMONY YOU SHALL

25   GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL BE

26   THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH SO

27   HELP YOU GOD?

28       THE WITNESS:   YES.

1      THE CLERK:   THANK YOU.    PLEASE BE SEATED.

2           STATE YOUR FULL NAME AND SPELL YOUR LAST

3  NAME, PLEASE.

4      THE WITNESS:   ERIC VALDEZ, V-A-L-D-E-Z.

5      THE COURT:   YOU MAY INQUIRE.

6

7                    DIRECT EXAMINATION

8

9  BY MR. TORRES:

10         Q    WHAT IS YOUR OCCUPATION AND ASSIGNMENT?

11         A    DEPUTY SHERIFF CURRENTLY ASSIGNED TO EAST

12  L.A. PATROL.

13         Q    WERE YOU SO EMPLOYED ON AUGUST 20TH, 1998?

14         A    YES.

15         Q    AT ABOUT 10:20 OR ABOUT 11:20 OR SO?

16         A    I WAS ALSO ON THAT EVENING.

17         Q    DID YOU RESPOND TO 5006 CLARA STREET IN THE

18  CITY OF CUDAHY?

19         A    YES.

20         Q    WHY DID YOU RESPOND TO THAT LOCATION?

21         A    I RECEIVED AN ASSIST CALL OF A 245 OR AN

22  ASSAULT WITH A DEADLY WEAPON.

23         Q    AND ON THE WAY THERE DID SOMETHING HAPPEN?

24         A    YES.   WHILE EN ROUTE TO THE LOCATION I WAS

25  FLAGGED DOWN BY AN UNIDENTIFIED CITIZEN.

26         Q    WHERE DID THIS HAPPEN?

27         A    IT OCCURRED WHILE TRAVELING NORTHBOUND WILCOX

28  AND ELIZABETH.

1    Q    AND YOU TALKED TO THE CITIZEN?

2    A   YES.

3    Q    AND WHILE TALKING TO THE CITIZEN WAS YOUR

4  ATTENTION ATTRACTED TO SOMETHING?

5    A   YES.

6    Q   WHAT WAS THAT?

7    A    JUST TO MY RIGHT I NOTICED A VEHICLE WITH THE

8  REAR WHEELS ON THE SOUTH SIDEWALK AND THE FRONT END WAS

9  FACING NORTH EAST.

10    Q   DID IT APPEAR TO HAVE BEEN IN A COLLISION?

11    A   YES.

12    Q   WHAT KIND OF VEHICLE WAS IT?

13    A   IT WAS A BURGUNDY 300ZX.

14    Q   DID YOU OBSERVE ANYTHING?

15    A   I LOOKED AND SAW TWO MALE HISPANICS IN DARK

16  CLOTHING RUNNING EASTBOUND ON THE SOUTH SIDE OF THE

17  STREET OF ELIZABETH.

18    Q   ABOUT THAT TIME DID YOU OBSERVE SOMETHING ON

19  YOUR M.D.T.?

20    A   YES.  THE CALL WAS UPDATED THAT A SUSPECT

21  DESCRIPTION OF THE ASSAULT WITH A DEADLY WEAPON WAS TWO

22  MALE HISPANICS WEARING DARK CLOTHING.

23    Q   HOW ABOUT THE VEHICLE?

24    A   AND IT WAS A BURGUNDY 300ZX VEHICLE.

25    Q   WHAT DID YOU DO?

26    A   I IMMEDIATELY PURSUED THE TWO MALE HISPANICS

27  RUNNING EASTBOUND.

28    Q   DID YOU CATCH THEM?

1       A    NO.  AS I APPROACHED THEY DUCKED OUT OR RAN

2   DOWN THE DRIVEWAY SOUTHBOUND AT 5040 ELIZABETH.

3       Q    WHAT DID YOU DO?

4       A    I IMMEDIATELY RETRIEVED ASSISTING UNITS AND

5   SET UP A CONTAINMENT OF THE AREA REGARDING THE FELONY

6   SUSPECTS.

7       Q    SO YOU ASKED FOR ADDITIONAL PATROL PERSONNEL

8   TO SURROUND THE AREA?

9       A    YES.

10      Q    WHAT DID ASK FOR?

11      A    I ASKED FOR AN AIR UNIT DUE TO THE LATE HOUR

12  OF EVENING AND I ALSO REQUESTED A CANINE UNIT.

13      Q    WERE ANY SUSPECTS FOUND?

14      A    YES.

15      Q    AND HOW MANY?

16      A    WELL, THE AIR UNIT FOUND TWO PEOPLE UNDER A

17  VAN AT 5040 ELIZABETH.  THE CANINE UNIT AND UNIT 23 THEY

18  RESPONDED AND FOUND TWO MALE HISPANICS IN DARK CLOTHING

19  HIDING IN AN ATTEMPT TO CONCEAL THEMSELVES UNDERNEATH

20  THE VAN.

21      Q    DID YOU GO TO THE VAN ITSELF?

22      A    YES.

23      Q    DID YOU SEE THE PERSONS THAT WERE BROUGHT OUT

24  FROM UNDER THE VAN?

25      A    YES, I DID.

26      Q    DID YOU REMEMBER HOW THE PEOPLE WERE DRESSED?

27      A    THEY WERE WEARING DARK DRESS PANTS. ONE WAS

28  WEARING A DARK JACKET WITH A LIGHT DRESS SHIRT AND THE

1    OTHER MALE WAS WEARING DARK PANTS AND A LIGHT DRESS

2    SHIRT AS WELL.

3        Q    DO YOU SEE THOSE PERSONS IN THE COURT?

4        A    YES, I DO.

5        Q    WOULD YOU IDENTIFY THEM FIRST BY POINTING TO

6    THEM AND TELLING US WHERE THEY ARE SEATED AND WHAT THEY

7    ARE WEARING?

8        A    THE DEFENDANT TO THE LEFT WEARING A BLUE L.A.

9    COUNTY JAIL JUMPSUIT.

10        THE COURT:    POINTING AT AND IDENTIFYING ISRAEL

11    GARCIA FOR THE RECORD.

12        THE WITNESS:    THE DEFENDANT TO THE RIGHT WEARING

13    THE BLUE L.A. COUNTY JAIL JUMPSUIT.

14        THE COURT:    POINTING AT AND IDENTIFYING JOSE

15    HUMBERTO MELARA FOR THE RECORD.

16        MR. TORRES:    NO FURTHER QUESTIONS.

17        THE COURT:    MR. JACINTO.

18        MR. JACINTO:    NO QUESTIONS.

19        THE COURT:    MISS COLE.

20        MR. SMITH:    NO QUESTIONS.

21        THE COURT:    ALL RIGHT.    THANK YOU, SIR.    YOU MAY

22    STEP DOWN.    YOU ARE FREE TO LEAVE.

23            PEOPLE CALL THE NEXT WITNESS.

24        MR. TORRES:    I HAVE A STIPULATION, YOUR HONOR.

25        THE COURT:    GO AHEAD.

26        MR. TORRES:    COUNSEL, DO YOU STIPULATE THAT

27    LOS ANGELES COUNTY DEPUTY CORONER YULAI WANG SPELLED

28    Y-U-L-A-I W-A-N-G BE DEEMED TO HAVE BEEN CALLED, DULY

1   SWORN AND QUALIFIED AS A FORENSIC PATHOLOGIST AND

2   TESTIFIED THAT HE PERFORMED AN AUTOPSY ON THE BODY OF

3   HECTOR VELOS ON AUGUST 23RD, 1998, AND DETERMINED THE

4   CAUSE OF DEATH WAS A STAB WOUND TO THE CHEST?

5        MS. COLE:   YES, FOR PURPOSES OF THIS HEARING

6   ONLY.

7        MR. JACINTO:   FOR PURPOSES OF THIS HEARING ONLY

8   SO STIPULATED ON BEHALF OF MR. MELARA.

9        MR. TORRES:   THANK YOU.

10        THE COURT:   DO PEOPLE ACCEPT IT WITH THAT

11  LIMITATION?

12        MR. TORRES:   YES.

13        THE COURT:   ALL RIGHT.  THE COURT ACCEPTS THE

14  STIPULATION AS LIMITED.

15        MR. TORRES:   PEOPLE HAVE NO FURTHER WITNESSES AND

16  PEOPLE REST.

17        THE COURT:   ALL RIGHT.  MR. JACINTO, ANY

18  AFFIRMATIVE DEFENSE?

19        MR. JACINTO:   NO AFFIRMATIVE DEFENSE, YOUR HONOR.

20        THE COURT:   MISS COLE?

21        MS. COLE:   NO AFFIRMATIVE DEFENSE.

22        THE COURT:   AND MR. JACINTO, DO YOU WISH TO BE

23  HEARD?

24        MR. JACINTO:   YES, YOUR HONOR.  I WILL ASK THE

25  COURT TO DISMISS THE ALLEGATIONS AGAINST MY CLIENT MR.

26  MELARA.  APPARENTLY THE ALLEGATIONS ARE THAT HE WAS THE

27  MAN IN THE SUIT THAT WAS SEEN BOTH IN THE RESTROOM AND

28  LEAVING THE BAR, AND THEN ULTIMATELY ACCORDING TO THE

1   LAST DEPUTY'S TESTIMONY ARRESTED FLEEING THE SCENE.

2   THERE IS NO INDICATION THAT HE ACTUALLY JOINED IN THE

3   ACTIVITIES OF MR. GARCIA WHILE INSIDE THE BAR AND THAT

4   IS THE OFFENSE IN QUESTION: WHETHER HE WAS AN AIDER AND

5   ABETTOR TO MR. GARCIA'S CONDUCT.

6           I DON'T SEE ANYTHING TO INDICATE -- THE

7   CLOSEST WE HAVE GOT BEFORE THE COURT IS MR. LOPEZ SAW

8   MR. MELARA STANDING AT THE DOORWAY WHEN HE CAME OUT OF

9   THE RESTROOM STALL AND APPARENTLY HE WAS DOING NOTHING

10  BUT STANDING THERE.  HE WASN'T SAYING ANYTHING EXCEPT

11  GETTING PUSHED OUT OF THE WAY BY MR. LOPEZ HIMSELF AND

12  RUNNING AWAY FROM THE SCENE AFTER IT HAD ALL GONE DOWN.

13  I WOULD ASK THE COURT TO DISMISS THE CHARGES IN THEIR

14  ENTIRETY AGAINST MR. MELARA.

15      THE COURT:   PEOPLE, YOU WISH TO BE HEARD?

16      MR. TORRES:   YES.  I BELIEVE MR. MELARA IS AN

17  AIDER AND ABETTOR, AND HE AND MR. GARCIA WERE TOGETHER

18  ALL EVENING.  THEY WENT INTO THE RESTROOM TOGETHER.

19  WHILE MR. GARCIA WAS ROBBING THE VICTIM MR. LOPEZ CAME

20  OUT AND MR. GARCIA SAID TO HIM, "I WANT YOUR MONEY,

21  TOO."  AT THAT TIME MR. MELARA STARTED WALKING TOWARDS

22  HIM BLOCKING HIS EXIT FROM THE BATHROOM, AND THE VICTIM

23  SEEING WHAT WAS HAPPENING PUSHED HIM OUT OF THE WAY AND

24  RAN OUT.

25      THE COURT:   I THINK ALSO ON THE TOTALITY OF THE

26  EVIDENCE I THINK THERE IS A REASONABLE INFERENCE THAT HE

27  WAS AIDING AND ABETTING.  HE WAS THERE IN THE RESTROOM

28  WHEN THE PERSON WITH THE KNIFE SAID TO THE VICTIM, "I'M

1  GOING TO TAKE YOUR MONEY."  THE VICTIM BEING MR. LOPEZ.

2  THE GENTLEMAN WEARING THE SUIT WHO HAS BEEN IDENTIFIED

3  AS MR. MELARA DID TAKE A COUPLE STEPS FORWARD AND MR.

4  MELARA DID WAIT FOR MR. GARCIA OUT IN THE BAR AREA.

5  THEY LEFT TOGETHER.  THEY RAN AWAY TOGETHER.  AND I

6  THINK THERE IS A REASONABLE INFERENCE THAT HE WAS

7  ASSISTING MR. GARCIA AS AN AIDER AND ABETTOR.  BASED ON

8  THAT I WILL DENY THE MOTION TO DISMISS.

9        MISS COLE, DO YOU WISH TO BE HEARD?

10       MR. SMITH:   YES.   MOTION TO DISMISS BASED ON

11 INSUFFICIENCY OF THE EVIDENCE AND I WILL SUBMIT.

12       THE COURT:   I THINK ON THE EVIDENCE WE HAVE THERE

13 IS CERTAINLY A REASONABLE INFERENCE AS TO THE

14 CULPABILITY OF YOUR CLIENT AND THE MOTION IS DENIED.

15       IT APPEARING TO ME FROM THE EVIDENCE

16 PRESENTED THAT THE FOLLOWING OFFENSES HAVE BEEN

17 COMMITTED AND THERE IS SUFFICIENT CAUSE TO BELIEVE THE

18 FOLLOWING DEFENDANTS ARE GUILTY THEREOF: JOSE HUMBERTO

19 MELARA IN COUNT ONE VIOLATION OF THE PENAL CODE 187(A),

20 WITH THE SPECIAL ALLEGATION UNDER PENAL CODE

21 190.2(A)(17) AND COUNT TWO VIOLATION OF PENAL CODE 211

22 IN THE SECOND DEGREE, AND COUNT THREE VIOLATION OF PENAL

23 CODE 664/211 IN THE SECOND DEGREE.  AND AS TO ISRAEL

24 GARCIA COUNT ONE VIOLATION OF PENAL CODE 187(A) WITH THE

25 SPECIAL ALLEGATION UNDER PENAL CODE 12022(B)(1) AND

26 PENAL CODE 190.2(A)(17), AND COUNT TWO VIOLATION OF

27 PENAL CODE 211 IN THE SECOND DEGREE WITH THE SPECIAL

28 ALLEGATION UNDER PENAL CODE 12022(B)(1), AND COUNT THREE

1  VIOLATION OF PENAL CODE 664/211 IN THE SECOND DEGREE
2  WITH THE SPECIAL ALLEGATION UNDER PENAL CODE
3  12022(B)(1), I ORDER THAT EACH DEFENDANT BE HELD TO
4  ANSWER THEREFORE AND NO BAIL WILL BE SET AS TO EITHER OF
5  THE DEFENDANTS.  THEY WILL BE COMMITTED TO THE CUSTODY
6  OF THE SHERIFF OF LOS ANGELES COUNTY UNTIL SUCH BAIL IS
7  GIVEN.
8            DATE OF ARRAIGNMENT WILL BE IN THE SUPERIOR
9  COURT DEPARTMENT SOUTHEAST "T" AS IN TOM ON NOVEMBER
10 30TH, 1998, AT 8:30 A.M.
11
12       (PROCEEDINGS WERE CONCLUDED AT 12:23 P.M.)
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE MUNICIPAL COURT OF SOUTHEAST/NORTH JUDICIAL DISTRICT

COUNTY OF LOS ANGELES, STATE OF CALIFORNIA

HON *Ross M. Klein, Commissioner*          DIVISION NO. *IV*

THE PEOPLE OF THE STATE OF CALIFORNIA )
                                       )
                          Plaintiff,   )
                                       )
              -vs-                     )   No. *VA050173*
                                       )
*Jose Humberto Melara, and*            )
*Israel Garcia,*                       )
                          Defendants,  )
_____ )

     I HEREBY CERTIFY that on the *13th* day of *November, 1998*
*Renée D. Smith*        , Official Reporter of the above entitled
Court, was assigned as shorthand reporter to report the testi-
mony and proceedings contained herein; and did act as such
reporter and was by me directed to reduce the said shorthand
notes to typewriting.

                         _____
                         Judge of the Municipal Court of
                         SEN Judicial District, County
                         of Los Angeles, State of California

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     I HEREBY CERTIFY that I am an Official Shorthand Reporter
of the above entitled Court.  Pursuant to the Judge's certifi-
cate above, I was assigned to report, and did correctly report,
the testimony and proceedings contained herein; that the fore-
going is a true and correct transcription of my said notes, and
a full, true and correct statement of said testimony and
proceedings.
                         _____
                                   Official Reporter

000079

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | CASE NO. VA050173 |
| Plaintiff, | |
| v. | *I N F O R M A T I O N* |
| 01  JOSE HUMBERTO MELARA  (1/10/1970) (Bk# 5767339), and | **FILED** LOS ANGELES SUPERIOR COURT |
| 02  ISRAEL GARCIA  (8/17/1967) (Bk#  5767338) | Arraignment Hearing   NOV 3 0 1998 |
| Defendant(s). | Date: 11/30/1998 |
| | Department: SE  T   JOHN A. CLARKE, CLERK |
| | BY D. DIAZ, DEPUTY |

### INFORMATION SUMMARY

| Ct. No. | Charge | Charge Range | Defendant | Special Allegation | Alleg. Effect |
|---|---|---|---|---|---|
| 1 | PC 187(a) | LWOP/Death | MELARA, JOSE HUMBERTO GARCIA, ISRAEL | PC 190.2(a)(17) PC 12022(b)(1) PC 190.2(a)(17) PC 667.5(b) | LWOP/Death +1Yr LWOP/Death +1 yr. per prior |
| 2 | PC 211 | 2-3-5 | MELARA, JOSE HUMBERTO GARCIA, ISRAEL | PC 12022(b)(1) PC 667.5(b) | +1Yr +1 yr. per prior |
| 3 | PC 664/211 | Check PC664 | MELARA, JOSE HUMBERTO GARCIA, ISRAEL | PC 12022(b)(1) PC 667.5(b) | +1Yr +1 yr. per prior |

The District Attorney of the County of Los Angeles, by this Information alleges that:

### COUNT  1

On or about August 20, 1998, in the County of Los Angeles, the crime of MURDER, in violation of PENAL CODE SECTION 187(a), a Felony, was committed by JOSE HUMBERTO MELARA and ISRAEL GARCIA, who did unlawfully, and with malice aforethought murder HECTOR MANUEL VELOS, a human being.

"Notice:  The above offense is a serious felony within the meaning of Penal Code section 1192.7(c)."

It is further alleged that the murder of HECTOR MANUEL VELOS was  committed by defendant(s), JOSE HUMBERTO MELARA and ISRAEL GARCIA while the said defendant(s) was/were  engaged in

the commission of the crime of Robbery, within the meaning of Penal Code section 190.2(a)(17).

* * * * *

## COUNT 2

On or about August 20, 1998, in the County of Los Angeles, the crime of SECOND DEGREE ROBBERY, in violation of PENAL CODE SECTION 211, a Felony, was committed by JOSE HUMBERTO MELARA and ISRAEL GARCIA, who did unlawfully, and by means of force and fear take personal property from the person, possession, and immediate presence of HECTOR MANUEL VELOS. "Notice: The above offense is a serious felony within the meaning of Penal Code section 1192.7(c)."

* * * * *

## COUNT 3

On or about August 20, 1998, in the County of Los Angeles, the crime of ATTEMPTED SECOND DEGREE ROBBERY, in violation of PENAL CODE SECTION 664/211, a Felony, was committed by JOSE HUMBERTO MELARA and ISRAEL GARCIA, who did unlawfully, and by means of force and fear attempt to take personal property from the person, possession, and immediate presence of JOSE M. LOPEZ.

"Notice: The above offense is a serious felony within the meaning of Penal Code section 1192.7(c)."

It is further alleged as to count(s) 1, 2, and 3 that in the commission and attempted commission of the above offense, the said defendant(s), ISRAEL GARCIA, personally used a deadly and dangerous weapon(s), to wit, knife, said use not being an element of the above offense, within the meaning of Penal Code Section 12022(b)(1) and causing the above offense to be a serious felony within the meaning of Penal Code section 1192.7(c)(23).

000081

It is further alleged as to count(s) 1, 2, and 3 pursuant to Penal Code section 667.5(b) that the defendant(s), ISRAEL GARCIA, has suffered the following prior conviction(s):

| Case No. | Code/Statute | Conv. Date | County of Court | State | Court Type |
|----------|-------------|-----------|-----------------|-------|-----------|
| BA065568 | HS 11352 | 02/17/1993 | LOS ANGELES | CA | SUPERIOR |
| BA084958 | HS 11352 | 12/16/1993 | LOS ANGELES | CA | SUPERIOR |

and that a term was served as described in Penal Code section 667.5 for said offense(s), and that the defendant(s) did not remain free of prison custody for, and did commit an offense resulting in a felony conviction during, a period of five years subsequent to the conclusion of said term.

\* \* \* \* \*

000082

THIS INFORMATION CONSISTS OF 3 COUNT(S).


GIL GARCETTI
DISTRICT ATTORNEY
County of Los Angeles,
State of California

BY: _____
JOHN LYNCH
DEPUTY DISTRICT ATTORNEY          Filed in Superior Court,
                                   County of Los Angeles

/RR                                DATED: _____


Pursuant to Penal Code Section 1054.5(b), the People are hereby informally requesting that defense
counsel provide discovery to the People as required by Penal Code Section 1054.3.

000083

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 11/30/98

---------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                        VS.
DEFENDANT 01: JOSE HUMBERTO MELARA

---------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.


ON 11/30/98 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

CASE CALLED FOR ARRAIGNMENT

PARTIES: PATRICK COUWENBERG (JUDGE)  DAVID DIAZ  (CLERK)
         JODI DANIELS  (REP)     JOSEPH A. MARKUS  (DA)

PUBLIC DEFENDER APPOINTED.  RAMIRO JACINTO - P.D.

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY RAMIRO JACINTO DEPUTY PUBLIC
DEFENDER

MARTHA HASSAN, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.


INFORMATION FILED AND THE DEFENDANT IS ARRAIGNED.

DEFENDANT ADVISED THAT IN ANY CASE IN WHICH YOU ARE FURNISHED A LAWYER, EITHER
THROUGH THE PUBLIC DEFENDER OR PRIVATE COUNSEL APPOINTED BY THE COURT, THE COURT SHALL MAKE
CONCLUSION OF THE CRIMINAL PROCEEDINGS IN THE TRIAL COURT, THE COURT SHALL MAKE
A DETERMINATION OF YOUR PRESENT ABILITY TO PAY ALL OR A PORTION OF THE COST OF
COUNSEL.  IF THE COURT DETERMINES THAT YOU HAVE THE PRESENT ABILITY TO PAY ALL
OR PART OF THE COST, IT SHALL ORDER YOU TO PAY THE SUM TO THE COUNTY IN ANY
INSTALLMENTS AND MANNER WHICH IT BELIEVES REASONABLE AND
COMPATIBLE WITH YOUR FINANCIAL ABILITY.  EXECUTION MAY BE ISSUED ON THE ORDER
IN THE SAME MANNER AS ON A JUDGEMENT IN A CIVIL ACTION;

DEFENDANT PLEADS NOT GUILTY TO COUNT 01, 187(A) PC - MURDER.
DEFENDANT PLEADS NOT GUILTY TO COUNT 02, 211 PC - ROBBERY.
DEFENDANT PLEADS NOT GUILTY TO COUNT 03, 664-211 PC - ATTEMPT ROBBERY.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.
                                        ARRAIGNMENT
                PAGE NO.   1        HEARING DATE: 11/30/98

SE NO. VA050173                                    DATE PRINTED 11/30/98
F NO.  01

EFENDANT DENIES PRIOR AND USE ALLEGATIONS.

EXT SCHEDULED EVENT:
/05/99   830 AM  PRETRIAL CONFERENCE   DIST L.A. SUPERIOR SOUTHEAST DEPT SET

EXT SCHEDULED EVENT 2:
/28/99   830 AM  JURY TRIAL   DIST L.A. SUPERIOR SOUTHEAST DEPT SET

AY 59 OF 60

USTODY STATUS: DEFENDANT REMANDED

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 11/30/98

------------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                        VS.
DEFENDANT 02:  ISRAEL  GARCIA

------------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.


ON 11/30/98 AT  900 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

CASE CALLED FOR ARRAIGNMENT

PARTIES: PATRICK COUWENBERG (JUDGE)  DAVID DIAZ  (CLERK)
         JODI DANIELS  (REP)    JOSEPH A. MARKUS  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY HARRY JOSEPH PIKE PRIVATE
COUNSEL

MARTHA HASSAN, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

INFORMATION FILED AND THE DEFENDANT IS ARRAIGNED.


DEFENDANT STATES HIS/HER TRUE NAME AS CHARGED.

DEFENDANT PLEADS NOT GUILTY TO COUNT 01, 187(A) PC - MURDER.
DEFENDANT PLEADS NOT GUILTY TO COUNT 02, 211 PC - ROBBERY.
DEFENDANT PLEADS NOT GUILTY TO COUNT 03, 664-211 PC - ATTEMPT ROBBERY.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

DEFENDANT DENIES ALL USE AND PRIOR ALLEGATIONS.

NEXT SCHEDULED EVENT:
01/05/99   830 AM  PRETRIAL CONFERENCE   DIST L.A. SUPERIOR SOUTHEAST DEPT SET

NEXT SCHEDULED EVENT 2:
01/28/99   830 AM  JURY TRIAL   DIST L.A. SUPERIOR SOUTHEAST DEPT SET

DAY 59 OF 60

                              ARRAIGNMENT
                PAGE NO.   1   HEARING DATE: 11/30/98

CASE NO. VA050173
DEF NO. 02

DATE PRINTED 11/30/98

CUSTODY STATUS: DEFENDANT REMANDED

ARRAIGNMENT
HEARING DATE: 11/30/98

000087

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

TE PRINTED: 01/05/99

--------------------------------------------------------------

SE NO. VA050173

E PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
FENDANT 01:  JOSE HUMBERTO MELARA

--------------------------------------------------------------

NFORMATION FILED ON 11/30/98.

OUNT 01: 187(A) PC FEL  - MURDER.
OUNT 02: 211 PC FEL  - ROBBERY.
OUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.

N 01/05/99 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

ASE CALLED FOR PRETRIAL CONFERENCE

ARTIES: PATRICK COUWENBERG (JUDGE)  MICHELLE VERMILYE  (CLERK)
        NAOMI LEEPER        (REP)  RALPH TORRES   (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY RAMIRO JACINTO DEPUTY PUBLIC
DEFENDER

ENMA HELOU, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

PRE-TRIAL CONFERENCE IS PLACED OFF CALENDAR.

TRIAL DATE OF 1-28-99 TO STAND AS 59/60.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:
01/28/99   900 AM  JURY TRIAL TRAILED   DIST L.A. SUPERIOR SOUTHEAST DEPT SET

DAY 59 OF 60

CUSTODY STATUS: DEFENDANT REMANDED

PAGE NO.   1        PRETRIAL CONFERENCE
                   HEARING DATE: 01/05/99

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES


DATE PRINTED: 01/05/99

---------------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                        VS.
DEFENDANT 02:  ISRAEL  GARCIA

---------------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.


ON 01/05/99 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

CASE CALLED FOR PRETRIAL CONFERENCE

PARTIES: PATRICK COUWENBERG (JUDGE)  MICHELLE VERMILYE  (CLERK)
         NAOMI LEEPER      (REP)  RALPH TORRES  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY HARRY JOSEPH PIKE PRIVATE
COUNSEL

ENMA HELOU, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

PRE-TRIAL CONFERENCE IS PLACED OFF CALENDAR.

TRIAL DATE OF 1-28-99 TO STAND AS 59/60.

THE COURT RECOMMENDS THAT THIS DEFENDANT BE MOVED FROM WAYSIDE
TO ANYWHERE MORE LOCAL.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:
01/28/99   900 AM  JURY TRIAL TRAILED   DIST L.A. SUPERIOR SOUTHEAST DEPT SET

DAY 59 OF 60

CUSTODY STATUS: DEFENDANT REMANDED


                              PRETRIAL CONFERENCE
              PAGE NO.   1     HEARING DATE: 01/05/99

000089

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 01/28/99

-----------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                        VS.
DEFENDANT 01:  JOSE HUMBERTO MELARA

-----------------------------------------------------------------

INFORMATION FILED ON 11/30/98.

COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.

ON 01/28/99 AT  900 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

CASE CALLED FOR JURY TRIAL TRAILED

PARTIES: PATRICK COUWENBERG (JUDGE)  MICHELLE VERMILYE  (CLERK)
         NAOMI LEEPER      (REP)  RALPH TORRES  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY RAMIRO JACINTO DEPUTY PUBLIC
DEFENDER

FCA VALENCIA, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL IS CONTINUED TO 3-11-99 AS 0/10.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

 WAIVES STATUTORY TIME.

NEXT SCHEDULED EVENT:
 03/11/99   830 AM  JURY TRIAL   DIST L.A. SUPERIOR SOUTHEAST DEPT SET

DAY 00 OF 10

CUSTODY STATUS: DEFENDANT REMANDED

                                        JURY TRIAL TRAILED
                   PAGE NO.  1          HEARING DATE: 01/28/99

000090

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

TE PRINTED: 01/28/99

-----------------------------------------------------------

SE NO. VA050173

E PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
EFENDANT 02:  ISRAEL GARCIA

-----------------------------------------------------------

NFORMATION FILED ON 11/30/98.

OUNT 01: 187(A) PC FEL  - MURDER.
OUNT 02: 211 PC FEL  - ROBBERY.
OUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.

ON 01/28/99 AT  900 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

CASE CALLED FOR JURY TRIAL TRAILED

PARTIES: PATRICK COUWENBERG (JUDGE)  MICHELLE VERMILYE  (CLERK)
         NAOMI LEEPER       (REP)  RALPH TORRES  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY HARRY JOSEPH PIKE PRIVATE
COUNSEL

FCA VALENCIA, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL IS CONTINUED TO 3-11-99 AS 0/10.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

WAIVES STATUTORY TIME.

NEXT SCHEDULED EVENT:
03/11/99   830 AM  JURY TRIAL    DIST L.A. SUPERIOR SOUTHEAST DEPT SET

DAY 00 OF 10

CUSTODY STATUS: DEFENDANT REMANDED

PAGE NO.   1

JURY TRIAL TRAILED
HEARING DATE: 01/28/99

C00091

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 03/11/99

--------------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
DEFENDANT 01: JOSE HUMBERTO MELARA

--------------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.


ON 03/11/99 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

CASE CALLED FOR JURY TRIAL

PARTIES: PATRICK COUWENBERG (JUDGE)  MICHELLE VERMILYE  (CLERK)
         NAOMI LEEPER      (REP)  JAVIER PEREZ  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY RAMIRO JACINTO DEPUTY PUBLIC
DEFENDER

MARTHA HASSAN, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL IS CONTINUED TO 4-16-99 AS 0/10.

COURT ORDERS AND FINDINGS:

THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

WAIVES STATUTORY TIME.

NEXT SCHEDULED EVENT:

 UPON MOTION OF DEFENDANT
 04/16/99   830 AM  JURY TRIAL   DIST L.A. SUPERIOR SOUTHEAST DEPT SET

DAY 00 OF 10

CUSTODY STATUS: DEFENDANT REMANDED


                                        JURY TRIAL
                    PAGE NO.   1        HEARING DATE: 03/11/99

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 03/11/99

-----------------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
DEFENDANT 02:  ISRAEL  GARCIA

-----------------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.


ON 03/11/99 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

CASE CALLED FOR JURY TRIAL

PARTIES: PATRICK COUWENBERG (JUDGE)  MICHELLE VERMILYE  (CLERK)
         NAOMI LEEPER     (REP)  JAVIER PEREZ  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY HARRY JOSEPH PIKE PRIVATE
COUNSEL

MARTHA HASSAN, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL IS CONTINUED TO 4-16-99 AS 0/10.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

WAIVES STATUTORY TIME.

NEXT SCHEDULED EVENT:
04/16/99   830 AM  JURY TRIAL    DIST L.A. SUPERIOR SOUTHEAST DEPT SET

DAY 00 OF 10

CUSTODY STATUS: DEFENDANT REMANDED


                                        JURY TRIAL
                PAGE NO.   1           HEARING DATE: 03/11/99

000093

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

ATE PRINTED: 04/16/99

-----------------------------------------------------------------

ASE NO. VA050173

HE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
EFENDANT 01:  JOSE HUMBERTO MELARA

-----------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.


ON 04/16/99 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

CASE CALLED FOR JURY TRIAL

PARTIES: DEWEY LAWES FALCONE (JUDGE)  MICHELLE VERMILYE  (CLERK)
         NAOMI LEEPER       (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY RAMIRO JACINTO DEPUTY PUBLIC
DEFENDER

FCA VALENCIA, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL IS CONTINUED TO 5-11-99 AS 0/10.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

 WAIVES STATUTORY TIME.

NEXT SCHEDULED EVENT:

 UPON MOTION OF PEOPLE
 05/11/99   830 AM  JURY TRIAL   DIST L.A. SUPERIOR SOUTHEAST DEPT SET

DAY 00 OF 10

CUSTODY STATUS: DEFENDANT REMANDED


                                          JURY TRIAL
                    PAGE NO.   1          HEARING DATE: 04/16/99

000094

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

ATE PRINTED: 04/16/99

----------------------------------------------------------------

ASE NO. VA050173

HE PEOPLE OF THE STATE OF CALIFORNIA
                        VS.
EFENDANT 02:  ISRAEL  GARCIA
----------------------------------------------------------------
----------------------------------------------------------------

INFORMATION FILED ON 11/30/98.

COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.

ON 04/16/99 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

CASE CALLED FOR JURY TRIAL

PARTIES: DEWEY LAWES FALCONE (JUDGE)  MICHELLE VERMILYE  (CLERK)
         NAOMI LEEPER       (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY HARRY JOSEPH PIKE PRIVATE
COUNSEL

FCA VALENCIA, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL IS CONTINUED TO 5-11-99 AS 0/10.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

WAIVES STATUTORY TIME.

NEXT SCHEDULED EVENT:

UPON MOTION OF PEOPLE
05/11/99   830 AM   JURY TRIAL   DIST L.A. SUPERIOR SOUTHEAST DEPT SET

DAY 00 OF 10

CUSTODY STATUS: DEFENDANT REMANDED

                                        JURY TRIAL
                    PAGE NO.   1        HEARING DATE: 04/16/99

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 05/11/99

-------------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
DEFENDANT 01:  JOSE HUMBERTO MELARA

-------------------------------------------------------------------

INFORMATION FILED ON 11/30/98.

COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.

ON 05/11/99 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

CASE CALLED FOR JURY TRIAL

PARTIES: PATRICK COUWENBERG (JUDGE)  MICHELLE VERMILYE  (CLERK)
         NAOMI LEEPER     (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY RAMIRO JACINTO DEPUTY PUBLIC
DEFENDER

ENMA HELOU, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

PEOPLE'S MOTION TO CONSOLIDATE IS HEARD, ARGUED AND DENIED.

TRIAL IS CONTINUED TO 6-1-99 AS 0/10.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

 WAIVES STATUTORY TIME.

NEXT SCHEDULED EVENT:
06/01/99   830 AM  JURY TRIAL   DIST L.A. SUPERIOR SOUTHEAST DEPT SET

DAY 00 OF 10

CUSTODY STATUS: DEFENDANT REMANDED

                                        JURY TRIAL
                    PAGE NO.   1       HEARING DATE: 05/11/99

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 05/11/99

-----------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
DEFENDANT 02:  ISRAEL  GARCIA

-----------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.


ON 05/11/99 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

CASE CALLED FOR JURY TRIAL

PARTIES: PATRICK COUWENBERG (JUDGE)  MICHELLE VERMILYE  (CLERK)
         NAOMI LEEPER     (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY HARRY JOSEPH PIKE PRIVATE
COUNSEL

ENMA HELOU, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL IS CONTINUED TO 6-1-99 AS 0/10.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

 WAIVES STATUTORY TIME.

NEXT SCHEDULED EVENT:
06/01/99   830 AM  JURY TRIAL   DIST L.A. SUPERIOR SOUTHEAST DEPT SET

DAY 00 OF 10

CUSTODY STATUS: DEFENDANT REMANDED




                                    JURY TRIAL
                    PAGE NO.   1     HEARING DATE: 05/11/99

000097

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

TE PRINTED: 06/01/99

-------------------------------------------------------------------

SE NO. VA050173

PEOPLE OF THE STATE OF CALIFORNIA
VS.
FENDANT 01:  JOSE HUMBERTO MELARA

-------------------------------------------------------------------

NFORMATION FILED ON 11/30/98.

OUNT 01: 187(A) PC FEL  - MURDER.
OUNT 02: 211 PC FEL  - ROBBERY.
OUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.

N 06/01/99 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

CASE CALLED FOR JURY TRIAL

PARTIES: PATRICK COUWENBERG (JUDGE)  MICHELLE VERMILYE  (CLERK)
         NAOMI LEEPER        (REP)  LISA G. SCOTT  (DDA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY RAMIRO JACINTO DEPUTY PUBLIC
DEFENDER

ENMA HELOU, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL IS TRAILED TO 6-9-99 AS 10/10 PURSUANT TO STIPULATION OF
ALL COUNSEL.

COURT ORDERS AND FINDINGS:

THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:

BY STIPULATION CAUSE CONTINUED TO
06/09/99  830 AM  JURY TRIAL TRAILED   DIST L.A. SUPERIOR SOUTHEAST DEPT SET

DAY 10 OF 10

CUSTODY STATUS: DEFENDANT REMANDED

JURY TRIAL
HEARING DATE: 06/01/99
PAGE NO.   1

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/01/99

------------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
DEFENDANT 02:  ISRAEL  GARCIA

------------------------------------------------------------------

INFORMATION FILED ON 11/30/98.

COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.

ON 06/01/99 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

CASE CALLED FOR JURY TRIAL

PARTIES: PATRICK COUWENBERG (JUDGE)  MICHELLE VERMILYE  (CLERK)
         NAOMI LEEPER       (REP)  LISA G. SCOTT  (DDA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY HARRY JOSEPH PIKE PRIVATE
COUNSEL

ENMA HELOU, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL IS TRAILED TO 6-9-99 AS 10/10 PURSUANT TO STIPULATION OF
ALL COUNSEL.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:

 BY STIPULATION CAUSE CONTINUED TO
 06/09/99   830 AM   JURY TRIAL TRAILED   DIST L.A. SUPERIOR SOUTHEAST DEPT SET

DAY 10 OF 10

CUSTODY STATUS: DEFENDANT REMANDED

                                        JURY TRIAL
                    PAGE NO.    1       HEARING DATE: 06/01/99

CC0099

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/09/99

-----------------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                          VS.
DEFENDANT 01:  JOSE HUMBERTO MELARA

-----------------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.


ON 06/09/99 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

CASE CALLED FOR JURY TRIAL TRAILED

PARTIES: PATRICK COUWENBERG (JUDGE)  MICHELLE VERMILYE  (CLERK)
         KATHY SHEPHERD      (REP)  ERIC PERRODIN  (DA)

THE DEFENDANT IS PRESENT(IN LOCK UP) AND REPRESENTED BY RAMIRO JACINTO DEPUTY
PUBLIC DEFENDER

MATTER IS TRANSFERRED TO DEPT. J FOR TRIAL.

NEXT SCHEDULED EVENT:
06/09/99   900 AM  JURY TRIAL   DIST. L.A. SUPERIOR SOUTHEAST DEPT SEJ


CUSTODY STATUS: DEFENDANT REMANDED

                                          JURY TRIAL TRAILED
               PAGE NO.   1              HEARING DATE: 06/09/99

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/09/99

------------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
DEFENDANT 02:  ISRAEL  GARCIA

------------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.


ON 06/09/99 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SET

CASE CALLED FOR JURY TRIAL TRAILED

PARTIES: PATRICK COUWENBERG (JUDGE)  MICHELLE VERMILYE  (CLERK)
         KATHY SHEPHERD     (REP)  ERIC PERRODIN  (DA)

THE DEFENDANT IS PRESENT(IN LOCK UP) AND REPRESENTED BY HARRY JOSEPH PIKE
PRIVATE COUNSEL

MATTER IS TRANSFERRED TO DEPT. J FOR TRIAL.

NEXT SCHEDULED EVENT:
06/09/99  900 AM  JURY TRIAL   DIST L.A. SUPERIOR SOUTHEAST DEPT SEJ


CUSTODY STATUS: DEFENDANT REMANDED


JURY TRIAL TRAILED
                                      HEARING DATE: 06/09/99

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/18/99

------------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
DEFENDANT 01      JOSE HUMBERTO MELARA

------------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.


ON 06/09/99 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SEJ

CASE CALLED FOR JURY TRIAL

PARTIES: PETER ESPINOZA (JUDGE)  NONE  (CLERK)
         SUSAN WILLIAMSON      (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY RAMIRO JACINTO DEPUTY PUBLIC
DEFENDER

F. VALENCIA, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

BERTHA JOBBAGY ALSO SERVES AS THE SPANISH INTERPRETER WITH OATH
ON FILE.

LEEDERSON MCGHEE II SERVES AS THE JUDICIAL ASSISTANT.

CAUSE TRANSFERRED FROM DEPARTMENT SE-T IS CALLED FOR TRIAL.
A PANEL OF 60 PROSPECTIVE JURORS IS ORDERED.
AN ADDITIONAL PANEL OF 15 PROSPECTIVE JURORS IS ORDERED.
VOIR DIRE BEGINS.  AN ADDITIONAL PANEL OF 30 JURORS IS ORDERED
FOR 6/10/99 AT 11:00 A.M.

JURORS ARE GIVEN THE OATH RE QUALIFICATIONS, ADMONISHED,
EXCUSED AND ORDERED TO RETURN ON 6/10/99 AT 10:45 A.M.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:
06/10/99  830 AM  JURY TRIAL   DIST L.A. SUPERIOR SOUTHEAST DEPT SEJ

                                      JURY TRIAL
                  PAGE NO.  1      HEARING DATE  06/09/99

CASE NO. VA050173
DEF NO.  01

DATE PRINTED 06/18/99

CUSTODY STATUS: DEFENDANT REMANDED

JURY TRIAL
HEARING DATE: 06/09/99

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/18/99
------------------------------------------------------------------------
CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
DEFENDANT 02   ISRAEL GARCIA
------------------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.



ON 06/09/99 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SEJ.

CASE CALLED FOR JURY TRIAL

PARTIES: PETER ESPINOZA (JUDGE)  NONE  (CLERK)
         SUSAN WILLIAMSON     (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY HARRY JOSEPH PIKE PRIVATE
COUNSEL

F. VALENCIA, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

BERTHA JOBBAGY ALSO SERVES AS THE SPANISH INTERPRETER WITH OATH
ON FILE.

LEEDERSON MCGHEE II SERVES AS THE JUDICIAL ASSISTANT.

CAUSE IS TRANSFERRED FROM DEPARTMENT SE-T IS CALLED FOR TRIAL.
A PANEL OF 60 PROSPECTIVE JURORS IS ORDERED.
AN ADDITIONAL PANEL OF 15 PROSPECTIVE JURORS IS ORDERED FOR
6/10/99 AT 11:00 A.M.

JURORS ARE GIVEN THE OATH RE QUALIFICATIONS, ADMONISHED, EXCUSED
AND ORDERED TO RETURN ON 6/10/99 AT 10:45 A.M.


COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:
06/10/99  1100 AM  JURY TRIAL IN PROGRESS   DIST L.A. SUPERIOR SOUTHEAST DEPT

                                    JURY TRIAL
            PAGE NO.   1      HEARING DATE: 06/09/99

CASE NO. VA050173
DEF NO.  02

DATE PRINTED 06/18/99

SEJ

CUSTODY STATUS: DEFENDANT REMANDED

JURY TRIAL
HEARING DATE: 06/09/99

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/18/99

--------------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
DEFENDANT 01    JOSE HUMBERTO MELARA

--------------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.


ON 06/10/99 AT 1100 AM IN L.A. SUPERIOR SOUTHEAST DEPT SEJ

CASE CALLED FOR JURY TRIAL IN PROGRESS

PARTIES: PETER ESPINOZA (JUDGE)  NONE  (CLERK)
         SUSAN WILLIAMSON      (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY RAMIRO JACINTO DEPUTY PUBLIC
DEFENDER

F. VALENCIA, OFFICIAL COURT INTERPRETER, PRESENT AS SPANISH INTERPRETER.

OATH ON FILE.

BERTHA JOBBAGY ALSO SERVES AS THE SPANISH INTERPRETER WITH OATH
ON FILE.

LEEDERSON MCGHEE II SERVES AS THE JUDICIAL ASSISTANT.

TRIAL RESUMES FROM 6/09/99, WITH COUNSEL, DEFENDANTS AND
PROSPECTIVE JURORS PRESENT AS HERETOFORE.

THE COURT RE-READS THE INFORMATION TO PROSPECTIVE JURORS.

VOIR DIRE BEGINS. BY ORDER OF THE COURT, A PANEL OF 12 (TWELVE)
JURORS AND 3 (THREE) ALTERNATE JURORS ARE IMPANELED, ACKNOWLEDGE
AND AGREE TO TRY THE CAUSE.
(02:50 P.M.)

THE JURORS ARE ADMONISHED, EXCUSED AND ORDERED TO RETURN ON

                                          JURY TRIAL IN PROGRESS.
                                          HEARING DATE 06/10/99
PAGE NO.  1

CASE NO. VA050173                              DATE PRINTED 06/18/99
DEF NO.  01

06/14/99, AT 10:15 A.M. IN THIS DEPARTMENT.

OUT OF THE PRESENCE OF THE JURY:
COURT AND COUNSEL DISCUSS TRIAL PROCEEDINGS AND BIFURCATION
ISSUES.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:
06/14/99  1000 AM  JURY TRIAL IN PROGRESS    DIST L.A. SUPERIOR SOUTHEAST DEPT
SEJ

CUSTODY STATUS: DEFENDANT REMANDED

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/18/99

-----------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
DEFENDANT 02:  ISRAEL  GARCIA

-----------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.


ON 06/10/99 AT  830 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SEJ

CASE CALLED FOR JURY TRIAL IN PROGRESS

PARTIES: PETER ESPINOZA (JUDGE)  NONE  (CLERK)
         SUSAN WILLIAMSON     (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY HARRY JOSEPH PIKE PRIVATE
COUNSEL

F. VALENCIA, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

BERTHA JOBBAGY ALSO SERVES AS THE SPANISH INTERPRETER WITH OATH
ON FILE.

LEEDERSON MCGHEE II SERVES AS THE JUDICIAL ASSISTANT.

TRIAL RESUMES FROM 6/9/99, WITH COUNSEL, DEFENDANTS AND
PROSPECTIVE JURORS PRESENT AS HERETOFORE.

THE COURT RE-READS THE INFORMATION.

VOIR DIRE BEGINS.  BY ORDER OF THE COURT, 12 (TWELVE) JURORS AND
3 (THREE) ALTERNATE JURORS ARE IMPANELED, ACKNOWLEDGE AND AGREE
TO TRY THE CAUSE. (02:50 P.M.)

THE JURORS ARE ADMONISHED, EXCUSED AND ORDERED TO RETURN ON
6/14/99, AT 10:15 A.M. IN THIS DEPARTMENT.


                                    JURY TRIAL IN PROGRESS
            PAGE NO.   1       HEARING DATE 06/10/99

000108

CASE NO. VA050173
DEF NO.  02                                    DATE PRINTED 06/18/99


OUT OF THE PRESENCE OF THE JURY:
COURT AND COUNSEL DISCUSS TRIAL PROCEEDINGS AND BIFURCATION
ISSUES.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:
06/14/99   830 AM  JURY TRIAL IN PROGRESS    DIST L.A. SUPERIOR SOUTHEAST DEPT
SEJ

CUSTODY STATUS: DEFENDANT REMANDED

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/16/99

------------------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                        VS.
DEFENDANT 01:  JOSE HUMBERTO MELARA

------------------------------------------------------------------------

INFORMATION FILED ON 11/30/98.

COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.

ON 06/14/99 AT 1030 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SEJ

CASE CALLED FOR JURY TRIAL IN PROGRESS

PARTIES: PETER ESPINOZA (JUDGE)  FRANCES PALUMBO  (CLERK)
         SUSAN WILLIAMSON        (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY RAMIRO JACINTO DEPUTY PUBLIC
DEFENDER

F.VALENCIA, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL RESUMES WITH THE DEFENDANT, JURY AND COUNSEL PRESENT
AS HERETOFORE.
SECOND SPANISH/ENGLISH LANGUAGE INTERPRETER BERTHA JOBBAGY
IS PRESENT, OATH ON FILE.

OUT OF THE PRESENCE OF THE JURY, REPORT IS MADE TO THE
COURT THAT JUROR #11 HAS CALLED IN ILL.
PURSUANT TO STIPULATION, ALTERNATE JUROR #1 IS CHOSEN BY
LOTTERY TO REPLACE JUROR #11.

IN THE PRESENCE OF THE JURY, ALTERNATE JUROR #1 REPLACES
JUROR #11.

THE COURT READS TO THE JURY, PRE TRIAL ADMONITION, JURY
INSTRUCTION 0.50.

CASE NO. VA050173                              DATE PRINTED 06/16/99
DEF NO.  01

THE PEOPLE MAKE AN OPENING STATEMENT.
DEFENDANT MELARA MAKES AN OPENING STATEMENT.
DEFENDANT GARCIA RESERVES OPENING STATEMENT.

JOSE LOPEZ IS SWORN AND TESTIFIES FOR THE PEOPLE.
PEOPLE'S EXHIBIT 1 (A VIDEOTAPE); 2 (CHART WITH PHOTOGRAPHS
A AND B); 3 (KNIFE); 4 (POSTERBOARD WITH PHOTOGRAPHS A THROUGH
E CONTAINED THEREIN); 5 (POSTERBOARD WITH 3 PHOTOGRAPHS AND
A DIAGRAM); 6 (LARGE PHOTOGRAPH IN GLASS FRAME) ARE MARKED
FOR IDENTIFICATION.
DEBRA ADKINS IS SWORN AND TESTIFIES FOR THE PEOPLE.

OUT OF THE PRESENCE OF THE JURY, DEFENDANT'S MOTION FOR

MISTRIAL IS HEARD AND DENIED.
IN THE PRESENCE OF THE JURY, CYNTHIA PADGETT IS SWORN AND
TESTIFIES FOR THE PEOPLE.
THE JURY IS ADMONISHED AND THE TRIAL IS CONTINUED AS INDICATED
BELOW.

COURT ORDERS AND FINDINGS:

THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:
06/15/99  1100 AM  JURY TRIAL IN PROGRESS   DIST L.A. SUPERIOR SOUTHEAST DEPT
SEJ

CUSTODY STATUS: DEFENDANT REMANDED

CCC111

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/16/99

--------------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
DEFENDANT 02:  ISRAEL  GARCIA

--------------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.



ON 06/14/99 AT 1030 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SEJ

CASE CALLED FOR JURY TRIAL IN PROGRESS

PARTIES: PETER ESPINOZA (JUDGE)  FRANCES PALUMBO  (CLERK)
         SUSAN WILLIAMSON     (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY HARRY JOSEPH PIKE PRIVATE
COUNSEL

F. VALENCIA, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL RESUMES WITH THE DEFENDANT, JURY AND COUNSEL PRESENT
AS HERETOFORE.
SECOND SPANISH/ENGLISH LANGUAGE INTERPRETER BERTHA JOBBAGY IS
PRESENT, OATH ON FILE.
OUT OF THE PRESENCE OF THE JURY, REPORT IS MADE TO THE COURT
THAT JUROR #11 HAS CALLED IN ILL.
PURSUANT TO STIPULATION, ALTERNATE JUROR #1 IS CHOSEN BY
LOTTERY TO REPLACE JUROR #11.

IN THE PRESENCE OF THE JURY, ALTERNATE JUROR #1 REPLACES JUROR
#11.

THE COURT READS TO THE JURY PRE TRIAL ADMONITION, JURY
INSTRUCTION 0.50.

THE PEOPLE MAKE AN OPENING STATEMENT.


                                    JURY TRIAL IN PROGRESS
                 PAGE NO.   1      HEARING DATE: 06/14/99

000112

CASE NO. VA050173
DEF NO.   02

DATE PRINTED 06/16/99

DEFENDANT MELARA MAKES AN OPENING STATEMENT.
DEFENDANT GARCIA RESERVES OPENING STATEMENT.
JOSE LOPEZ IS SWORN AND TESTIFIES FOR THE PEOPLE.
PEOPLE'S EXHIBITS 1 (VIDEOTAPE); 2 (CHART WITH PHOTOGRAPHS
A AND B); 3 (KNIFE); 4 (POSTERBOARD WITH 3 PHOTOGRAPHS AND
A DIAGRAM); 6 (LARGE PHOTOGRAPH IN GLASS FRAME) ARE MARKED
FOR IDENTIFICATION.

DEBRA ADKINS IS SWORN AND TESTIFIES FOR THE PEOPLE.
OUT OF THE PRESENCE OF THE JURY, DEFENDANT'S MOTION FOR
MISTRIAL IS HEARD AND DENIED.
IN THE PRESENCE OF THE JURY, CYNTHIA PADGETT IS SWORN AND
TESTIFIES FOR THE PEOPLE.

THE JURY IS ADMONISHED AND THE TRIAL IS CONTINUED AS INDICATED
BELOW.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:
06/15/99  1100 AM  JURY TRIAL IN PROGRESS   DIST L.A. SUPERIOR SOUTHEAST DEPT
SEJ

CUSTODY STATUS: DEFENDANT REMANDED

000113

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/16/99

----------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
DEFENDANT 01:  JOSE HUMBERTO MELARA

----------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.


ON 06/15/99 AT 1100 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SEJ.

CASE CALLED FOR JURY TRIAL IN PROGRESS

PARTIES: PETER ESPINOZA (JUDGE)  FRANCES PALUMBO  (CLERK)
         SUSAN WILLIAMSON    (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY RAMIRO JACINTO DEPUTY PUBLIC
DEFENDER

F. VALENCIA, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL RESUMES FROM 6/14/99 WITH THE DEFENDANT, JURY AND COUNSEL
PRESENT AS HERETOFORE.
BERTHA JOBBAGY IS ALSO PRESENT AS SECOND SPANISH/ENGLISH
LANGUAGE INTERPRETER FOR THE DEFENDANT.
BRANDI WALKER IS SWORN AND TESTIFIES FOR THE PEOPLE.
YULAI WANG IS SWORN AND TESTIFIES FOR THE PEOPLE.
ERIC VALDEZ AND MARKIS VELEZ ARE SWORN AND TESTIFY FOR THE
PEOPLE.
PEOPLE'S EXHIBITS 7 (CHART); 8 (CALIFORNIA DRIVER'S LICENSE
PLATE); 9 (CHART); 10 (CORONER'S REPORT); 11 (CHART);
12 (PHOTOGRAPH) ARE MARKED FOR IDENTIFICATION.

THE PEOPLE REST.
OUT OF THE PRESENCE OF THE JURY, THE ADMISSION OF EXHIBITS IS
DISCUSSED.
IN THE PRESENCE OF THE JURY, THE PEOPLE REST.


                                    JURY TRIAL IN PROGRESS
              PAGE NO.   1          HEARING DATE: 06/15/99

CASE NO. VA050173                          DATE PRINTED 06/16/99
DEF NO.  01

PEOPLE'S EXHIBITS PREVIOUSLY MARKED FOR IDENTIFICATION ARE
ADMITTED IN EVIDENCE.

THE DEFENDANT MELARA RESTS. DEFENDANT GARCIA RESTS.
THE JURY IS ADMONISHED AND DIRECTED TO RETURN ON DATE AND
TIME INDICATED BELOW.

COURT ORDERS AND FINDINGS:

THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:
06/16/99  1100 AM  JURY TRIAL IN PROGRESS   DIST L.A. SUPERIOR SOUTHEAST DEPT

SEJ

CUSTODY STATUS: DEFENDANT REMANDED

JURY TRIAL IN PROGRESS
                    HEARING DATE: 06/15/99

000115

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/16/99

------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                          VS.
DEFENDANT 02:  ISRAEL  GARCIA

------------------------------------------------------------

INFORMATION FILED ON 11/30/98.

COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.

ON 06/15/99 AT 1100 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SEJ

CASE CALLED FOR JURY TRIAL IN PROGRESS

PARTIES: PETER ESPINOZA (JUDGE)  FRANCES PALUMBO  (CLERK)
         SUSAN WILLIAMSON     (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY HARRY JOSEPH PIKE PRIVATE
COUNSEL

F. VALENCIA, OFFICIAL COURT INTERPRETER, PRESENT AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL RESUMES FROM 6/14/99 WITH THE DEFENDANT, JURY AND COUNSEL
PRESENT AS HERETOFORE.
BERTHA JOBBAGY IS ALSO PRESENT AS SECOND SPANISH/ENGLISH
LANGUAGE INTERPRETER.

BRANDI WALKER IS SWORN AND TESTIFIES FOR THE PEOPLE.
YULAI WANG IS SWORN AND TESTIFIES FOR THE PEOPLE.
ERIC VALDEZ AND MARKIS VELEZ ARE SWORN AND TESTIFY FOR THE
PEOPLE.
PEOPLE'S EXHIBITS 7 (CHART); 8 (CALIFORNIA DRIVER'S LICENSE
PLATE); 9 (CHART); 10 (CORONER'S REPORT); 11 (CHART);
12 (PHOTOGRAPH) ARE MARKED FOR IDENTIFICATION.

THE PEOPLE REST.
OUT OF THE PRESENCE OF THE JURY, THE ADMISSION OF EXHIBITS
IS DISCUSSED.

                                        JURY TRIAL IN PROGRESS
                    PAGE NO.   1      HEARING DATE: 06/15/99

CASE NO. VA050173
DEF NO.  02
DATE PRINTED 06/16/99

IN THE PRESENCE OF THE JURY, THE PEOPLE REST.
PEOPLE'S EXHIBITS PREVIOUSLY MARKED FOR IDENTIFICATION ARE
ADMITTED IN EVIDENCE.
THE DEFENDANT MELARA RESTS. DEFENDANT GARCIA RESTS.
THE JURY IS ADMONISHED AND DIRECTED TO RETURN ON DATE AND TIME
INDICATED BELOW.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:

06/16/99  1100 AM  JURY TRIAL IN PROGRESS   DIST L.A. SUPERIOR SOUTHEAST DEPT
SEJ

CUSTODY STATUS: DEFENDANT REMANDED

000117

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/16/99

----------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
VS.
DEFENDANT 01:  JOSE HUMBERTO MELARA

----------------------------------------------------------------

INFORMATION FILED ON 11/30/98.


COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.


ON 06/16/99 AT 1100 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SEJ

CASE CALLED FOR JURY TRIAL IN PROGRESS

PARTIES: PETER ESPINOZA (JUDGE)  FRANCES PALUMBO  (CLERK)
         SUSAN WILLIAMSON        (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY RAMIRO JACINTO DEPUTY PUBLIC
DEFENDER

FRANCISCA VALENCI, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL RESUMES FROM 6/15/99 WITH COUNSEL, DEFENDANT AND THE
JURY PRESENT AS HERETOFORE. COURT AND COUNSEL CONFER IN CHAMBERS
REGARDING JURY INSTRUCTIONS.

SECOND INTERPRETER BERTHA JOBBAGY IS ALSO PRESENT AS SPANISH
ENGLISH LANGUAGE INTERPRETER FOR DEFENDANT.
OUT OF THE PRESENCE OF THE JURY, DEFENDANT MELARA'S PENAL
CODE SECTION 1118.1 MOTION IS HEARD AS TO ALL CHARGES, IS
ARGUED AND DENIED. DEFENDANT GARCIA'S PENAL CODE SECTION
1118.1 MOTION AS TO COUNT 3 IS HEARD, ARGUED AND DENIED.
JURY INSTRUCTIONS ARE DISCUSSED ON THE RECORD.
THE PEOPLE WILL ARGUE FELONY MURDER.
IN THE PRESENCE OF THE JURY,
THE COURT PRE-INSTRUCTS THE JURY.
OUT OF THE PRESENCE OF THE JURY, JURY INSTRUCTIONS ARE DISCUSSED
FURTHER AND INSTRUCTION NOS. 8.11, 8.20, 17.10, 17.11, 8.75,


                                        JURY TRIAL IN PROGRESS
                    PAGE NO.   1       HEARING DATE: 06/16/99

000118

CASE NO. VA050173
DEF NO.  01                              DATE PRINTED 06/16/99

8.71, 8.70, 8.30 AND 8.31 ARE REFUSED.
DEFENSE OBJECTS TO THE PEOPLE USING BOOKING PHOTOS OF THE
DEFENDANT DURING ARGUMENT.  THE COURT RULES THE PEOPLE MAY
USE THEM DURING ARGUMENT.
IN THE PRESENCE OF THE JURY, THE PEOPLE ARGUE.
THE JURY IS ADMONISHED AND THE TRIAL IS CONTINUED TO THE
DATE BELOW.

COURT ORDERS AND FINDINGS:

THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:

06/17/99  1030 AM  JURY TRIAL IN PROGRESS    DIST L.A. SUPERIOR SOUTHEAST DEPT
SEJ

CUSTODY STATUS: DEFENDANT REMANDED

CCC119

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/17/99

--------------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
DEFENDANT 02:  ISRAEL  GARCIA

--------------------------------------------------------------------

INFORMATION FILED ON 11/30/98.

COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL   - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.

ON 06/16/99 AT 1100 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SEJ

CASE CALLED FOR JURY TRIAL IN PROGRESS

PARTIES: PETER ESPINOZA (JUDGE)  FRANCES PALUMBO  (CLERK)
         SUSAN WILLIAMSON     (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY HARRY JOSEPH PIKE PRIVATE
COUNSEL

FRANCISCA VALENCI, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL RESUMES FROM 6/15/99 WITH COUNSEL, DEFENDANT AND THE JURY
PRESENT AS HERETOFORE.  COURT AND COUNSEL CONFER IN CHAMBERS
REGARDING JURY INSTRUCTIONS.
SECOND INTERPRETER BERTHA JOBBAGY IS ALSO PRESENT AS SPANISH
ENGLISH LANGUAGE INTERPRETER FOR DEFENDANT.
OUT OF THE PRESENCE OF THE JURY, DEFENDANT MELARA'S PENAL
CODE SECTION 1118.1 MOTION IS HEARD AS TO ALL CHARGES,
IS ARGUED AND DENIED.  DEFENDANT GARCIA'S PENAL CODE SECTION
1118.1 AS TO COUNT 3 IS HEARD, ARGUED AND DENIED.  JURY
INSTRUCTIONS ARE DISCUSSED ON THE RECORD.
THE PEOPLE WILL ARGUE FELONY MURDER.
IN THE PRESENCE OF THE JURY, THE COURT PRE-INSTRUCTS THE
JURY.
OUT OF THE PRESENCE OF THE JURY, JURY INSTRUCTIONS ARE
DISCUSSED FURTHER AND INSTRUCTION NOS. 8.11, 8.20, 17.10,
17.11, 8.75, 8.71, 8.70, 8.30 AND 8.31 ARE REFUSED.

                                          JURY TRIAL IN PROGRESS
                    PAGE NO.   1          HEARING DATE: 06/16/99

000120

ASE NO. VA050173                         DATE PRINTED 06/17/99
EF NO.  02

EFENSE OBJECTS TO THE PEOPLE USING BOOKING PHOTOS OF THE
EFENDANT DURING ARGUMENT.  THE COURT RULES THE PEOPLE
AY USE THEM DURING ARGUMENT.
N THE PRESENCE OF THE JURY, THE PEOPLE ARGUE.
HE JURY IS ADMONISHED AND THE TRIAL IS CONTINUED TO THE DATE
ELOW.

OURT ORDERS AND FINDINGS:

THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:
06/17/99  1030 AM  JURY TRIAL IN PROGRESS   DIST L.A. SUPERIOR SOUTHEAST DEPT

SEJ

CUSTODY STATUS: DEFENDANT REMANDED

JURY TRIAL IN PROGRESS
                                         HEARING DATE: 06/16/99

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/18/99

---------------------------------------------------------------

CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
DEFENDANT 01:  JOSE HUMBERTO MELARA

---------------------------------------------------------------

INFORMATION FILED ON 11/30/98.

COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.

ON 06/17/99 AT 1030 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SEJ

CASE CALLED FOR JURY TRIAL IN PROGRESS

PARTIES: PETER ESPINOZA (JUDGE)  FRANCES PALUMBO  (CLERK)
         ANN HANKS        (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY RAMIRO JACINTO DEPUTY PUBLIC
DEFENDER

F. VALENCIA, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL RESUMES WITH THE DEFENDANT, JURY AND COUNSEL PRESENT
AS HERETOFORE.
BOTH DEFENDANTS PRESENT ARGUMENT.
THE PEOPLE CLOSE ARGUMENT.
THE BAILIFF IS SWORN TO TAKE CHARGE OF THE JURY AND THE
ALTERNATE JURORS.
COUNSEL THOROUGHLY AND COMPLETELY REVIEW THE VERDICTS PRIOR TO
THEM GOING INTO THE JURY.
AT 2:03 P.M. THE JURY COMMENCE DELIBERATIONS.
THE JURY TAKE AN AFTERNOON BREAK FROM 2:45 P.M. TO 3:00 P.M.
AT 4:00 P.M. THE JURY IS DEEMED ADMONISHED AND THE TRIAL IS
CONTINUED TO THE DATE BELOW.
DEFENSE COUNSEL JACINTO WANTS TO BE PRESENT IN THE JURYROOM
IN THE EVENT OF ANY READ BACK.  DEFENSE COUNSEL PIKE WAIVES HIS
APPEARANCE DURING ANY READ BACK.

COURT ORDERS AND FINDINGS:

-THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:
                                        JURY TRIAL IN PROGRESS
                    PAGE NO.   1        HEARING DATE: 06/17/99

OCC122

CASE NO. VA050173
DEF NO.   01                              DATE PRINTED 06/18/99

06/18/99   900 AM  JURY TRIAL IN PROGRESS   DIST L.A. SUPERIOR SOUTHEAST DEPT
SEJ

CUSTODY STATUS: DEFENDANT REMANDED

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/18/99

-------------------------------------------------------------------
CASE NO. VA050173

THE PEOPLE OF THE STATE OF CALIFORNIA
                              VS.
DEFENDANT 02:  ISRAEL   GARCIA

-------------------------------------------------------------------

INFORMATION FILED ON 11/30/98.

COUNT 01: 187(A) PC FEL  - MURDER.
COUNT 02: 211 PC FEL  - ROBBERY.
COUNT 03: 664-211 PC FEL  - ATTEMPT ROBBERY.

ON 06/17/99 AT 1030 AM  IN L.A. SUPERIOR SOUTHEAST DEPT SEJ

CASE CALLED FOR JURY TRIAL IN PROGRESS

PARTIES: PETER ESPINOZA (JUDGE)  FRANCES PALUMBO  (CLERK)
         ANN HANKS       (REP)  ERIC PERRODIN  (DA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY HARRY JOSEPH PIKE PRIVATE
COUNSEL

F. VALENCIA, OFFICIAL COURT INTERPRETER, PRESENT  AS SPANISH INTERPRETER.

OATH ON FILE.

TRIAL RESUMES FROM 6/16/99 WITH THE DEFENDANT, JURY AND
COUNSEL PRESENT AS HERETOFORE.
BOTH DEFENDANTS PRESENT ARGUMENT.
THE PEOPLE CLOSE ARGUMENT.
THE COURT CONCLUDES INSTRUCTING THE JURY.
THE BAILIFF IS SWORN TO TAKE CHARGE OF THE JURY AND THE
ALTERNATE JURORS.
COUNSEL THOROUGHLY AND COMPLETELY REVIEW THE VERDICTS PRIOR
TO THEM GOING INTO THE JURY.
AT 2:03 P.M. THE JURY COMMENCE DELIBERATIONS.
THE JURY TAKE AN AFTERNOON BREAK FROM 2:45 P.M. TO 3:00 P.M.
AT 4:00 P.M. THE JURY IS DEEMED ADMONISHED AND THE TRIAL IS
CONTINUED TO THE DATE BELOW.
DEFENSE COUNSEL JACINTO WANTS TO BE PRESENT IN THE JURYROOM
IN THE EVENT OF ANY READ BACK.  DEFENSE COUNSEL PIKE WAIVES
HIS APPEARANCE DURING ANY READ BACK.

000124

CASE NO. VA050173
DEF NO.  02                                    DATE PRINTED 06/18/99


COURT ORDERS AND FINDINGS:

THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.

NEXT SCHEDULED EVENT:
06/18/99   900 AM  JURY TRIAL IN PROGRESS   DIST L.A. SUPERIOR SOUTHEAST DEPT
SEJ

CUSTODY STATUS: DEFENDANT REMANDED

1 | **NOTICE TO APPELLANT:**

2

3 | In the event that a request for correction is filed,

4 | counsel should deliver this copy of this transcript

5 | to the court clerk at the time of the hearing so that

6 | it may be conformed.

7

8

9

10

11

12

13

14 | **CLERK'S TRANSCRIPT**

15

16

17

18

19

20

21

22

NOT TO BE PUBLISHED

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSE HUMBERTO MELARA et al.,<br><br>Defendants and Appellants. | 2d Crim. No. B134524<br>(Super. Ct. No. VA050173)<br>(Los Angeles County)<br><br>COURT OF APPEAL-SECOND DIST.<br><br>F I L E D<br><br>JUL 2 5 2000<br><br>JOSEPH A. LANE, Clerk<br><br>Deputy Clerk |

Appellants Jose Humberto Melara and Israel Garcia were jointly tried before a jury and convicted of first degree felony-murder (Pen. Code, §§ 187, 189),[1] second degree robbery (§ 211), and attempted second degree robbery (§§ 211, 664). The jury returned true findings on robbery-murder special circumstance allegations as to both appellants (§ 190.2, subd. (a)(17)), and determined that Garcia had personally used a knife during the commission of the offenses (§ 12022, subd. (b)).

Melara was sentenced to life in prison without the possibility of parole (LWOP) for the murder conviction and given concurrent sentences on the remaining counts. Garcia was given the same sentence, plus a consecutive one-year term for the knife use enhancement. We affirm with some minor modifications to the judgment.

---

[1] All statutory references are to the Penal Code.

### FACTS

Victims Hector Velos and Jose Lopez were regular patrons of the Lika Club, a neighborhood bar. Both men were drinking there one evening when appellants, who were not regulars, came in and had three or four beers. Appellants were dressed up, but did not otherwise stand out from the crowd. They did not have any trouble paying for their drinks.

Lopez went into the men's restroom and used a toilet located behind a partition. Velos entered shortly afterwards and said hello to Lopez while standing on the other side. Lopez then heard a male voice tell Velos, "Give me all your money," to which Velos responded, "That's all I have." Lopez walked out and saw appellant Garcia holding a knife to Velos' throat, while pushing him up against the partition. Garcia was holding a couple of dollars in his other hand. Another man, whom witnesses identified as appellant Melara, was standing near the restroom door.

When he saw what was happening, Lopez said, "I want no part of this." Garcia demanded Lopez's money and glanced at Melara, who began moving toward Lopez. Lopez bolted from the restroom, pushing Melara aside. He ran into the bar yelling, "[T]hey have a knife," and told the bartender to call 911.

Velos ran out of the restroom after Lopez, followed by both appellants. The bartender saw Velos stumble, and it appeared to her that Melara had pushed him from behind. Garcia began waving his knife at the other customers, some of whom picked up barstools to defend themselves. Garcia stabbed Velos in the heart during this melee, and Velos later died of the wound. The bartender thought that Velos might have stepped into the knife as Garcia was flailing around, but Lopez saw Garcia "jab" Velos with an upwards motion.

After Garcia stabbed Velos, both appellants ran outside to a car. Garcia attempted to bend the license plate before they got in, while Melara crouched by the driver's side door. They drove away, but crashed shortly afterwards. Appellants left the

damaged car and were later discovered by law enforcement officers hiding under a parked van.

The bartender at the Lika and two patrons who were present identified Garcia as the man who stabbed Velos, and identified Melara as the man who was with Garcia. Lopez, the attempted robbery victim, identified Garcia as the man who held a knife to Velos' throat in the restroom and stabbed Velos in the bar.

## DISCUSSION

### I.

*Felony-Murder/Aider and Abettor Liability/*
*Special Circumstance (Melara)*

### A. Introduction

The uncontradicted evidence showed that Garcia was the man who robbed Velos at knifepoint and then stabbed him in the bar. Melara was prosecuted as an aider and abettor. The prosecution elected to proceed solely on a felony-murder theory.

Section 189 provides that any killing committed in the perpetration of a robbery is first degree murder. Liability under the felony-murder rule extends to all persons who are jointly engaged in the perpetration of a robbery at the time of the killing, so long as the killing is committed "in furtherance of the common design." (*People v. Pulido* (1997) 15 Cal.4th 713, 716.)

Section 190.2 contains a list of the "special circumstances" which elevate the punishment for first degree murder to LWOP or death. The felony-murder special circumstance under section 190.2, subdivision (a)(17) applies to any first degree murder "committed while the defendant was engaged in, or was an accomplice in, the commission of . . . or the immediate flight after committing" a robbery. This special circumstance is applicable to a defendant who is not the actual killer only when the defendant either intends to kill or "with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission" of the robbery. (§ 190.2, subd. (d); *People v. Estrada* (1995) 11 Cal.4th

4.

568, 572, 575; see also *Tison v. Arizona* (1987) 481 U.S. 137, 152-158 [95 L.Ed.2d 127, 141-145].)

Melara raises a number of issues related to aiding and abetting, the felony-murder theory, and the robbery special circumstance as it applied to him.

## B. Sufficiency of the Evidence

Melara raises several challenges to the sufficiency of the evidence. We review his claims in the light most favorable to the judgment, and must affirm if there is any substantial evidence, contradicted or uncontradicted, which will support the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

Melara first contends that his convictions for robbery and first degree felony-murder must be reversed because the evidence was insufficient to show he aided and abetted Garcia in the robbery of Velos. As the jury was properly instructed, a defendant aids and abets a crime when he (1) has knowledge of the unlawful purpose of the perpetrator, (2) has the intent or purpose of committing or encouraging or facilitating the commission of the crime, and (3) by act or advice aids, promotes, encourages or instigates the commission of the crime. (CALJIC No. 3.01; *People v. Cooper* (1991) 53 Cal.3d 1158, 1164; *People v. Beeman* (1984) 35 Cal.3d 547, 561.)

The evidence showed that Melara accompanied Garcia to the Lika bar, sat talking with him for at several hours, and then followed him into the restroom, where Garcia placed a knife at Velos' throat. Melara stood by the door and attempted to block Lopez, a witness and second potential victim, when Lopez attempted to leave. Though mere presence at a crime scene does not suffice to make one an accomplice (*People v. Stankewitz* (1990) 51 Cal.3d 72, 91), the evidence here was adequate to prove Melara was an active participant in the robbery, rather than a bystander (see *People v. Campbell* (1994) 25 Cal.App.4th 402, 409-410).

Melara argues the evidence does not support a felony-murder conviction even if he aided and abetted the robbery. He claims the robbery of Velos ended in the restroom, and asserts that the felony-murder rule did not extend to the stabbing a few minutes later in the bar. For purposes of the felony-murder rule, a robbery continues

through the escape until the perpetrator has "reached a place of temporary safety." (*In re Malone* (1996) 12 Cal.4th 935, 967; *People v. Johnson* (1992) 5 Cal.App.4th 552, 559.) The jury was instructed on this principle, and the evidence was overwhelming that appellants had not reached a position of temporary safety when the stabbing occurred. (See *People v. Bodely* (1995) 32 Cal.App.4th 311, 313-314.)

Melara next claims the evidence was insufficient to support his conviction for the attempted robbery of Lopez. We disagree. After Lopez happened upon the ongoing robbery of Velos, Garcia told Lopez that he wanted his money. Garcia glanced at Melara, who moved toward Lopez. A rational trier of fact could infer that Melara had a specific intent to rob Lopez and committed a direct but ineffectual act toward that end. (*People v. Torres* (1995) 33 Cal.App.4th 37, 50.)

Melara finally argues the evidence was insufficient to support the robbery special circumstance, because he was not a "major participant" in the Velos robbery and did not act with a "reckless indifference to human life," as is required for aider and abettor liability under section 190.2, subdivision (d). We reject the claim. Viewed in the light most favorable to the judgment, Melara facilitated a knifepoint robbery by standing ready as back-up, and then actively attempted to prevent the victim's escape by pushing him as they ran from the restroom. While there was no direct evidence of planning, the jury could infer that Melara had discussed the robbery with Garcia during the hours they spent talking in the bar. The evidence also supported a finding that Melara drove the getaway car away from the scene, because a witness saw him crouching by the driver's side door shortly before the car departed. A jury could reasonably conclude from this evidence that Melara's participation in the robbery was "major," as that term is commonly understood. (See *People v. Proby* (1998) 60 Cal.App.4th 922, 933-934 ["major participant" is a commonly understood term that does not require further definition]; *Tison v. Arizona, supra,* 481 U.S. at p. 158 [95 L.Ed.2d at pp. 144-145] ["major participation" found where defendants' involvement was "substantial"].)

Melara contends his situation is analogous to that of the defendant in *Enmund v. Florida* (1982) 458 U.S. 782 [73 L.Ed.2d 1140], a getaway driver who was

convicted of felony-murder and sentenced to death after his cohorts killed an elderly couple. The Supreme Court concluded the death penalty was cruel and unusual punishment because the driver was not present at the scene of the robbery and had no intent to kill. (*Id.* at pp. 800-801 [73 L.Ed.2d at pp. 1153-1154].) Melara's situation is different, because he was present at every stage of the crime and was well aware that a weapon was being utilized by his cohort.

Melara cites a number of published cases in which the defendant was deemed a "major participant" under section 190.2, subdivision (d), and argues that his own involvement in the Velos robbery was minimal by comparison. (See *People v. Proby, supra,* 60 Cal.App.4th 922 [defendant was armed gunman]; *People v. Mora* (1995) 39 Cal.App.4th 607 [defendant secured his armed codefendant's access to the victim's house by posing as a drug purchaser and assisted in the subsequent robbery]; *People v. Bustos* (1994) 23 Cal.App.4th 1747 [defendant attempted to rob victim himself, struggled with her and knocked her to the floor; codefendant stabbed her after she resisted].) The question is not whether Melara's conduct was as egregious as other defendants in unrelated cases, but whether *any* rational trier of fact could conclude that he was a major participant. (*People v. Johnson, supra,* 5 Cal.App.4th at p. 558.) A different jury might have reached a different conclusion, but this jury's finding was supported by the evidence.

We also reject Melara's claim that there was no substantial evidence he acted with "reckless indifference to human life." (§ 190.2, subd. (d).) He willingly participated in an armed robbery and watched his cohort place a knife at the victim's throat. There was evidence that Melara attempted to trip the victim while fleeing the restroom, knowing full well that his coparticipant was armed. The jury could reasonably conclude that Melara "[knew] or [was] aware that his acts involve[d] a grave risk of death to an innocent human being," and thus possessed the mental state necessary to support the special circumstance allegation. (CALJIC No. 8.80.1; *People v. Estrada, supra,* 11 Cal.4th at pp. 577-579.)

## C. Proposed Special Instructions

Melara submitted three jury instructions regarding the special circumstance allegation and aider and abettor liability. We reject his claim that the court erred when it rejected these instructions.

### 1. *First Special Instruction*

The first proposed instruction was based on *Enmund v. Florida, supra,* 458 U.S. 782 [73 L.Ed.2d 1140], and would have advised the jury, "If you find that Melara aided and abetted the offenses charged but find that the prosecution has proven only that his participation was that of being the driver of the car as they left the scene, you are hereby instructed that you must find this to be insufficient to support the special circumstance alleged and are required to find it to be not true as it relates to Melara."

The proposed instruction would have been inappropriate because there was no evidence that Melara acted only as the getaway driver. "A trial court must give a requested instruction only if it is supported by substantial evidence, that is, evidence sufficient to deserve jury consideration." (*People v. Marshall* (1997) 15 Cal.4th 1, 39.) The instruction was also argumentative because it invited the jury to "'draw inferences favorable to one of the parties from specified items of evidence.'" (*People v. Earp* (1999) 20 Cal.4th 826, 886.)

### 2. *Second Special Instruction*

Melara's second instruction involved modifications to CALJIC Nos. 8.80.1 and 8.81.17, which were read to the jury and which together defined the elements of the robbery special circumstance.[2] Melara's proposed instruction would have differed from

---

[2] CALJIC No. 8.81.17 provided: "To find that the special circumstance, referred to in these instructions as murder in the commission of a robbery, is true, it must be proved: [¶] 1a. The murder was committed while a defendant was engaged in or was an accomplice in the commission . . . of a robbery; or [¶] 1b. The murder was committed during the immediate flight after the commission . . . of a robbery by the defendant to which a defendant was an accomplice; and [¶] 2. The murder was committed in order to carry out or advance the commission of the crime of robbery or to facilitate the escape therefrom or to avoid detection. In other words, the special circumstance referred to in these instructions is not established if the robbery was merely incidental to the commission of the murder."

8.

the CALJIC instructions in the following material respects:  (1) it would have defined a "major participant" as "one such as the ringleader or the actual killer whose participation was greater in importance than that of the other participant;" and (2) it would have advised the jury that the special circumstance applied to an aider and abettor only when "the defendant, subjectively appreciating that his acts were likely to result in the taking of innocent life, nonetheless engaged in criminal activities known to carry a high probability of death."

We are persuaded by the decision in *People v. Proby, supra*, 60 Cal.App.4th at pp. 931-934, which upheld the trial court's rejection of a similar special instruction.  As to the first portion of the instruction, the *Proby* court concluded that the proposed definition of "major participant" was too narrow.  Because it suggested that a defendant must be a ringleader or the most important member of a criminal enterprise, it does not comport with the common meaning of the word "major," which has been defined as "notable or conspicuous in effect or scope," and "one of the larger or more important members or units of a kind or group." (*Id.* at p. 934.)

The second aspect of the special instruction--subjective appreciation of the risk to life--was properly rejected as unnecessary.  CALJIC No. 8.80.1 required a "reckless indifference to human life," and further defined "reckless indifference" as existing when the defendant "knows or is aware that his acts involve a grave risk of death to an innocent human being." (*People v. Proby, supra*, 60 Cal.App.4th at pp. 932-933.) This instruction has been approved by our Supreme Court and adequately defines the subjective awareness of risk that is required to impose the robbery special circumstance. (*People v. Estrada, supra*, 11 Cal.4th at pp. 577-579.)

---

Continued from previous page....

CALJIC No. 8.80.1 provided in part:  "If you find that a defendant was not the actual killer of a human being . . . you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, or assisted any actor in the commission of the murder in the first degree, or with reckless indifference to human life and as a major participant, aided, abetted, or assisted in the commission of the crime of robbery which resulted in the death of a human being, namely, Hector Velos. [¶]  A defendant acts with reckless indifference to human life when that defendant knows or is aware that his acts involve a grave risk of death to an innocent human being."

### 3. *Third Special Instruction*

Melara's third proposed instruction would have advised the jury, "A defendant aids, abets, . . . commands . . . or assists in a [robbery] with reckless indifference to human life if he . . . knows the [robbery] in which he . . . is participating carries a higher probability of death than normally attends the commission of such crime." He cites no authority for the proposition that a defendant must appreciate the danger posed by his particular crime, *as compared to other robberies*.

The proposed instruction was confusing and invites speculation, because it assumes the jury knows the risk of death attendant in a "normal" robbery. The court did not err by limiting the definition of "reckless indifference" to that contained in CALJIC No. 8.81.1. (See *People v. Estrada, supra,* 11 Cal.4th at pp. 577-579; *People v. Proby, supra,* 60 Cal.App.4th at p. 933 [CALJIC No. 8.80.1 sufficient to define subjective appreciation element].)

### D. CALJIC No. 3.02

Melara contends the court committed reversible error by instructing with CALJIC No. 3.02, which advised the jury that it could find him guilty of murder if they determined that he aided and abetted a robbery, and murder was a natural and probable consequence of that robbery.[3] Under the "natural and probable consequences" doctrine, "a defendant may be held criminally responsible as an accomplice not only for the crime he or she intended to aid and abet (the target crime), but also for any other crime that is the 'natural and probable consequence' of the target crime." (*People v. Prettyman* (1996) 14 Cal.4th 248, 261.)

---

**3** The jury was given a version of CALJIC No. 3.02 that provided: "One who aids and abets another in the commission of a crime or crimes is not only guilty of those crimes, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crimes originally aided and abetted. [¶] In order to find the defendant guilty of the crime[] of murder, as charged in Count 1, you must be satisfied beyond a reasonable doubt that: [¶] 1. The crime of robbery was committed; [¶] 2. That the defendant aided and abetted that crime; [¶] 3. That a co-principal in that crime committed the crime of robbery; and [¶] 4. The crime of murder was a natural and probable consequence of the commission of the crime of robbery."

Melara complains that the natural and probable consequences doctrine, as described in CALJIC No. 3.02, is overbroad and creates an unconstitutional "presumption" of murder based on negligence. Our Supreme Court has repeatedly approved of the natural and probable consequences doctrine as a basis for liability, and has held that the doctrine does not "'withdraw an element from the jury's determination or otherwise interject an impermissible presumption into the deliberative process.'" (*People v. Prettyman, supra,* 14 Cal.4th at p. 272, citing *People v. Cox* (1991) 53 Cal.3d 618, 669; *People v. Croy* (1985) 41 Cal.3d 1, 12, fn. 5.)

Melara also argues that CALJIC No. 3.02 is deficient because it did not specifically advise the jury to apply an objective standard, i.e., to determine whether a reasonable person in the defendant's position "would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted by the defendant." (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 531.) Similar language has been incorporated in the most recent version of CALJIC No. 3.02 (6th ed. 2000 pocket part), but the instruction given correctly stated the law even without the clarifying language. (*People v. Prettyman, supra,* 14 Cal.4th at pp. 264, 268 at fn. 8.) The trial court was not obligated to provide amplification absent a request, and Melara's failure to seek the modification he now proposes has waived the issue on appeal. (*People v. Bolin* (1998) 18 Cal.4th 297, 328.)

Moreover, CALJIC No. 3.02 was superfluous to this case and could not have prejudiced Melara. The instruction allowed the jury to convict Melara of murder only if he aided and abetted a robbery and murder was a natural and probable consequence of that robbery. Under the felony-murder rule, however, Melara was guilty of murder if he aided and abetted the robbery and his codefendant committed a killing during the commission of that crime, whether or not the killing was a natural and probable consequence. (*People v. Escobar* (1996) 48 Cal.App.4th 999, 1019; compare *People v. Dawson* (1997) 60 Cal.App.4th 534, 546; CALJIC No. 8.27.) If anything, CALJIC No. 3.02 benefited Melara by suggesting that the prosecution was required to prove an additional element before convicting him of murder.

II.

*Lesser Included Offenses*

Both appellants requested instructions on second degree murder, voluntary manslaughter and involuntary manslaughter as lesser included offenses of the charged first degree murder. We reject their claim that the trial court erred by denying these requests.

"When the evidence points indisputably to a homicide committed in the course of a felony listed in section 189 of the Penal Code, the court is justified in advising the jury that the defendant is either innocent or guilty of first degree murder." (*People v. Turner* (1984) 37 Cal.3d 302, 327, overruled on other grounds in *People v. Anderson* (1987) 43 Cal.3d 1104, 1115; *People v. Escobar, supra*, 48 Cal.App.4th at p. 1016.) Here, the facts "clearly establish the question for the jury was felony[-]murder based upon robbery or nothing. No other factual basis was proffered." (See *People v. Day* (1981) 117 Cal.App.3d 932, 936.)

Appellants also were not prejudiced by the omission of instructions on the lesser homicide offenses. The jury returned guilty verdicts on the separate robbery counts and true findings on the robbery special circumstance allegations. In so doing, they necessarily determined that a robbery occurred and that both appellants were engaged in the commission of the robbery when Velos was stabbed. There is no possibility--much less a "reasonable probability"--that the jury would have concluded the homicide was anything less that first degree felony-murder. (See *People v. Breverman* (1998) 19 Cal.4th 142, 165; *People v. Millwee* (1998) 18 Cal.4th 96, 157-158.)

III.

*Accident and Mistake, Self-Defense*

Appellants contend the trial court should have granted their request for instructions on accident and misfortune, self-defense and defense of others. (CALJIC Nos. 5.00, 5.01, 5.12, 5.13, 5.50.) We disagree. The defenses of accident and self-defense do not exonerate a defendant of felony-murder. (See *People v. Escobar, supra*, 48 Cal.App.4th at p. 1019; *People v. Loustaunau* (1986) 181 Cal.App.3d 163, 170.)

Instructions on self-defense and defense of others also would have been improper because there was no substantial evidence that anyone in the bar posed a threat to either appellant or that Garcia stabbed Velos to protect himself. (*People v. Thomas* (1990) 219 Cal.App.3d 134, 143.)

## IV.

### *CALJIC No. 2.90*

Appellants contend the trial court erred in giving the 1994 revision of CALJIC 2.90, which eliminates the term "moral certainty" and uses an "abiding conviction" standard to define reasonable doubt. We agree with the numerous cases that have rejected this argument and conclude that CALJIC No. 2.90 is constitutionally adequate. (*People v. Torres* (1996) 43 Cal.App.4th 1073, 1078; *Lisenbee v. Henry* (9th Cir. 1999) 166 F.3d 997, 999-1000; see also *People v. Bolin, supra*, 18 Cal.4th at p. 330.)

## V.

### *Photograph of Victim*

During opening statement, the prosecutor showed the jury a photograph of Hector Velos and his wife. The photograph was admitted into evidence after an eyewitness used it to identify Velos during her direct examination. Appellants objected to the photograph as irrelevant, and argue on appeal that its admission requires reversal.

We disagree that the court abused its discretion. The photograph was relevant to establish one eyewitness's ability to identify Velos as the person about whom she had testified. (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1230; see also *People v. Osband* (1996) 13 Cal.4th 622, 677.) The possibility that it might incidentally generate sympathy did not itself warrant the exclusion of this otherwise relevant evidence. (*Ibid.*)

Additionally, any error in allowing the prosecution to refer to the photograph during opening statement was harmless. This case was not a close one in which the jury was persuaded to convict based on their sympathy for the victim rather than the strength of the evidence. (*People v. Kelly* (1990) 51 Cal.3d 931, 963-964.) There is no reasonable probability the jury would have reached a different verdict had they not seen the picture. (*People v. DeSantis, supra*, 2 Cal.4th at p. 1231.)

## VI.

### *Prosecutorial Misconduct*

In response to defense counsel's characterization of the stabbing as an accident, the prosecutor made the following statements during the rebuttal portion of closing argument: "He [Garcia's trial counsel] said there is no murder. It was an accident. Look at those people back there. Hector Velos was a husband, a father, a son, an uncle, [and] he's no longer here today. Do you think those people back there think this was just an accident? This wasn't a murder [?]"

Appellants contend this was an improper appeal to the jury's sympathy and constituted prosecutorial misconduct. Neither lodged an objection to the argument and the issue has been waived. (*People v. Earp, supra*, 20 Cal.4th at pp. 858-859.)

Appellants alternatively claim their trial attorneys provided ineffective assistance of counsel by sitting silently during this portion of the prosecutor's rebuttal. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15.) When the record sheds no light on the reason for counsel's failure to act, we must reject a claim of ineffective assistance unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) Here, counsel "could reasonably have determined that the risks of raising the objection and offending or annoying the jury outweighed whatever benefit might have been obtained from prosecutorial remarks that were little likely to prejudice [their] client[s]." (*People v. Welch* (1999) 20 Cal.4th 701, 754.)

## VII.

### *Constitutionality of LWOP Sentences*

Appellants contend their LWOP sentences for felony-murder violate the California Constitution's proscription against cruel or unusual punishment.[4] They ask us to either remand the case for a new sentencing hearing or reduce their prison terms to 25 years to life, the statutory penalty for first degree murder without special circumstances. We decline.

---

[4] Appellant Melara refers in passing to the Eighth Amendment's bar against cruel and unusual punishment, but does not specifically allege that his sentence violates the federal Constitution. We would reject such a claim for the reasons stated in *People v. Weddle* (1991) 1 Cal.App.4th 1190, 1193-1195.

"Imposition of a sentence 'grossly disproportionate to the offense for which it is imposed' is a violation of the prohibition against cruel or unusual punishment under article I, section 17, of the California Constitution." (*People v. Kaurish* (1990) 52 Cal.3d 648, 716.) "[T]he crime itself must be reviewed, both in the abstract and in view of the totality of the circumstances surrounding its commission, 'including such factors as its motive, the way it was committed, the extent of defendant's involvement, and the consequences of his acts. . . .' Secondly, the court must consider 'the nature of the offender' and inquire 'whether the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind.'" (*People v. Weddle, supra,* 1 Cal.App.4th at pp. 1197-1198; *People v. Dillon* (1983) 34 Cal.3d 441, 479.)

Garcia contends that an LWOP sentence is necessarily disproportionate in a robbery felony-murder case where there is no evidence of an intent to kill. Our Supreme Court has held that neither malice nor intent to kill is necessary to support a special circumstance when the defendant personally killed the victim, as Garcia did. (See *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1264-1265 [affirming death penalty].) It has also rejected Garcia's suggestion that the felony-murder special circumstance fails to meaningfully narrow the class of death- and LWOP-eligible offenders. (*Id.,* at pp. 1265-1266.)

Garcia claims that his LWOP sentence is disproportionate to the particular facts of his offense because the stabbing was in response to an "attack" by patrons in the bar. This characterization of the crime is not borne out by the record, which shows that Garcia, and not any bar patron, was the aggressor. The stabbing may not have been accompanied by malice or an intent to kill (although the evidence would have been sufficient to support an instruction on that theory if the prosecution had so requested), but it appears to have been an intentional and gratuitous act of violence.

Garcia's background and prior record do not compel a contrary result. At the time of the offenses in this case, he was over 30 years old and had several prior convictions, including two felonies. Though he attempts to compare himself to the 17-year-old high school student in *People v. Dillon, supra,* 34 Cal.3d at p. 479, he was "beyond the tender years" of that defendant in that case. (*People v. Weddle, supra,* 1 Cal.App.4th at p. 1200.)

We reject appellant Melara's argument for similar reasons. Melara was 28 years old and had a prior conviction for second degree robbery. He did not actually kill the victim in this case, but the jury found that he was a major participant who acted with reckless indifference to human life. Melara's major complaint is that the felony-murder special circumstance can be applied to aiders and abettors who do not intend to kill, but that does not render his sentence constitutionally infirm. (*Tison v. Arizona, supra,* 481 U.S. at pp. 152-158 [95 L.Ed.2d at pp. 141-145];[5] see also *People v. Ordonez* (1991) 226 Cal.App.3d 1207, 1233-1239 [LWOP sentence for aggravated kidnapping not disproportionate, even though statute does not require death of victim]; *People v. Munoz* (1984) 157 Cal.App.3d 999, 1014-1015 [proportionality analysis in *People v. Dillon, supra,* 34 Cal.3d at p. 450 is exception, not rule].)

### VIII.

*Miscellaneous Sentencing Issues*

Appellants contend the court should have stayed the sentences on each of their robbery counts under section 654 rather than imposing concurrent terms. The People agree that a defendant cannot be punished for both robbery and first degree felony-murder based on the same robbery. (*People v. Boyd* (1990) 222 Cal.App.3d 541, 576.) We will order the sentence stayed.

Appellants also ask us to delete the $200 "parole revocation" fines imposed under section 1202.45, because such fines do not apply to an LWOP sentence. (*People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1182-1185.) The People agree and we will modify the judgment accordingly.

---

[5] *Tison* upheld the imposition of the death penalty in a case where the aider and abettor was a major participant and had acted with reckless indifference to human life. California has adopted the *Tison* standard as a prerequisite for aider and abettor liability in all felony-murder special circumstance cases (*People v. Estrada, supra,* 11 Cal.4th at pp. 575-576), but an LWOP sentence for felony-murder might withstand proportionality analysis even if these elements were not met (*ibid.*; see also *Ajabu v. State* (1998 Ind.) 693 N.E.2d 921).

16.

## DISPOSITION

The judgment is modified in the following respects: (1) appellants' five-year concurrent terms for second degree robbery (count 2) are stayed pursuant to section 654; (2) appellants' $200 fines under section 1202.45 are stricken. The superior court is directed to modify the abstracts of judgment accordingly and forward the copies to the Department of Corrections. The judgment is otherwise affirmed.

NOT TO BE PUBLISHED.


COFFEE, J.

We concur:


GILBERT, P.J.


YEGAN, J.

Peter Espinoza, Judge

Superior Court County of Los Angeles

<hr>

Thomas T. Ono, under appointment by the Court of Appeal, for Defendant and Appellant Jose Humberto Melara.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant Israel Garcia.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Senior Assistant Attorney General, John R. Gorey, Supervising Deputy Attorney General, Michelle M. Paffile, Deputy Attorney General, for Plaintiff and Respondent.

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

Israel Garcia

Small, et al

**FILING FEE PAID**
Yes    No ✓
**IFP MOTION FILED**
Yes    No ✓
**CONSENT TO**
Court Mag. Pres.

**FILED**
JUL 2 1 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ DEPUTY

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED   Imperial
PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Israel Garcia
PO Box 5007
Calipatria, CA 92233
P-49483

ATTORNEYS (IF KNOWN)

**'08 CV 1307 JAH RBB**

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

**28 U.S.C. 2254**

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☒ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE

Docket Number

DATE   7/21/2008

SIGNATURE OF ATTORNEY OF RECORD

R Miller